**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRIS COUNTY, TEXAS,** <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,** <br><br> *Defendants*. | Civil Action No. 1:25-cv-03646-TSC |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 12) AND
MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 14)**

**TABLE OF CONTENTS**

INTRODUCTION........................................................................................................................1

BACKGROUND.........................................................................................................................2

    I.    Congress Authorizes the Solar for All Program................................................2

    II.   Plaintiff and EPA Enter a Grant Agreement. ..................................................3

    III.  Congress Repeals the Solar for All Authorization and Rescinds Funding........................4

    IV.  EPA Terminates Plaintiff's Solar for All Grant...................................................4

PROCEDURAL HISTORY ........................................................................................................5

LEGAL STANDARD.................................................................................................................5

ARGUMENT...............................................................................................................................6

    I.    Plaintiff Cannot Demonstrate that the Months-Old Termination of a Grant Awarded Under a Program Repealed by Congress Presents an Imminent Risk of Irreparable Injury Justifying a Preliminary Injunction.........................................6

        A.   The Alleged Harm Does Not "Directly Result from the Action" Plaintiff Seeks to Enjoin...........................................................................7

        B.   The Alleged Harm is Economic and Thus Not "Beyond Remediation." ......................9

        C.   The Alleged Harm is Not Certain or Imminent..........................................11

        D.   Plaintiff's Months-Long Delay in Requesting Emergency Relief Undermines Its Claims of Irreparable Harm........................................13

        E.   Plaintiff's Delay Also Underscores That No Emergency Relief is Required to Maintain the Status Quo.........................................14

    II.   Plaintiff is Not Likely to Succeed on the Merits...........................................15

        A.   This Court Lacks Jurisdiction Over Challenges to the Termination of Plaintiff's Grant. ...................................................16

        B.   Plaintiff's Attempt to Challenge the End of the Solar for All Program Exposes Its Lack of Standing. ...................................................24

        C.   In All Events, Plaintiff's Substantive Claims Lack Merit...........................................27

    III.  The Equities Weigh Against Emergency Relief..............................................36

    IV.  Any Injunction Should Be Narrowly Tailored................................................37

CONCLUSION...........................................................................................................................38

i

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn., v. Haworth*,
  300 U.S. 227 (1937)................................................................................24

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004)................................................................17, 18

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*,
  No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025)......................................21

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006)................................................................................37

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)................................................................................22

*Boaz Hous. Auth. v. United States*,
  994 F.3d 1359 (Fed. Cir. 2021)....................................................................17

*Brookens v. Am. Fed'n of Gov't Emps.*,
  315 F. Supp. 3d 561 (D.D.C. 2018)................................................................12

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020)..................................................................5

*California v. Texas*,
  593 U.S. 659 (2021)............................................................................24, 38

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)......................................................................6

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004)........................................................................9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)................................................................................28

*Climate United Fund v. Citibank, N.A.*,
  154 F.4th 809 (D.C. Cir. 2025).............................................................. passim

*Climate United Fund v. Citibank, N.A.*,
  778 F. Supp. 3d 90 (D.D.C. 2025)..................................................................10

*Clinton v. City of New York*,
   524 U.S. 417 (1998)..................................................................................................36

*Coggeshall Dev. Corp. v. Diamond*,
   884 F.2d 1 (1st Cir. 1989)........................................................................................27

*Columbia Gulf Transmission v. FERC*,
   106 F.4th 1220 (D.C. Cir. 2024) .........................................................................28, 29

*Corp. for Pub. Broad. v. Fed. Emergency Mgmt. Agency*,
   No. CV 25-740 (TJK), 2025 WL 1938198 (D.D.C. July 15, 2025)......................... 12

*Crowley Gov't Servs., Inc. v. GSA*,
   38 F.4th 1099 (D.C. Cir. 2022) ................................................................................16

*Dalton v. Specter*,
   511 U.S. 462 (1994)...............................................................................................2, 34

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025)..............................................................................1, 8, 19, 20, 21

*DeVillier v. Texas*,
   601 U.S. 285 (2024)...................................................................................................23

*Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo*,
   18 F.4th 38 (1st Cir. 2021).......................................................................................36

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975)...................................................................................................38

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021).................................................................................... 11

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)...............................................................................................28, 30

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)...............................................................................................28, 29

*Fed. Express Corp. v. U.S. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022)................................................................................22, 23

*Fund for Animals v. Frizzell*,
   530 F.2d 982 (D.C. Cir. 1975) ..................................................................................13

*Gordon v. Holder*,
  632 F.3d 722 (D.C. Cir. 2011) ..................................................................................... 13

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .................................................................................................... 20

*Hailu v. Morris-Hughes*,
  No. 22-CV-00020, 2022 WL 1124796 (D.D.C. Apr. 14, 2022) .................................. 8

*Harris Cnty., Tex. v. Kennedy*,
  786 F. Supp. 3d 194 (D.D.C. 2025) ........................................................................... 10

*Heart 6 Ranch, LLC v. Zinke*,
  285 F. Supp. 3d 135 (D.D.C. 2018) ........................................................................... 13

*Husky Mktg. & Supply Co. v. FERC*,
  105 F.4th 418 (D.C. Cir. 2024) .................................................................................. 28

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................................................... 35

*In re Funding of Replacement Contracts*,
  60 Comp. Gen. 591 ................................................................................................25, 26

*In re Navajo Nation Oil & Gas Co.*,
  B-270723, 96-1 CPD P 187, 1996 WL 174689 (Comp. Gen. Apr. 15, 1996) ........... 26

*John Doe Co. v. Consumer Fin. Prot. Bureau*,
  849 F.3d 1129 (D.C. Cir. 2017) ................................................................................. 12

*Knick v. Township of Scott*,
  588 U.S. 180 (2019) .................................................................................................... 23

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) .................................................................................................... 34

*League of Women Voters of the United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ....................................................................................... 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) .................................................................................................... 33

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 24

iv

*Maryland v. King*,
   567 U.S. 1301 (2012)........................................................................................................36

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,
   No. 25-cv-30041, 2025 WL 1225481 (D. Mass. Apr. 14, 2025)............................................21

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012)..........................................................................................................17

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982)..............................................................................17, 18, 19

*Mexichem Specialty Resins, Inc. v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015)..............................................................................................9

*Munaf v. Geren*,
   553 U.S. 674 (2008)............................................................................................................5

*Mylan Pharms., Inc. v. Shalala*,
   81 F. Supp. 2d 30 (D.D.C. 2000)........................................................................................13

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
   145 S. Ct. 2658 (2025)................................................................................................passim

*Nat'l Treasury Emps. Union v. Vought*,
   149 F.4th 762 (D.C. Cir. 2025)...........................................................................................34

*Newdow v. Bush*,
   355 F. Supp. 2d 265 (D.D.C. 2005).....................................................................................13

*Nigerians in Diaspora Org. Americas v. Key*,
   No. CV 19-3015, 2021 WL 811094 (D.D.C. Mar. 3, 2021).....................................................7

*Nken v. Holder*,
   556 U.S. 418 (2009)..........................................................................................................36

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665 (2025)..........................................................................................................22

*Off. of Pers. Mgmt. v. Richmond*,
   496 U.S. 414 (1990)..........................................................................................................35

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017)............................................................................................17

*Rotkiske v. Klemm,*
589 U.S. 8 (2019) ....................................................................................................33

*Sampson v. Murray,*
415 U.S. 61 (1974)................................................................................................6, 9

*Sharp v. Weinberger,*
798 F.2d 1521 (D.C. Cir. 1986) ...............................................................................19

*Sissel v. Wormuth,*
77 F.4th 941 (D.C. Cir. 2023) ..................................................................................28

*Solutions in Hometown Connections v. Noem,*
No. 25-cv-885, 2025 WL 1103253 (D. Md. Apr. 14, 2025)....................................21

*Spectrum Leasing Corp. v. United States,*
764 F.2d 891 (D.C. Cir. 1985) ................................................................................18

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998).................................................................................................24

*Sustainability Inst. v. Trump,*
No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025).................................20, 23

*Trudeau v. FTC,*
384 F.Supp.2d 281 (D.D.C. 2005)...........................................................................12

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025)............................................................................................2, 38

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State,*
770 F. Supp. 3d 155 (D.D.C. 2025).........................................................................21

*Vera Inst. of Just. v. U.S. Dep't of Just.,*
No. 25-cv-1643, 2025 WL 1865160 (D.D.C. July 7, 2025)....................................20

*Washington v. District of Columbia,*
530 F. Supp. 2d 163 (D.D.C. 2008)...........................................................................9

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ....................................................................................................6

*Wis. Gas Co. v. FERC,*
758 F.2d 669 (D.C. Cir. 1985) ..................................................................................6

**Statutes**

5 U.S.C. § 706.................................................................................................................28

28 U.S.C. § 1491.........................................................................................................17, 20

42 U.S.C. § 7430.............................................................................................................26

42 U.S.C. § 7434........................................................................................................ passim

Inflation Reduction Act of 2022,
   Pub. L. No. 117-169, § 60103, 136 Stat. 1818 (2022)...........................................................2

One Big Beautiful Bill Act,
   Pub. L. No. 119-21, § 60002, 139 Stat. 72 (2025)...................................................................1

**Regulations**

2 C.F.R. § 200.340.......................................................................................................11, 33

2 C.F.R. § 200.343.............................................................................................................9

2 C.F.R. § 200.344.............................................................................................................9

2 C.F.R. § 200.472.............................................................................................................9

2 C.F.R. § 200.513...........................................................................................................30

**INTRODUCTION**

The Court should deny Plaintiff's Motion for Preliminary Injunction, ECF No. 12 ("PI Motion"), and Motion for Temporary Restraining Order, ECF No. 14 ("TRO Motion"). At the threshold, Plaintiff cannot identify any emergency warranting either form of extraordinary preliminary relief. As Plaintiff admits, the relevant events underlying Plaintiff's claims happened *months ago*. On July 4, 2025, the One Big Beautiful Bill Act, Pub. L. No. 119-21, § 60002, 139 Stat. 72, 154 (2025) ("OBBBA"), both repealed the statute that authorized the Solar for All grant program and rescinded all unobligated balances that had been appropriated to carry out the program. At that point, the program Plaintiff would have the Court believe is "mandated by Congress," Mem. in Supp. of Harris Cnty.'s PI Mot. 1, ECF No. 12-1 ("PI Mem."), ceased to exist by act of Congress. All that remained were the grants EPA had awarded earlier—and those grants were terminated a month later, on August 7, 2025, now more than three months ago. Any claims Plaintiff may possess were fixed as of that time, and no prospective emergency injunctive relief will change that. There is simply no basis for any preliminary relief in this case, a conclusion underscored by Plaintiff's months-long delay in seeking any.

Although there is no need for the Court to reach the merits in this expedited posture, Plaintiff's claims fail on the merits too. Given Congress's repeal of the Solar for All program, all that is left is a dispute over the termination of Plaintiff's grant. And this Court lacks jurisdiction to hear that claim. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*NIH*"); *Dep't of Educ. v. California*, 604 U.S. 650 (2025); *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809 (D.C. Cir. 2025).

In attempting to avoid this jurisdictional bar, Plaintiff purports to challenge the end of the program, rather than the termination of its grant. That maneuver fails on multiple grounds. First, Plaintiff has not alleged and cannot demonstrate any injury independent from the loss of its

grant, which can be redressed only in the Court of Federal Claims; Plaintiff therefore lacks standing to seek any broader relief here. Second, Plaintiff's quest to revive the Solar for All program is hopeless. Congress repealed the program. Apart from the pre-existing grants that have since been terminated, there is no program for this Court or EPA to preserve going forward. Third, as to those prior grants, OBBBA's repeal of the statute authorizing the Solar for All program and rescission of funds provided reasonable grounds for termination. Nothing in either the now-repealed Section 134 of the Clean Air Act, 42 U.S.C. § 7434, or the OBBBA conferred on Plaintiff any continuing right to perform its grant. Plaintiff's constitutional claims mirror its statutory claims and fail for the same reasons. *See Dalton v. Specter*, 511 U.S. 462, 473 (1994).

Finally and in all events, Plaintiff's request for a global injunction with respect to the program is beyond the Court's power and should be denied. Because this Court has before it one specific Plaintiff and one specific grant, a universal injunction would contravene the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831, 846 (2025).

For these reasons, Plaintiff's manufactured emergency provides no basis for its requested preliminary relief. EPA respectfully requests the Court deny Plaintiff's TRO and PI motions.

**BACKGROUND**

I.    **Congress Authorizes the Solar for All Program.**

The Inflation Reduction Act ("IRA") authorized the Greenhouse Gas Reduction Fund ("GGRF") in 2022. *See* Inflation Reduction Act of 2022, Pub. L. No. 117-169, § 60103, 136 Stat. 1818, 2065–66. Then-codified as Section 134 of the Clean Air Act (42 U.S.C. § 7434), the GGRF appropriated almost $27 billion to the EPA Administrator to make grants, on a competitive basis, to eligible recipients for qualified projects aimed at reducing or avoiding greenhouse gas emissions and other forms of air pollution. *Id.* § 7434(a)–(c).

2

Among other things, Subsection (a)(1), which authorized the Solar for All program, appropriated $7 billion to EPA "to make grants" to eligible recipients to provide financial and technical assistance "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies . . . and to carry out other greenhouse gas emission reduction activities, as determined appropriate by the Administrator in accordance with this section." *Id.* § 7434(a)(1). Subsection (a)(4) appropriated $30 million to EPA for "the administrative costs necessary to carry out [GGRF] activities," including for any subsection (a)(1) program and the remaining $20 billion in grant programs authorized by the provision. *Id.* § 7434(a)(4).

## II.    Plaintiff and EPA Enter a Grant Agreement.

EPA selected 60 grant recipients, including Plaintiff, to receive funds under the newly-created Solar for All program. Treml Decl. ¶ 2. EPA executed materially identical contracts with each grantee in August 2024 and amended those agreements in December 2024 without requiring additional consideration. *See, e.g.*, Dickerman Decl. Ex. C, at 1, ECF No. 12-5 (the "SFA Grant Agreement") (showing amendment date of December 17, 2024). Under Plaintiff's amended grant agreement, EPA agreed "to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 249,700,000.00." *Id.* In exchange, Plaintiff agreed to, *inter alia*, (i) "comply with the current EPA General Terms and Conditions," *id.* at 4; (ii) "comply with the statutory requirements of Section 134 of the Clean Air Act," *id.* at 34; (iii) implement "its EPA-approved Solar for All Workplan," *id.* at 22; and (iv) adhere to numerous applicable regulations within 2 C.F.R. Part 200, *see, e.g.*, *id.* at 22–23. The SFA Grant Agreement provided EPA with termination authority, citing to EPA's authority to terminate under 2 CFR 200.340. SFA Grant Agreement, at 36. Unless terminated, the Project Period for Plaintiff's grant was set to run from September 1, 2024 through August 31, 2029. SFA Grant Agreement at 1.

### III.    Congress Repeals the Solar for All Authorization and Rescinds Funding.

On July 4, 2025, Congress enacted the OBBBA.  As relevant here, Section 60002 of the OBBBA "repealed" Section 134 of the Clean Air Act and "rescinded" all "unobligated balances of amounts made available to carry out that section," including the remainder of the $30 million for EPA to administer the GGRF grant programs.

### IV.    EPA Terminates Plaintiff's Solar for All Grant.

On August 7, 2025, EPA terminated all Solar for All grants.  Treml Decl. ¶ 2.  In its termination letter to Plaintiff, EPA explained that "OBBBA repeals the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134."  Dickerman Decl. Ex. D, at 1, ECF No. 12-6 (the "Termination Memo").  EPA further stated that it "made the decision to terminate the SFA program and existing grants because the EPA no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients."  *Id.*

EPA's Termination Memo also described the grant close-out process.  In doing so, EPA "recognize[d] that program participants may have begun to rely on" program funds and may have "made preliminary budgets, projections, outlays, and staffing decisions."  *Id.*  EPA therefore provided assurance that such expenses would "be remedied and remediable by the close out processes," as "generally outlined in 2 CFR 200.344."  *Id.*  Accordingly, a limited amount of funding remains obligated to cover Plaintiff's allowable costs (pretermination and closeout costs).  Treml Decl. ¶ 6.[1]

---

[1] Plaintiff alleges its grant account was "liquidated" shortly after receiving notice of termination. Compl. ¶ 80.  As EPA explains, 93 percent of the grant funds were deobligated after termination, with the remainder reserved to satisfy closeout obligations.  *See* Treml Decl. ¶¶ 5–6.

4

Plaintiff filed an administrative appeal of EPA's decision to terminate Plaintiff's grant. Compl. ¶ 82, ECF No. 1.  The administrative dispute remains pending, Treml Decl. ¶ 3, though Plaintiff characterizes the appeal as "futile," Compl. ¶ 84.

## PROCEDURAL HISTORY

Plaintiff filed suit on October 13, 2025, more than two months after termination of its grant.  Compl.  Plaintiff filed a motion for a preliminary injunction (PI) on October 24, 2025.  PI Mot.  Defendants moved for an additional two weeks to respond to Plaintiff's motion for preliminary relief and committed not to alter the status quo vis-à-vis Plaintiff during that period. Defs.' Mot. to Extend Time, ECF No. 13.  Plaintiff opposed Defendants' motion for an extension, Pl.'s Opp. to Defs.' Mot. to Extend Time, ECF No. 15, and belatedly moved the Court for a temporary restraining order, TRO Mot.  On November 3, 2025, the Court granted Defendants' motion for an extension in part, giving Defendants until Monday, November 10, 2025, to respond to both the PI and TRO motions.[2]

## LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 197 (D.D.C. 2020).  To obtain a temporary restraining order or preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

---

[2] Three other Solar for All grant cases are pending.  A collection of states and the District of Columbia sued in the Western District of Washington, *Arizona v. EPA*, 2:25-cv-2015 (W.D. Wash. complaint filed Oct. 16, 2025), and sued for damages in the Court of Federal Claims, *Md. Clean Energy Ctr. v. United States,* 1:25-cv-1738 (Fed. Cl. complaint filed Oct. 15, 2025).  A collection of sub-grantees and non-grantees sued in the District of Rhode Island, *Rhode Island AFL-CIO v. EPA*, No. 1:25-cv-510 (D.R.I. complaint filed Oct. 6, 2025).

injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *C.G.B.*, 464 F. Supp. 3d at 197. Plaintiff cannot satisfy these requirements.

## ARGUMENT

I.   **Plaintiff Cannot Demonstrate that the Months-Old Termination of a Grant Awarded Under a Program Repealed by Congress Presents an Imminent Risk of Irreparable Injury Justifying a Preliminary Injunction.**

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Accordingly, the D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The movant must identify an injury that is "both certain and great" and "actual and not theoretical." *Id.* (quoting *Wis. Gas Co.*, 758 F.2d at 674). That injury must be "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quotations omitted; emphasis in original). "Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time"; rather, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674 (quotations omitted). "[T]he injury must be beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. And finally, "the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Wis. Gas Co.*, 758 F.2d at 674.

Plaintiff's alleged irreparable harm fails all aspects of this stringent standard, as Plaintiff's alleged harm (a) is not tied to the actions it seeks to enjoin; (b) is not otherwise beyond remediation; and (c) is not certain and imminent. Plaintiff's lack of irreparable harm is also underscored by (d) Plaintiff's over two-month delay in seeking emergency relief. Finally,

6

despite Plaintiff's unsupported concerns to the contrary, (e) an injunction is not required to maintain the status quo: Plaintiff raises legal disputes about facts settled months ago, which can be resolved in the ordinary course of litigation.

> **A.      The Alleged Harm Does Not "Directly Result from the Action" Plaintiff Seeks to Enjoin.**

First, there is a fatal disconnect between the alleged harm Plaintiff identifies and the preliminary injunction it seeks.  Simply put, the injunction Plaintiff seeks against "dismantling Solar for All" will not impact the source of its alleged harm caused by EPA's termination of Plaintiff's grant three months ago.  *See* PI Mot. 13.  While Plaintiff alleges economic and reputational harm from cancellation of the Solar for All program, PI Mem. 36–42, the program itself did not grant Plaintiff any rights or interests.  The only rights and interests Plaintiff has stem from its contractual interest as a grant holder, but Plaintiff does not ask this Court to reinstate its grant (presumably because this Court lacks jurisdiction to order that relief, for reasons discussed below, *see infra* Part II.A).  As such, the request for an injunction against "dismantling" the program will not benefit Plaintiff.

Plaintiff's suggestion that an injunction prohibiting Defendants "from effectuating the Elimination Decision" would "nullify actions taken by EPA pursuant to that unlawful policy—including the grant terminations," PI Mem. 40, is simply incorrect.  Fundamentally, "[a]n injunction is a prospective form of relief, designed to prevent future injury," not to correct harms that have already occurred. *Nigerians in Diaspora Org. Americas v. Key*, No. CV 19-3015, 2021 WL 811094, at *11 (D.D.C. Mar. 3, 2021).  And Supreme Court precedent has made clear that relief as to an agency policy does not impact grant terminations already effected under that policy.  In *NIH*, the Supreme Court considered the government's request to stay 1) a district court order that vacated both internal NIH guidance setting grant funding priorities, and 2)

7

terminations of individual grants effected by NIH under the guidance. *See* 145 S. Ct. at 2661 (Barrett, J., concurring). The Court severed the two, leaving the vacatur of the NIH's policy guidance in place while staying the vacatur of the grant terminations for lack of jurisdiction under the APA. *Id.* at 2660 (quoting *California*, 604 U.S. at 651). That result was only possible because "[v]acating the guidance does not reinstate terminated grants." *Id.* at 2661 (Barrett, J., concurring); *see also id.* (Barrett, J., concurring) ("Even if the guidance and grant terminations are linked, vacating the guidance does not necessarily void decisions made under it."). Instead, even when an agency policy may be subject to APA review and remedy, grant terminations must be addressed in the Court of Federal Claims. *See id.* at 2660; *id.* at 2661 (Barrett, J., concurring).

Thus, as recognized in *NIH*, an injunction prohibiting Defendants from "dismantling Solar for All" cannot lead to the reinstatement of Plaintiff's terminated grant to address Plaintiff's alleged financial harm. And, unlike in *NIH*, Plaintiff cannot demonstrate any interest in any ongoing policy, because there is no separate, forwarding-looking policy to review in this case, or any future grants to which it might apply; there is only purely historical grant termination. *See infra* Part II.A.

Plaintiff's alleged reputational harm suffers from the same defects as its purported financial harm, and more. First, Plaintiff's requested injunction against "dismantling Solar for All" and deobligating or expending funds has no direct connection to reputational harm allegedly caused by Defendants' statements about the GGRF programs and grantees. *See* PI Mem. 41. The requested preliminary injunction will not affect those past statements and thus does not afford a basis for Plaintiff's requested injunctive relief. *See Hailu v. Morris-Hughes*, No. 22-CV-00020, 2022 WL 1124796, at *6 (D.D.C. Apr. 14, 2022) ("The remedy a plaintiff requests must, as a general constitutional principle, be capable of redressing the injury the plaintiff asserts for

standing purposes."). Plaintiff's interest in vindicating its position is not an imminent irreparable injury; it is simply an outcome to be determined on the merits. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (alleged harm that "begs the question" of the case "is more properly viewed in addressing the likelihood of success on the merits").

    **B.**    **The Alleged Harm is Economic and Thus Not "Beyond Remediation."**

The harm Plaintiff alleges is not irreparable because it is overwhelmingly economic. *See* PI Mem. 36–42. It is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quotation marks omitted). "Financial injury is only irreparable where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." *Id.* (quotation marks omitted). Here, an injunction on "dismantling Solar for All" and "expending" Solar for All funds may *block* a path to monetary relief, by preventing Plaintiff (and other grantees) from receiving any funds it is entitled to under the grant closeout process. *See* Termination Memo at 1–2; 2 C.F.R. §§ 200.343, 200.344(f), 200.472. Moreover, Plaintiff may seek damages before the Court of Federal Claims to the extent it alleges other financial injury. Indeed, other Solar for All grantees have already filed a suit for damages in that court. *See Md. Clean Energy Ctr. v. United States*, No. 25-cv-01738 (Fed. Cl. complaint filed Oct. 15, 2025). Any alleged hardship Plaintiff may experience from lack of funding while it pursues monetary relief is insufficient. *See Washington v. District of Columbia*, 530 F. Supp. 2d 163, 170 (D.D.C. 2008) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to establish irreparable harm.) (quoting *Sampson*, 415 U.S. at 90). Because the alleged harm is economic and Plaintiff has recourse to monetary damages, the harm is not irreparable and there is no cause to order injunctive relief.

The D.C. Circuit recently vacated a preliminary injunction on exactly this basis in a similar case involving grants issued under other GGRF programs. *See Climate United*, 154 F.4th at 829. In that case, like this one, the plaintiffs argued that termination of their GGRF grants, and the resulting lack of funding, would grind beneficial energy and affordable housing projects to a halt and would force the plaintiffs to furlough or fire employees and breach contractual commitments. *See Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 117–19 (D.D.C. 2025). Unpersuaded, the D.C. Circuit held the loss of grant funds is not irreparable since a plaintiff can seek redress through money damages. *Climate United*, 154 F.4th at 829. The same is true here—indeed, even more so, as Plaintiff is a Texas county whose existence does not depend on the availability of Solar for All grant funds.

Citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016), Plaintiff attempts an end-run around the economic loss standard by arguing that lack of funding for its planned energy projects will make it "more difficult ... to accomplish" its "primary mission." PI Mem. 37. Plaintiff's argument misses the mark. *League of Women Voters* was not about economic loss—it was about the impact of changes to the federal voter registration form on voter registration efforts. *See* 838 F.3d at 4. Extending *League of Women Voters* to hold that economic loss that harms a plaintiff's "primary mission" is irreparable is contrary to *Climate United*. *See* 154 F.4th at 829 (financial loss that allegedly harmed grantees' "purpose" was not irreparable). Moreover, it would eviscerate the economic loss rule, as any organization could invariably argue that decreased funding makes it more difficult for the organization to accomplish its mission. Indeed, this Plaintiff alone has now made this same argument with respect to two different types of funding—first public health funding and now funding for energy projects—in the past six months. *See* PI Mem. 37; *Harris Cnty., Tex. v. Kennedy*, 786 F. Supp.

10

3d 194, 201, 220 (D.D.C. 2025).  Because *League of Women Voters* does not evince any such intent to abrogate the economic loss rule, the "primary mission" standard does not apply here.[3]

### C.    The Alleged Harm is Not Certain or Imminent.

Plaintiff has also failed to show that the alleged harm is certain and imminent.  First, as a preliminary matter, the purported "risks of defaulting on multi-million-dollar contractual commitments" centered in Plaintiff's motion, PI Mem. 39, could not support an injunction, because the grant terms required Plaintiff to include flow-down termination provisions in subawards and significant procurement contracts, terminating those sub-agreements when EPA terminated Plaintiff's grant.  *See* 2 C.F.R. § 200.340(b) ("The Federal agency *or pass-through entity* must clearly and unambiguously specify all termination provision in the terms and conditions of the Federal award.") (emphasis added); *id.* Pt. 200 App'x II ¶ B (procurement contracts "in excess of $10,000 must address termination for cause and for convenience by the non-Federal entity including the manner by which it will be effected and the basis for settlement").[4]  EPA also terminated the grant early in its performance, further minimizing its impact.  *See* SFA Grant Agreement (identifying budget period of September 1, 2024, through August 31, 2029); Termination Memo at 1 ("Due to the early nature of such expenditures, we

---

[3] Hedging its bets, Plaintiff also argues that the grant termination will force Plaintiff to "divert resources away from" other "core programs."  PI Mem. 39 (quoting *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021)).  Thus, Plaintiff asks the Court to hold not only that direct financial harm to an organization's "primary mission" is irreparable, but also that financial harm to *any* program that may then *indirectly* result (at Plaintiff's discretion) in financial drain from Plaintiff's "primary mission" is irreparable.  Such a result would be the nail in the economic loss rule's coffin.  *League of Women Voters* does not countenance such a result, and this Court should not grant it, either.

[4] *See also* SFA Grant Agreement at 4 (incorporating EPA General Terms and Conditions); EPA General Terms & Conditions ¶¶ 4, 8 (Oct. 1, 2024), *available at* https://www.epa.gov/system/files/documents/2024-10/fy_2025_epa_general_terms_and_conditions_effective_october_1_2024_or_later.pdf.

expect any harms to interests suffered to be remedied and remediable by the close out processes outlined in the program grants and discussed below."). Indeed, the grant refers to its first year as the "planning period." SFA Grant Agreement at 22. As amplified below, any contention that Plaintiff's plans cannot wait until resolution of the lawsuit on the merits is unsupported by any concrete evidence.

Plaintiff has also failed to substantiate its alleged reputational harm. "[A]s with all other forms of irreparable harm, the showing of reputational harm must be concrete and corroborated, not merely speculative." *Trudeau v. FTC*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005). Plaintiff has not shown that firms, contractors, nonprofits, or communities have submitted any complaints to or made disparaging comments about Plaintiff in the three months since Plaintiff's grant was terminated. *See* PI Mem. 39. Similarly, Plaintiff has failed to direct the Court to any negative statement any Defendant made about Harris County, or offer any proof that Defendants' past statements allegedly "malign[ing] the GGRF programs and grantees in the media" in March and August 2025 have redounded to harm Plaintiff in any way. *See* PI Mem. 9, 12–13, 41. And Plaintiff has failed to even allege, must less demonstrate, how its requested injunction is imminently needed to remedy that past harm. *See id.*; *see also Corp. for Pub. Broad. v. Fed. Emergency Mgmt. Agency*, No. CV 25-740 (TJK), 2025 WL 1938198, at *10 (D.D.C. July 15, 2025) ("[A]ny purported reputational damage that CPB suffered when PARS was closed is a 'past harm' that, as explained, does not justify forward-looking relief.") (quoting *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 567 (D.D.C. 2018)). Without proof of certain, imminent reputational harm, Plaintiff's alleged harm is "nothing more than speculation about how third parties might respond" that cannot provide the basis for injunctive relief. *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1134 (D.C. Cir. 2017).

12

### D.    Plaintiff's Months-Long Delay in Requesting Emergency Relief Undermines Its Claims of Irreparable Harm.

Plaintiff's lack of certain, imminent irreparable harm in the absence of preliminary relief is further underscored by Plaintiff's delay in filing these motions for preliminary relief. Delay of even one to two months in filing a motion for preliminary relief undermines a plaintiff's claims of irreparable harm. *See Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) ("[U]ntimely filings may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong."). In *Fund for Animals v. Frizzell*, the D.C. Circuit held that a 44-day delay in requesting an injunction was "inexcusable." 530 F.2d 982, 987-88 (D.C. Cir. 1975). This Court, too, has found delays of two months or less to weigh against preliminary relief. *See, e.g.*, *Heart 6 Ranch, LLC v. Zinke*, 285 F. Supp. 3d 135, 144 (D.D.C. 2018) (two-month delay "undermine[d] [movant's] showing of irreparable injury") (quotations omitted); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (one-month delay "implie[d] a lack of urgency and irreparable harm"); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (two-month delay "militate[d] against a finding of irreparable harm").

By Plaintiff's own telling, Congress repealed the statutory authority for the Solar for All program on July 4, 2025, and EPA terminated Plaintiff's Solar for All grant on August 7, 2025. PI Mem. 11–13. Yet, Plaintiff failed to bring any motion requesting emergency relief until it filed the PI Motion on October 24, 2025—78 days after EPA terminated its grant, and 112 days after Congress repealed the program. *See generally* PI Mot. And Plaintiff then waited yet another nine days before filing its TRO Motion on November 2, 2025, without alleging, let alone proving, that any facts on the ground had changed since termination on August 7. *See generally* TRO Mot; Mem. of Law in Supp. of Harris Cnty.'s TRO Mot., ECF No. 14-1 ("TRO Mem."). Plaintiff's two-month delay before seeking any preliminary relief following termination of its

13

grant—and almost three-month delay before seeking a TRO—cripples its claims of irreparable harm.

> **E.      Plaintiff's Delay Also Underscores That No Emergency Relief is Required to Maintain the Status Quo.**

Having waited three and a half months after OBBBA was enacted and two and a half months after its grant was terminated to file for preliminary injunctive relief, Plaintiff now suggests that an emergency injunction is needed to prevent EPA from taking irreparable action, vaguely averring that EPA might otherwise "dismantle" the program, or place funds "beyond the Court's jurisdiction." *See, e.g.*, TRO Mem. 10–12; PI Mot. 2. Plaintiff offers no legal support or evidence to substantiate its concern, which does not suffice to justify the extraordinary relief Plaintiff seeks. *See supra* Part I.A–C. At any rate, Plaintiff's alleged concerns are misplaced. EPA terminated Plaintiff's grant months ago, long since removing access to the funds. The parties now have legal disputes about jurisdiction and the merits of termination, which can be resolved in the normal course of litigation in the appropriate venue.

Plaintiff suggests that EPA may move funds "beyond the Court's jurisdiction." *See, e.g.*, TRO Mem. 12; PI Mot. 2. While the Court lacks jurisdiction over Plaintiff's claims, *see infra* Part II.A, the "location" of the funds—which are now expired, and for which an outlay is no longer authorized by statute—is irrelevant to Plaintiff's claims. Plaintiff itself acknowledges that funds were, months ago, no longer accessible in its account. *See, e.g.*, PI Mem. 14. As EPA explains, the agency deobligated 93% of the Solar for All grant funds for each recipient, preserving a recorded obligation of 7% of funds for each recipient to pay allowable costs (pretermination and closeout costs). Treml. Decl. ¶¶ 5–6. All grant funds will remain in the same Treasury account, which EPA uses to manage the Solar for All grant program, until September 30, 2031. *Id.* ¶ 7. Plaintiff seeks restoration of the program notwithstanding

Congress' decision to repeal EPA's statutory authority for the program. That relief does not turn on the "location" of the funds, and EPA has already stated that the funds will remain where they are.

The only contingency controlled by EPA that Plaintiff alleges is its own administrative appeal. Plaintiff appears to acknowledge that the appeal will not affect the status quo, because it has not asked EPA to stay those proceedings. *See* Treml Decl. ¶ 3. At any rate, the administrative appeal adds nothing to Plaintiff's contention of irreparable harm. Even if the administrative decision is adverse to Plaintiff, the decision would merely confirm the grant's continued termination. As discussed above, the effects of termination are purely economic, and may be redressed only through a suit for damages in the Court of Federal Claims.

Plaintiff mistakenly contends that grant funds will "deobligate" after the Decision Officer issues his decision. PI Mot. 14–15. As discussed in greater detail below, the funds were deobligated upon termination. *See infra* Part II.B. An injunction cannot undo that prior deobligation. And Plaintiff's argument that the termination and deobligation were "*void ab initio*," TRO Mot. 6, only demonstrates that this case presents no emergency but raises instead a legal dispute about settled facts that can be resolved on the merits in due course.[5]

## II.  Plaintiff is Not Likely to Succeed on the Merits.

Plaintiff has also failed to show it is likely to succeed on the merits. *First*, the Court lacks jurisdiction over any challenge to the termination of Plaintiff's grant, because such claims are contractual and belong in the Court of Federal Claims under the Tucker Act; the court's "equitable jurisdiction" is unavailable for the same reason. *Second*, Plaintiff cannot avoid this

---

[5] Plaintiff's purported surprise that funds were deobligated upon termination, *see* TRO Mem. 10, is not harm. At most, it indicates a dispute about the legal effect of termination, which can be resolved in the litigation in due course.

problem by challenging EPA's termination of the Solar for All program in general, both because Congress repealed the program four months ago, and because Plaintiff lacks standing to raise claims about the repealed program apart from its challenge to grant termination. *Third*, EPA's decision to terminate the SFA grants after OBBBA's enactment was lawful and reasonable; EPA did not violate any provision in the IRA or OBBBA; and Plaintiff's purported constitutional claims are just claims that the IRA and OBBBA bar termination and therefore fail for the same jurisdictional and legal reasons.

> **A.      This Court Lacks Jurisdiction Over Challenges to the Termination of Plaintiff's Grant.**

The only cognizable harm to Plaintiff here is EPA's termination of its Solar for All grant. But the Court lacks jurisdiction to consider the legality of that termination. As recent Supreme Court and D.C. Circuit decisions make abundantly clear, a challenge to a grant termination is a contract claim that must be pursued in the Court of Federal Claims, not recast as an APA claim in federal district court.

> **1.      Plaintiff's claims belong in the Court of Federal Claims.**

The federal government is "immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). Plaintiff argues that the APA provides such a waiver for all its claims. *See* PI Mem. at 18 (describing section 702 of the APA as a "waiver of sovereign immunity" allowing the court to hear Plaintiff's claims "based on the Constitution, federal statutes, and the APA"). It does not. The APA provides only "a limited waiver of sovereign immunity for claims against the United States" seeking relief other than money damages, *id.*, and that waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief

16

which is sought," *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quotation marks omitted).

The Tucker Act "impliedly forbids the relief" sought here.  Under the Tucker Act, the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  As the D.C. Circuit explained, "the Tucker Act impliedly forbids" the bringing of "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (quotation marks omitted).  This prohibition extends to claims founded on grants, like the one at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients."  *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).

Importantly, "[t]his jurisdictional inquiry cannot turn on a plaintiff's preferred characterization of its claim, lest we upset the carefully modulated waiver of sovereign immunity and grant of remedies for breach of contract embodied in the Tucker Act."  *Climate United*, 154 F.4th at 820 (internal quotation marks and citations omitted).  Thus, regardless of how a claim is styled—*i.e.,* as a challenge "based on the Constitution, federal statutes, and the APA," *see* PI Mem. 18—this court lacks jurisdiction if the claim is "in [] essence" contractual.  *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).  To determine whether "a particular action" is "at its essence a contract action" subject to the Tucker Act, courts have looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse*, 672 F.2d at 968 (quotation marks omitted).

17

Applying these principles, the D.C. Circuit recently held that this court lacked jurisdiction to order EPA to continue funding other plaintiffs' GGRF grants. *Climate United*, 154 F.4th at 820. In doing so, the D.C. Circuit considered whether the plaintiffs' claims were "in essence" contractual under the two-pronged analysis of *Megapulse*. First, the Court of Appeals concluded that "[e]ach grantee's right to the funds arises 'only upon creation and satisfaction of its contract with the government; in no sense d[oes] it exist independently of that contract.'" *Id.* at 821 (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)). Second, the Court of Appeals concluded that "the remedy the grantees seek is contractual in nature": "[t]he grantees requested an injunction barring EPA from terminating the grants." *Id.* at 822. The D.C. Circuit thus held that plaintiffs' regulatory and APA claims are "essentially contractual," and plaintiffs' "artful pleading" cannot make them otherwise. *Id.* at 823-24. So too here.

Starting with "the source of the rights," *Megapulse*, 672 F.2d at 968, Plaintiff has no colorable claim to any funding or participation in the Solar for All program absent its SFA Grant Agreement. Neither the APA, the IRA, the OBBBA, nor the Constitution confers any substantive right on Plaintiff to receive government funding. And deciding whether EPA lawfully terminated the SFA Grant Agreement "turns entirely on the terms of" the grant itself. *Albrecht*, 357 F.3d at 69. In short, Plaintiff's "right to the funds arises 'only upon creation and satisfaction of its contract with the government; in no sense d[oes] it exist independently of that contract.'" *Climate United*, 154 F.4th at 821 (quoting *Spectrum Leasing Corp.*, 764 F.2d at 894). Plaintiff's asserted right to reimbursement for continued Solar for All grant funding "in no sense . . . exist[s] independently of" the SFA Grant Agreement.

18

Turning to the "relief sought," *Megapulse*, 672 F.2d at 968, at the heart of Plaintiff's challenges is its desire to obtain continued disbursement of $249,700,000 through the reversal of EPA's decision to terminate its grant. *See* Compl. at 30–31 (asking court to vacate and set aside EPA's decision to terminate the Solar for All grants). Plaintiff does so pursuant to the only legal instrument that would arguably entitle it to any funding at all—*i.e.*, the SFA Grant Agreement. Such relief is indistinguishable from the contractual remedy of specific performance. But the "waiver of sovereign immunity in the [APA] does not run to actions seeking . . . specific performance in contract cases, because . . . the Tucker Act and Little Tucker Act impliedly forbid such relief." *Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C. Cir. 1986). That is precisely why *Megapulse* is distinguishable. There, a government contractor sought to enjoin the government from disclosing technical data provided under the contract. *Megapulse*, 672 F.2d at 967. The court held that the contractor's rights to its technical data were "property rights" that existed outside of any contract right, and the relief sought was not a typical contract remedy of damages or specific performance. *Id.* at 969. Here, unlike the contractor in *Megapulse*, Plaintiff has asserted no independent right outside its alleged right to receive continued funding under its SFA Grant Agreement to continue its performance under that grant. The "relief sought" here exposes Plaintiff's challenges for what they are—contract claims subject to the Tucker Act.

That Plaintiff seeks vacatur of a grant termination decision only underscores the contractual nature of its claims. The Supreme Court has made it clear twice that claims seeking to reinstate terminated grants cannot be brought in district court. *NIH*, 145 S. Ct. at 2658; *California*, 604 U.S. at 650. In *California*, certain states obtained a temporary restraining order "enjoining the Government from terminating various education-related grants" and requiring "the Government to pay out past-due grant obligations and to continue paying obligations as they

19

accrue." 604 U.S. at 650. The government sought an emergency stay of the order in the Supreme Court and won. Focusing on the relief sought, the Court held that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

Two months later, in *NIH*, the Supreme Court reiterated its conclusion in *California*. There, the district court purported to "vacat[e] the Government's termination of various research-related grants." *NIH*, 145 S. Ct. at 2659. Relying on its reasoning in *California*, the Supreme Court stayed the judgment vacating the individual grant terminations. The Court explained that the APA "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* (quotations omitted); *see also id.* at 2661 (Barrett, J., concurring) ("my preliminary judgment is that the plaintiffs' challenges to the grant terminations belong in the CFC"). Thus, the only judgment not stayed was the district court's decision vacating NIH's "[g]oing forward" policy guidance—a decision which did not (and could not) reinstate the terminated grants. *Id.* at 2661 (Barrett, J., concurring). [6]

---

[6] Many courts have reached the same conclusion in grant-termination cases. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (staying injunction where the grants "were awarded by federal executive agencies to specific grantees from a generalized fund"); *Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643, 2025 WL 1865160, at *10–12 (D.D.C. July 7, 2025) (dismissing APA arbitrary-and-capricious grant termination

20

These decisions foreclose any argument that Plaintiff's suit belongs here. Like the grantees in *California* and *NIH*, Plaintiff seeks to "vacat[e] the Government's termination" of its federal grant agreement. *NIH*, 145 S. Ct. at 2659; *California*, 604 U.S. at 650. As the Supreme Court concluded, the APA does not give this court jurisdiction to provide that relief.

Plaintiff attempts to sidestep this prohibition by (i) calling the termination of its grant a "policy-level determination," *see* PI Mem. at 19, and (ii) describing EPA's decision to terminate the grants as "shutting down Solar for All." *Id.* But EPA's decision to terminate the SFA Grant Agreement, in addition to other grants, as the government did in *Climate United*, *NIH*, and *California*, does not convert a grant-termination case into an APA challenge to a prospective, continuing policy. Crucially, there is no forward-looking policy at all in this case that could provide any basis for APA review. In *NIH*, after concluding that the district court lacked jurisdiction to vacate grant termination, the Supreme Court refused to stay the district court order vacating NIH's policy governing future grants. 145 S. Ct. at 2659. In this case, there is no go-forward policy or guidance, and no possibility of any forward-looking policy since Congress

---

claims); *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025) (denying TRO after concluding that the court lacked the authority to "order the Government to pay money due on a contract"), *appeal dismissed voluntarily*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025); *Solutions in Hometown Connections v. Noem*, No. 25-cv-885, 2025 WL 1103253, at *8–10 (D. Md. Apr. 14, 2025) (denying plaintiffs' TRO motion challenging the termination of certain U.S. Citizenship and Immigration Services grants and concluding that plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction"); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 25-cv-30041, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (dissolving TRO because the Department of Education order is an "unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims"); *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) (staying a district court's preliminary injunction in a case involving education-related grants in light of the Supreme Court's *California* decision).

repealed the program. *See infra* Part II.B. There is therefore no room for any APA review here, once the grant terminations are taken off the jurisdictional table.

### 2. Equitable jurisdiction is unavailable here.

This court's "equitable jurisdiction" does not save Plaintiff's case. The Tucker Act grants jurisdiction for Plaintiff to seek relief for allegedly improper grant termination in the Court of Federal Claims; "equitable jurisdiction" provides no basis to evade that avenue for relief.

Equitable jurisdiction, also known as *ultra vires* review or "non-statutory review," applies if "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022). This review "does not apply simply because an agency has arguably reached a conclusion which does not comport with the law." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation and quotation marks omitted). Otherwise, it "could become an easy end-run around the limitations" of "judicial-review statutes." *Id.* Courts therefore "strictly limit[]" its application. *Id.* Indeed, a non-statutory review claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* at 681–82; *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (recognizing that "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations").

Plaintiff has not established (and cannot establish) that equitable jurisdiction is available here. First, Plaintiff's claims are essentially contract claims seeking specific performance of its grant. *See supra* Part II.A. The Tucker Act therefore (i) precludes judicial review in this court, *and* (ii) provides Plaintiff "with a meaningful and adequate opportunity for judicial review," *Nuclear Regulatory Commission*, 605 U.S. at 681, in the Court of Federal Claims. This

22

conclusion is reinforced by *NIH*, *California*, and numerous other cases. *See, e.g.*, *DeVillier v. Texas*, 601 U.S. 285, 293 (2024) (reversing non-statutory exercise of jurisdiction where the plaintiff had an available statutory "cause of action" for compensation that it did not exercise); *Knick v. Township of Scott*, 588 U.S. 180, 201 (2019) (non-statutory equitable relief was unavailable because of availability of a statutory "adequate provision" for obtaining relief under the Tucker Act); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (holding that "it appears unlikely that Plaintiffs' *ultra vires* claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act"). The court lacks equitable jurisdiction for these reasons alone.

Next, the Tucker Act's jurisdictional bar aside, Plaintiff also fails to allege any "specific prohibition" in a statute or constitutional provision that restrained EPA's *authority* to terminate the SFA Grant Agreement. The Supreme Court and the D.C. Circuit "have long required in *ultra vires* cases that the agency action go beyond mere legal or factual error and amount to a clear departure by the agency from its statutory mandate or be blatantly lawless agency action." *Fed. Express Corp.*, 39 F.4th at 764 (citations and internal quotation marks omitted). "Said another way, garden-variety errors of law or fact are not enough." *Id.* Here, EPA indisputably had authority "to make grants on a competitive basis" under the Clean Air Act, as amended by the IRA, *see* 42 U.S.C § 7434, and it had authority to terminate those grants, as provided in the grant agreements themselves. *See* SFA Grant Agreement at 36–37 (describing EPA's authority to terminate the agreement); *see also infra* Part II.C. Whether EPA did so in violation of the grant terms is a question for the Court of Federal Claims. It is not an *ultra vires* question reviewable under the court's "equitable jurisdiction." In sum, Plaintiff "cannot bootstrap district court

23

jurisdiction through the *ultra vires* exception to sovereign immunity" because their claims are essentially contractual. *Climate United*, 154 F.4th at 826.

> **B.      Plaintiff's Attempt to Challenge the End of the Solar for All Program Exposes Its Lack of Standing.**

For the reasons just explained, Plaintiff cannot sue in this Court to challenge the termination of its grant. Very much aware of *NIH*, *see* PI Mem. 20, Plaintiff bends over backwards to instead frame its case as one about how EPA "eliminat[ed]" the Solar for All "*program*." *See, e.g.*, Compl. ¶¶ 11, 63, 80. Plaintiff then frames the preliminary injunction it seeks as a request to enjoin Defendants from "shutting down Solar for All" and "deobligating, expending, or otherwise placing beyond this Court's jurisdiction any funds appropriated by Congress for Solar for All." *Id.* at 30–31. Plaintiff remarkably sidesteps the very reason it filed suit (EPA terminated its grant) and the only legally cognizable injury it experienced (lost grant funds). In doing so, Plaintiff walks into another limitation on this Court's jurisdiction: redressability.

"The Constitution limits the exercise of judicial power to 'cases' and 'controversies.'" *Aetna Life Ins. Co. of Hartford, Conn., v. Haworth*, 300 U.S. 227, 239 (1937) (citing U.S. Const. art. III, § 2). For a "case or controversy" to exist, a litigant must have standing to bring the claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing only if he can "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668–69 (2021) (citations omitted). "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *Id.* at 671. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

24

83, 107 (1998). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Plaintiff cannot satisfy the element of redressability. *First*, an injunction requiring EPA to resurrect the Solar for All "program" is relief that this Court cannot give. On July 4, 2025, Congress enacted OBBBA. This law did two things. It "repealed" Section 134 of the Clean Air Act, and in doing so, it eliminated the statutory subsections governing EPA's administration of the GGRF, including Solar for All. *See* 42 U.S.C. § 7434. Those sections appropriated $26.97 billion to EPA to make grants under the GGRF programs and $30 million to EPA for administrative costs, and they set forth how grant recipients could use the funds. *Id.* § 7434(a)– (c). Next, OBBBA "rescinded" all "unobligated balances" that Congress made available to EPA to carry out the version of Section 134 "in effect" as of July 3, 2025. Thus, the unobligated "administrative costs" provided to EPA could no longer be used to carry out any GGRF program, including Solar for All, as it existed on July 3, 2025. Plaintiff now asks this Court to undo the passage of this law—restoring the now-repealed Solar for All program. Neither EPA nor the Court can restore the Solar for All program: Congress has repealed it.

*Second*, Plaintiff's related request for an injunction to prevent EPA's "deobligation" of funds is also unavailable. Proposed Order, ECF No. 12-8. EPA deobligated Solar for All funds upon termination, over three months ago. *See* Treml. Decl. ¶ 5; *see* Compl. ¶ 80 ("On August 18, 2025 . . . Harris County's SFA account status on the ASAP system changed from 'Suspended' to 'Liquidated.'"). Plaintiff argues its administrative appeal should have delayed deobligation. PI Mem. 14–15. But Plaintiff's contention misinterprets an old Comptroller General decision, 60 Comp. Gen. 591, which provided that the funds obligated for a terminated contract generally remain available *for a replacement contract*. If a bona fide need or purpose remained after the

termination of Plaintiff's Solar for All grant, funding might have remained available under this "replacement contract" theory. But the congressional repeal of the GGRF bars any replacement contract. As a later opinion explained, "[a]bsent the replacement contract doctrine, an agency which terminates a contract would be required to deobligate the prior year funds who support the terminated contract." *In re Navajo Nation Oil & Gas Co.*, B-270723, 96-1 CPD P 187, 1996 WL 174689 at *3 (Comp. Gen. Apr. 15, 1996) (discussing *In re Funding of Replacement Contracts*, 60 Comp. Gen. 591 (1981)). As the very Comptroller General opinion Plaintiff cites explains, "[t]he original funding obligation is extinguished upon termination" and "must be deobligated to the extent it exceeds termination costs" where, as here, the contract is terminated for the government's convenience (an equivalent of grant termination based on agency priorities). 60 Comp. Gen. 591 at 596. Because Congress repealed the GGRF statute, thus removing any possibility of a replacement contract, the funds were deobligated upon termination.[7]

*Third*, an order requiring the EPA not to "expend" or move the deobligated funds "beyond this Court's jurisdiction" would have no legal effect. Because OBBBA repealed the Solar for All program, including Congress's direction to recipients on how they can use the funds, *see* 42 U.S.C. § 7430(a)(3), EPA cannot enter a replacement grant with any other eligible recipient. *See In re Navajo Nation Oil & Gas Co.*, 1996 WL 174689 at *3; *see also supra* n.7.

---

[7] In the earlier *Climate United* litigation, EPA explained that it intended to employ replacement grants to expend the funds that were deobligated by termination of the NCIF and CCIA grants. *Climate United*, 154 F.4th at 827. That was before Congress repealed the GGRF authorization and rescinded the unobligated funds, however. The Court of Appeals recognized that, "[i]f the repeal of the statute bars EPA from recommitting the funds, it stands to reason that the repeal also relieves EPA of any statutory obligation to do so." *Id.* at 828 n.11. That is the case here: the Court should not order EPA to continue the Solar for All program when it no longer has the statutory authority to do so.

The time for doing so was before September 30, 2024; more important, the purpose for doing so no longer exists.

*Finally*, Plaintiff faces a more straightforward redressability problem. The real alleged injury here is Plaintiff's loss of funds resulting from EPA's termination of the SFA Grant Agreement. *See, e.g.*, Compl. ¶ 79 (alleging that "after EPA announced its Elimination Decision, Harris County was blocked from accessing the grant funds in its ASAP account"). But none of "the judicial relief requested" by Plaintiff would (or could) remedy that. EPA terminated the SFA Grant Agreement three months ago, and this Court cannot order EPA to specifically perform. *See Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) ("Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations.") (citing cases). Nor does the Court have jurisdiction to order contract-related damages in any event, as only the Court of Federal claims can hear grant termination claims against the government. *See supra* Part II.A. Because the Court cannot redress Plaintiff's alleged injuries, Plaintiff cannot prevail on the merits of its claims.

### C.    In All Events, Plaintiff's Substantive Claims Lack Merit.

Even if the Court had jurisdiction to consider Plaintiff's APA claims, they lack merit and are unlikely to succeed. The unequivocal repeal of 42 U.S.C. § 7434 underlines why Plaintiff's APA (and statutory/constitutional) claims fail. The OBBBA did not grant Plaintiff any rights or interests. On the contrary, Congress clearly repealed the statutory authority for Solar for All, and rescinded all funding for EPA to administer the program. EPA's decision to terminate the Solar for All grants—after the statutory authority had been repealed and all funds to run the program rescinded—is not arbitrary or capricious, or otherwise contrary to law.

27

1.    *Plaintiff is unlikely to prevail on its APA claims.*

The APA's "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), is "highly deferential and presumes the validity of agency action." *Sissel v. Wormuth,* 77 F.4th 941, 947 (D.C. Cir. 2023) (citation and internal quotation marks omitted); *see also Husky Mktg. & Supply Co. v. FERC*, 105 F.4th 418, 421 (D.C. Cir. 2024) (judicial review under APA standard is "is deferential and narrow in scope."). A court reviewing agency action under the arbitrary-and-capricious standard should only set aside an agency decision if "there has been a clear error of judgement" "based on a consideration of the relevant factors." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Indeed, a court must "uphold [even] a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (quotation marks omitted). The court "may not substitute its own judgment for that of the agency." *Columbia Gulf Transmission v. FERC,* 106 F.4th 1220, 1230 (D.C. Cir. 2024). Instead, the court must "simply ensure[] that the agency has acted within a zone of reasonableness," and an agency decision must be upheld so long as it is "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Plaintiff downplays the significance of OBBBA, but it repealed the program that Plaintiff now asks this Court to resurrect. Upon repeal of 42 U.S.C. § 7434(b), there are no longer any statutory purposes for the grants to meet or statutory authority for EPA to maintain the program. EPA's task after OBBBA was to consider what to do with grants under a repealed program for which Congress also stripped EPA's administrative funding.

Even assuming that EPA could have allowed the grants to continue despite the repeal of the underlying statutory authority, nothing in OBBBA *required* EPA to maintain Solar for All grants after Congress repealed the stated purpose for the program. Terminating the SFA Grant

28

Agreement in this context falls within the "zone of reasonableness," and the APA does not allow the Court to interfere with that decision. *See Prometheus Radio Project*, 592 U.S. at 423. The termination of the SFA Grant Agreement is "reasonable and reasonably explained." *Id.* As stated in the Termination Memo, EPA "no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these programs or of Solar for All. Thus, any attempt to continue the program administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible." Termination Memo at 1.

Indeed, the lack of funding to "continue implementation, oversight or monitoring" is itself dispositive. In *Climate United*, the D.C. Circuit found that EPA's termination of grants under the NCIF and CCIA programs due to its "concerns about lack of oversight," among other reasons, was within EPA's authority and responsibility to manage federal funding. *Climate United*, 154 F.4th at 828–29. Plaintiff may prefer that EPA left the Solar for All grants in place without oversight, but Plaintiff's preference is insufficient to support its APA claims and not a basis for the Court to "substitute its own judgment for that of the agency." *Columbia Gulf Transmission,* 106 F.4th at 1230.

Plaintiff responds that the $30 million Congress appropriated to fund administration of GGRF was not the "sole source of appropriations" available to administer the program because the $30 million was appropriated "[i]n addition to amounts otherwise available." PI Mem. at 27. Plaintiff's invocation of the phrase "[i]n addition to amounts otherwise available" is misplaced. First, that language comes from provisions of the IRA authorizing the GGRF, which the OBBBA has since repealed. Second, that language at no point *required* EPA to expend additional funds to

29

administer the program; it merely authorized EPA to do so if it had funds to expend.[8]  Once Congress repealed the GGRF provisions and rescinded the unobligated balance of funds, EPA was under no obligation to find additional funding to operate the repealed program.  Indeed, continuing to administer the program would have required EPA to undertake the legally questionable and highly programmatic decision to shift funding away from other grants and programs to administer Solar for All.  The decision not to take that step is, at minimum, one for which EPA ought to receive substantial deference.[9]

Finally, even if EPA's terminations of Solar for All grants could be reviewed as a policy decision under the APA, EPA "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one." *Fox Television Stations*, 556 U.S. at 515 (emphasis in original).  Rather, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.*  To the extent that the agency's change in course unsettles any "serious reliance interests," the agency need only acknowledge and address those interests and explain why it is nonetheless pursuing its chosen policy. *Id.*  EPA did so here, including by committing to proceed with the close-out process that is designed to mitigate any reliance harms.  Specifically, "EPA recognizes that program participants may have begun to rely on funds made available through the Solar for All program and have in some instances made preliminary budgets, projections, outlays, and staffing decisions.  Due to the early nature of such expenditures, we expect any harms to interests suffered to be remedied and remediable by the

---

[8] The same phrase appeared in 42 U.S.C. § 7434(a)(1)–(3), provisions that appropriated the $27 billion for the GGRF but similarly did not *require* EPA to expend more than that $27 billion.
[9] *See, e.g.*, 2 C.F.R. § 200.513(c) (explaining responsibilities for awarding agencies with respect to auditing requirements).

close out processes outlined in the program grants and discussed below." Termination Memo at 1. Accordingly, EPA's actions did not violate the APA and Plaintiff's motions must be denied.

### 2. The termination decision did not violate the IRA or OBBBA.

Plaintiff's argument that EPA's termination of the Solar for All grants was contrary to the IRA and OBBBA likewise falls flat. The IRA authorized the EPA to make grants, leaving the agency with substantial discretion over how, to whom, and on what terms. As Plaintiff acknowledges, EPA complied with the IRA and "met [IRA's] mandate, establishing the GGRF programs in 2023 and obligating all grant funds, including the $7 billion for Solar for All by the statutory deadline." PI Mem. 23. In establishing the GGRF and issuing the grants by the statutory deadline of September 2024, EPA fully discharged any duty it may have had under Section 134 of Clean Air Act, as enacted in the IRA.

In construing the IRA in response to a suit challenging EPA's termination of all grants under the other two GGRF grant programs, the D.C. Circuit recently held that "EPA did not violate the [IRA] when it terminated . . . grants," "no statutory provision . . . barred the cancellation of the grants," and "the [IRA] does not limit the Administrator's discretion to . . . terminate grants." *Climate United*, 154 F.4th at 827. The D.C. Circuit's analysis controls here. 42 U.S.C. § 7434(a)(1) only provided that the $7 billion for the Solar for All program would "remain available until September 30, 2024" for EPA to make grants on a competitive basis "as determined appropriate by the Administrator." EPA initially made the money available by the expiration deadline. But Congress never prohibited EPA from terminating the grants or required EPA to create any particular program. And the repeal of the IRA provisions governing the GGRF was a material change in law that supports EPA's decision to terminate Solar for All grants. Certainly, EPA's decision to terminate did not and could not have violated the *repealed provisions* of the IRA governing Solar for All.

31

Plaintiff's assertion that EPA violated a repealed law betrays the fundamentally flawed nature of its case.  Devoting pages of its brief to describing efforts by the Administration to dismantle GGRF does not change the fact that Congress, not EPA, repealed the program and rescinded funding to administer the program. As EPA understood, "any attempt to continue the program's administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible."  Termination Memo at 1.

Plaintiff next argues that EPA violated the OBBBA, relying on the Congressional Budget Office's report that the OBBBA's rescission summed only to $19 million.  But CBO was estimating the *immediate* savings under OBBBA, representing the immediate rescission of the $19 million in remaining administrative funds.  But Congress did not merely rescind those funds and otherwise leave the law intact.  Congress instead went well beyond that—explicitly repealing Section 134 of the Clean Air Act.  By repealing both the appropriation language and the statutory provision governing use of funds, Congress removed the GGRF from the United States' policy agenda.  And that, in turn, provided a reasonable basis for EPA to terminate the existing grants rather than shifting administrative funding away from grants and programs that remained in operation pursuant to extant legislative enactments.

Under Plaintiff's construction of the OBBBA, although Section 60002 repealed the GGRF, Congress purportedly mandated that EPA continue for years, without administrative oversight, 93.93% of the program's original funding already extended to grantees.  PI Mem. 29. To read OBBBA as Plaintiff does, to *require* that the existing grants continue indefinitely, misconstrues and frustrates congressional intent.  Nothing in the OBBBA required EPA to maintain the grants.  And it would be unreasonable to assume Congress intended to require EPA to continue disbursing $7 billion of taxpayer money under the Solar for All grants without funds

32

to provide adequate oversight and without statutory objectives to justify the grants. Rather, EPA reasonably terminated the grants and committed to addressing reliance interests through the closeout process.

At minimum, the OBBBA left EPA significant discretion with respect to those extant grants. "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.' To do so '"is not a construction of a statute, but, in effect, an enlargement of it by the court."'" *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (citations omitted). "This principle applies not only to adding terms not found in the statute, but also to imposing limits on an agency's discretion that are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020). Here, OBBBA does not impose any new limits on EPA's ability to terminate Solar for All grants, and as discussed above, Section 134 also did not bar grant termination. Plaintiff's contention that EPA's action violated both Section 134 and OBBBA fails because it adds terms not found in the statutes and imposes limits on EPA's discretion not supported by the text.

In sum, after GGRF's repeal, the grants no longer had any program goals or agency priorities to effectuate, and EPA had no dedicated funds to administer the program, making termination of the SFA grants an appropriate outcome. EPA determined that termination of Solar for All grants was reasonable, and it had existing authority to terminate grants. 2 C.F.R. § 200.340(a)(4) (allowing agency to terminate a grant when "an award no longer effectuates the program goals or agency priorities").[10] Accordingly, EPA's termination of the SFA Grant

---

[10] To the extent Plaintiff claims that the amended SFA Grant Agreement precluded EPA from terminating the award for its inability to effectuate program goals or EPA's priorities, PI Mem. 17–18 n.20, that is a question of contract and belongs in the Court of Federal Claims.

33

Agreement did not violate the OBBBA or the repealed Section 134 and cannot justify the requested injunctive relief.

### 3. Plaintiff's constitutional claims fail under Dalton.

For the above reasons, EPA's actions were not arbitrary or capricious under the APA and did not violate either OBBBA or Section 134 (which had been repealed by the time EPA terminated the SFA Grant Agreement). Faced with these defects, Plaintiff attempts to salvage its claims by tacking on constitutional claims. However, these constitutional claims are nothing more than disguised statutory and contract claims and cannot succeed on their merits.

First, "claims simply alleging that the [Executive Branch] has exceeded [its] statutory authority are not 'constitutional' claims." *Dalton*, 511 U.S. at 473. The Supreme Court found that "[i]f all executive actions in excess of statutory authority were *ipso facto* unconstitutional . . . there would have been little need . . . specifying unconstitutional and ultra vires conduct as separate categories." *Id*. at 472 (discussing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949)).

Plaintiff's claims are simply allegations that EPA violated either Section 134 or OBBBA as interpreted by Plaintiff. Under *Dalton*, therefore, Plaintiff does not have viable constitutional claims against EPA. Once more, the D.C. Circuit recently recognized as much in the other GGRF litigation: "Claims that agency officials acted in excess of their statutory authority do not *ipso facto* allege violations of the 'Separation of Powers.'" *Climate United*, 154 F.4th at 826. Citing *Dalton*, the D.C. Circuit "decline[d] to adopt a principle that would convert every statutory challenge to agency action into a constitutional claim." *Id*. at 827; *see also Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 792 (D.C. Cir. 2025) (discussing *Dalton* and finding that "statutory claims do not become constitutional ones by operation of the separation-

34

of-powers principles that prevent the States and Executive Branch from disregarding federal statutes").

Even if Plaintiff could assert them, Plaintiff's constitutional claims lack merit on their face. EPA's actions did not violate the Appropriations Clause, which provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. This Clause requires that "the payment of money from the Treasury must be authorized by a statute." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). EPA has taken no action to deviate from this requirement. Section 134 appropriated funds for EPA to make grants, and EPA did so. But EPA had the discretion to oversee and manage the specific grants and programs. EPA's decision, *after Congress repealed the GGRF*, to terminate the Solar for All grants does not conflict with its duty to execute the law. Indeed, there is far greater risk that EPA would have undermined congressional intent by shifting funds from other, extant grants and programs to administer Solar for All absent statutory authority.

The repeal of Section 134 also extinguishes any claim that EPA somehow violated the separation of powers provisions of Constitution when it allegedly failed to enforce a *repealed* law. Cases such as *In re Aiken County*, have no bearing here because they address policy disagreements between the Executive Branch and Congress. *See* 725 F.3d 255, 259 (D.C. Cir. 2013). EPA's decision to terminate Solar for All grants was not a disagreement with congressional policy, but an effort to effectuate Congress's decision to repeal the statutory agenda. It is *Plaintiff* that evidently disagrees with Congress's policy judgment.

Plaintiff's Presentment Clause arguments are similarly irrelevant here. The Presentment Clause provides that after a bill passes Congress, it shall "be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it . . . ." U.S. Const. art. I,

35

§ 7, cl. 2.  In other words, the President cannot enact a different law than what Congress passed. *Clinton v. City of New York*, 524 U.S. 417, 448 (1998).  Plaintiff incorrectly asserts that grant terminations amount to a retroactive repeal of Section 134.  PI Mem. 34.  That is false.  EPA has only terminated the grants prospectively; it has not tried to claw back funds already disbursed under the Solar for All grants.  And, following termination, grantees will receive appropriate closeout costs.  After the repeal of the GGRF, EPA was under no congressional mandate to maintain any of the Solar for All grants; Plaintiff's contention otherwise merely rehashes its argument that EPA violated the OBBBA.

## III.    The Equities Weigh Against Emergency Relief.

Plaintiff cannot establish that the balance of equities and the public interest favor granting the extraordinary remedy of a preliminary injunction.  These final two factors merge in cases where relief is sought from the government.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  In arguing that the public interest weighs in their favor, Plaintiff primarily relies on the notion that it is likely to prevail on the merits and no public interest supports the perpetuating unlawful agency action.  *See* PI Mem. 42–43.  But that is just a repackaged version of Plaintiff's merits arguments, which are not likely to succeed, and not an independent basis for relief.  This is especially true given Plaintiff's nonexistent showing of irreparable harm.

Meanwhile, contrary to Plaintiff's assertions that the government will suffer no cognizable harm if a preliminary injunction is granted, "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (citing same language from *King* in a decision granting a stay pending appeal of a preliminary injunction against a federal agency rulemaking).  This is

36

especially true here, where an injunction would contradict Congress's repeal of all authority and administrative funding for the Solar for All program.  EPA is legally entitled to make decisions and disbursements to effectuate that congressional intent, including by terminating Solar for All grants.  Any injunction interfering with the agency's ability to advance that policy cannot be repaired after the fact.  *Climate United*, 154 F.4th at 830 (finding that "the government's (and the public's) harm from an erroneous injunction" is irreparable because the government has "no apparent means to recover funds spent down" during the course of litigation").

## IV.    Any Injunction Should Be Narrowly Tailored.

Considering Congress's explicit repeal of GGRF, Plaintiff's requested relief that this Court revive the Solar for All program is beyond the Court's authority.  The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there," and that when the statutory "language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (citations omitted).  OBBBA repealed GGRF, including Solar for All, and the Court should not help Plaintiff restore a program that Congress chose to undo.

In any event, Plaintiff requested relief far exceeds this Court's equitable powers.  Plaintiff demands that this Court enjoin EPA with respect to "*any funds previously or currently obligated to the Solar for All*" program.  TRO Mem. at 1–2 (emphasis added).  This request asks the Court to enjoin the administration of $7 billion of federal funding, *see* IRA § 60103(a)(1) (making $7 billion available to EPA to make grants), even though Plaintiff is the recipient of a single $249.7 million grant, *see* SFA Grant Agreement at 1.  Injunctive relief untethered to the plaintiffs in a litigation is unlawful, as the Supreme Court held recently in *Trump v. CASA, Inc.*  Specifically, the Supreme Court held that remedies that bar the enforcement of "a law or policy against

37

*anyone*" fall "outside the bounds of a federal court's equitable authority under the Judiciary Act." *CASA*, 606 U.S. at 837, 847 (emphasis in original).  Injunctive relief cannot "interfere with enforcement of contested statutes or ordinances except with respect to the particular [] plaintiffs."  *Id.* at 844 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).  At most then, a court granting equitable relief "may administer complete relief *between the parties*."  *Id.* at 851 (emphasis in original; citation omitted); *see also California v. Texas*, 593 U.S. at 672 (explaining that remedies, including equitable ones, "ordinarily operate with respect to specific parties," rather than "on legal rules in the abstract") (quotation marks omitted).

Under this Supreme Court mandate, any injunctive relief fashioned by the Court must be limited to Plaintiff, to the extent Plaintiff has established standing and demonstrated irreparable harm.  But the Court cannot restrain Defendants from their ordinary administration of the remainder of the funds appropriated under the now-repealed Section 134 of the Clean Air Act.[11] Plaintiff has no authority or factual basis to request relief on behalf of any other grantees, none of whom are parties to this suit.

**CONCLUSION**

For these reasons, Defendants respectfully request that Plaintiff's PI Motion and TRO Motion be denied.

---

[11] To the extent the Court requires EPA to disburse money, we request stay and a bond.

38

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

KIRK T. MANHARDT
Director

Dated: November 10, 2025

*/s/ Kevin P. VanLandingham*
KEVIN P. VANLANDINGHAM (NY Reg. No. 4741799)
*Assistant Director*
BETHANY R. THERIOT (D.C. Bar No. 1022065)
*Trial Attorney*
U.S. Department of Justice
Civil Division
Corporate/Financial Litigation Section
P.O. Box 875
Ben Franklin Stations
Washington D.C. 20044-0875
Tel: (202) 307-1134
Email: kevin.p.vanlandingham@usdoj.gov

*Attorneys for the Defendants*

39