# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARRIS COUNTY, TEXAS,** | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:25-cv-03646-TSC |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** | |
| and | |
| **LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** | |
| and | |
| **DEVON BROWN, in his official capacity as EPA AWARD OFFICIAL, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** | |
| *Defendants.* | |

**PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    Harris County Seeks Vacatur of EPA's Policy-Level Determination that OBBBA
        Requires (or Authorizes) the Dismantling of Solar for All ................................ 2

        A.   The Agency Action at Issue. ................................................................. 3

        B.   The Relief Sought. ............................................................................... 4

    II.   This Court Has Jurisdiction Over Harris County's Claims. ............................... 5

        A.   The Tucker Act Does Not Preclude Jurisdiction. ................................. 5

        B.   Sovereign Immunity Does Not Attach to Harris County's Constitutional and *Ultra Vires* Claims. ............................................................................... 9

        C.   Harris County's Injuries Are Redressable. ........................................ 11

    III.  The Elimination Decision Violates OBBBA § 60002. ................................... 12

    IV.  The Elimination Decision Violates the Constitution. ...................................... 18

    V.   The Elimination Decision Is Arbitrary and Capricious. ................................. 20

    VI.  Both Vacatur and Injunctive Relief Are Warranted Here. ............................. 23

CONCLUSION ................................................................................................................ 27

## **TABLE OF AUTHORITIES**

**Cases**                                                                                  **Page(s)**

*In re Aiken County*,
   725 F.3d 255 (D.C. Cir. 2013) ................................................................................20

*Changji Esquel Textile Co. v. Raimondo*,
   40 F.4th 716 (D.C. Cir. 2022) ...............................................................................11

*Citizens for Resp. & Ethics in Wash. v. OMB*,
   791 F. Supp. 3d 29 (D.D.C. 2025) .........................................................................25

*Climate United Fund v. Citibank, N.A.*,
   154 F.4th 809 (D.C. Cir. 2025) .............................................................................24

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ..............................................................................................20

*Council for Opportunity in Educ. v. Dep't of Educ.*,
   No. 25-cv-03491 (TSC), 2026 LX 23963 (D.D.C. Jan. 16, 2026) .................5, 9, 10

*Crowley Gov't Servs. v. GSA*,
   38 F.4th 1099 (D.C. Cir. 2022) ...............................................................................9

*Dalton v. Specter*,
   511 U.S. 462 (1994) ..............................................................................................18

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ...........................................................................................2, 20

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025) ............................................................................................6, 9

*DHS v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ..................................................................................................23

*DuBerry v. District of Columbia*,
   924 F.3d 570 (D.C. Cir. 2019) ..............................................................................12

*FCC v. Consumers' Rsch.*,
   606 U.S. 656 (2025) ..............................................................................................15

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021) ..............................................................................................21

*Fed. Express Corp. v. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022) ...............................................................................10

*Filazapovich v. Dep't of State*,
  560 F. Supp. 3d 203 (D.D.C. 2021) ................................................21

*Global Health Council v. Trump*,
  153 F.4th 1 (D.C. Cir. 2025) ................................................18

*Grand Canyon Air Tour Coal. v. FAA*,
  154 F.3d 455 (D.C. Cir. 1998) ................................................13

*Ingersoll-Rand Company v. United States*,
  780 F.2d 74 (D.C. Cir. 1985) ................................................8

*Kidwell v. Dep't of the Army*,
  56 F.3d 279 (D.C. Cir. 1995) ................................................9

*Learning Res., Inc. v. Trump*,
  Nos. 24-1287, 25-250, 2026 U.S. LEXIS 714 (Feb. 20, 2026) .............15

*Lewis v. Parker*,
  67 F. Supp. 3d 189 (D.D.C. 2014) ................................................13

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ................................................22

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ................................................20

*Lummi Tribe of the Lummi Rsrv. v. United States*,
  870 F.3d 1313 (Fed. Cir. 2017) ................................................10

*Marin Audubon Soc'y v. FAA*,
  121 F.4th 902 (D.C. Cir. 2024) ................................................13

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ................................................5, 6, 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................23, 24

*Nat'l Juvenile Law Ctr., Inc. v. Regnery*,
  738 F.2d 455 (D.C. Cir. 1984) ................................................23

*Nat'l Treasury Emps. Union v. Vought*,
  149 F.4th 762 (D.C. Cir. 2025) ................................................18, 19

*Nat'l Treasury Emps. Union v. Vought*,
  774 F. Supp. 3d 1 (D.D.C. 2025) ................................................18

*Nevada v. DOE*,
    400 F.3d 9 (D.C. Cir. 2005) ........................................................................16

*NIH v. Am. Pub. Health Ass'n*,
    145 S. Ct. 2658 (2025) ..................................................................6, 7, 8, 12

*In re Nofziger*,
    925 F.2d 428 (D.C. Cir. 1991) ...................................................................15

*OPM v. Richmond*,
    496 U.S. 414 (1990) ....................................................................................19

*Pollack v. Hogan*,
    703 F.3d 117 (D.C. Cir. 2012) .................................................................9, 10

*Sustainability Inst. v. Trump*,
    165 F.4th 817 (4th Cir. 2026), .......................................................6, 10, 18

*Thakur v. Trump*,
    163 F.4th 1198 (9th Cir. 2025) .....................................................................6

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992) .....................................................................5

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ....................................................................................26

*Vartelas v. Holder*,
    566 U.S. 257 (2012) ....................................................................................14

**Statutes**

5 U.S.C. § 706 ...................................................................................................26

42 U.S.C. § 7434 (CAA § 134) .............................................................. *passim*

Pub. L. No. 119-21, 139 Stat. 72 (2025) (OBBBA) ............................... *passim*

**Other Authorities**

2 C.F.R. § 200.300 ............................................................................................22

2 C.F.R. § 200.340 ..............................................................................................8

2 C.F.R. § 1500.16 ............................................................................................12

2 C.F.R. § 1500.17 ............................................................................................12

171 Cong. Rec. S4080 (daily ed. June 30, 2025) ............................................16

H.R. Rep. No. 119-106 (2025)...........................................................................................16

D.D.C. Local Civil Rule 7(h)...........................................................................................2

# INTRODUCTION

This case is straightforward: It boils down to whether § 60002 of the One Big Beautiful Bill Act ("OBBBA") justifies EPA's decision to eliminate the congressionally mandated $7 billion Solar for All ("SFA") program (the "Elimination Decision"). It does not. The Elimination Decision in fact violates § 60002, the Administrative Procedure Act's prohibition against arbitrary-and-capricious decisionmaking, and—because EPA purported to wipe out a congressionally authorized program absent any statutory authority—the U.S. Constitution. To redress these violations, Harris County seeks vacatur of the Elimination Decision and injunctive relief that bars EPA from killing this important, congressionally mandated program without Congress's permission.

If that sounds like the stuff of an Article III tribunal, that is because it is. The agency's jurisdictional arguments, premised on transparent distortion of the County's claims, cannot save EPA. Neither the Tucker Act nor Article III's redressability requirement bars this suit, so EPA must defend the Elimination Decision on the merits.

But it cannot. Section 60002's prospective repeal of § 134 of the Clean Air Act ("CAA") did not unwind the already established grant programs—a conclusion reinforced by § 60002's rescission clause, which revoked only the tiny fraction of GGRF funds that remained *unobligated* at the time of the new law's enactment. With all $7 billion in SFA grant funds obligated long before OBBBA was passed, it is clear that § 60002 neither required nor authorized EPA to shut down the program. EPA's interpretation of § 60002—or interpretation*s*, as it continues to evolve— would require the Court to read retroactive intent into a statute whose text precludes it; render half the statute superfluous; ignore canons of statutory construction; and permit EPA to usurp Congress's prerogatives.

In the face of these obstacles, EPA commits itself to rewriting Harris County's complaint (and its own record). At every step, the agency asserts that Harris County is challenging EPA's

1

termination of the County's grant—not EPA's wholesale cancelation of the SFA program pursuant to § 60002. In fact, the agency insists that EPA never made a program-wide decision to shut down Solar for All. But Harris County's papers foreclose EPA's depiction of this case, and the record forecloses EPA's claim. As the agency itself stated on August 7, 2025, EPA "made the decision to terminate the SFA program," "pursuant to" its (erroneous) interpretation of OBBBA. ECF 32-4 ("Ex. A") at 1. It is that policy-level decision—the Elimination Decision—that Harris County asks this Court to set aside.[1]

**ARGUMENT**

**I. Harris County Seeks Vacatur of EPA's Policy-Level Determination that OBBBA Requires (or Authorizes) the Dismantling of Solar for All.**

Harris County has been perfectly clear about the agency action this lawsuit targets and the relief the County seeks. Yet EPA persists in mischaracterizing the County's case, plainly believing that strategy its best shot at averting judgment against the agency. This Court should reject that cynical tactic. But lest there be any remaining doubt as to the County's case, this should set this record straight.

---

[1] Harris County incorporates by reference its Statement of Material Facts, ECF 32-2 ("SMF"), submitted in support of its Motion for Summary Judgment, as the County's factual statement in opposition to EPA's cross-motion for summary judgment. EPA objects to Harris County's submission of a separate statement of facts and citations to material outside the AR. *See* ECF 38-1 and ECF 39 (collectively, "Opp.") at 3 n.1, 11 n.3. But the County asserts freestanding constitutional and *ultra vires* claims, and also contends that the agency action at issue—the Elimination Decision—was not the product of the (deficient) reasoning reflected in the AR, but was instead the preordained result of the administration's well-publicized animus toward Solar for All and the other GGRF programs, *see* ECF 32-1 ("MSJ") 36-37; *see also Dep't of Com. v. New York*, 588 U.S. 752, 782-85 (2019) (considering extra-record material in support of pretext claim). Consequently, this action is not "based *solely* on the administrative record," Local Civ. R. 7(h)(2) (emphasis added). Local Civil Rule 7(h) required Harris County to submit a statement of material facts, and that statement properly incorporated reference to material beyond the AR.

### A.  The Agency Action at Issue.

As Harris County has repeatedly emphasized, this action challenges the Elimination Decision, EPA's "policy-level determination that OBBBA requires (or authorizes) the agency to shut down Solar for All—not Defendants' termination of the County's grant." MSJ 18; ECF 12-1 ("PI Mot.") 19; Compl. ¶ 11. EPA's decisions to terminate SFA grants, drain grantees' accounts, and deobligate the funds were a *direct result* of the Elimination Decision. MSJ 18-19; PI Mot. 17; *see* Opp. 19 (conceding that the agency's "interpretation of OBBBA … was the agency's *reason* for terminating the SFA grants"). Harris County does not challenge those secondary actions here; it challenges the unlawful program-wide determination that precipitated them.

Nevertheless, EPA asserts that "this case involves only a challenge to EPA's one-time decision to terminate a group of existing grants." Opp. 20; *accord id.* at 1, 21. Indeed, the agency insists, "there is no agency program decision to review, only grant termination." *Id.* at 2; *see id.* at 29 n.9 (there is no "'SFA program' apart from the terminated grants"). Put differently, EPA maintains that it made no program-level decision to shut down Solar for All, but rather 60 separate and simultaneous grant-termination decisions.

That framing is a headscratcher, as it defies not only common sense but also the agency's own representations. EPA announced on August 7 that it "ha[d] made the decision to terminate the SFA *program* and existing grants," Ex. A at 1 (emphasis added), and the Decisional Memorandum concludes with the recommendation "that the Agency terminate the SFA *program* and all existing grants," AR EPA000096 (emphasis added). EPA's opposition likewise recognizes that "EPA terminated the *program* as of August 7, 2025." Opp. 31 (emphasis added). Then and now, in other words, EPA's own statements underscore its recognition that the Elimination Decision was a program-level determination.

The distinction is not mere semantics. Had EPA indeed simply terminated a grant—or even some "group of existing grants," as the agency would have it, *id.* at 20—Harris County likely would not be here. This Court might well lack jurisdiction over a case challenging such agency action (grant termination), and the County likely could not bring the statutory and constitutional claims it advances here. But that is not all EPA did. Instead, the agency shuttered the entirety of a congressionally mandated program. According to EPA itself, the agency concluded that OBBBA compelled the program's elimination, Ex. A; AR EPA000089-96, and then, pursuant to that determination, EPA terminated every single SFA grant in one fell swoop, cut off grantees' access to their funds, and deobligated roughly 93% of the grant monies, Opp. 9; ECF 20-1 ¶ 5. It is that policy-level determination—the Elimination Decision—that Harris County challenges.

## B. The Relief Sought.

Harris County has been similarly unequivocal about the relief it seeks: (1) vacatur of the Elimination Decision; and, owing to EPA's demonstrated commitment to ending Solar for All, (2) injunctive relief that bars EPA from eliminating the program absent congressional authorization. Compl. 30-31; MSJ 18-19, 43-45; ECF 32-24 (Proposed Order). Beyond vacatur, the County has sought only *prohibitory* injunctive relief—not, as EPA repeatedly insists, a mandatory injunction "requiring EPA to restore the SFA program," Opp. 27; *accord id.* at 2. Nor has Harris County ever "s[ought] the SFA Grant's reinstatement," *id.* at 12; specific performance, i.e., an order "requir[ing] EPA to continue paying under the SFA Grant," *id.* at 17-18; or money damages. To the contrary, the County has expressly disavowed any such request. MSJ 19; PI Mot. 19, 40. Convenient as it would be for EPA's jurisdictional defense, then, the County's papers leave no room for that mischaracterization.

"The very point of this lawsuit," Harris County has explained, "is to invalidate Defendants' OBBBA-based Elimination Decision so that, going forward (i.e., post-vacatur), Defendants cannot

rely on it when reassessing the future of the SFA program and grants." MSJ 20 n.6 (emphasis removed); *see Council for Opportunity in Educ. ("COE") v. Dep't of Educ.*, No. 25-cv-03491 (TSC), 2026 LX 23963, at *25 (D.D.C. Jan. 16, 2026) (a district court plaintiff may seek vacatur of unlawful agency action and "another opportunity to be evaluated, which 'would not result in the automatic reinstatement or continuance of [its] grants or the payment of any money to grantees'" (quoting *Washington v. Dep't of Educ.*, 161 F.4th 1136, 1140 (9th Cir. 2025))).

To repeat: Harris County seeks vacatur of EPA's unlawful policy-level determination that OBBBA requires (or permits) the agency to eliminate Solar for All. EPA's defense—from jurisdiction to merits to remedy—is premised on misdirection and mischaracterization. But as demonstrated below, the agency's case crumbles when stripped of that distortion.

## II. This Court Has Jurisdiction Over Harris County's Claims.

### A. The Tucker Act Does Not Preclude Jurisdiction.

EPA's Tucker Act arguments are all variations on the same spurious theme—that Harris County brings disguised contract claims. But EPA is right about one thing: Courts should indeed look "beyond the pleadings … to determine if [a case] involves a claim over which the Court of Claims has exclusive jurisdiction." *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C. Cir. 1982); *see* Opp. 14. And in this case, that exercise shows just the opposite: that only this Court is empowered to adjudicate Harris County's claims.

Applying the familiar two-factor *Megapulse* test is straightforward here. "[T]he source of … rights" for Harris County's claims, 672 F.2d at 968, are federal statutes and the U.S. Constitution. This lawsuit asserts that EPA's policy-level decision to shut down the congressionally authorized SFA program (the Elimination Decision) violates the APA, OBBBA § 60002, and the Constitution. *See supra* pp. 3-4. The County's claims are thus founded on these (public-law) authorities—not the (private-law) terms of the parties' agreement. *See Transohio Sav.*

*Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992) (the question is whether, "despite the presence of a contract, plaintiffs' claims are founded only on a contract, or [instead] stem from a statute or the Constitution"). The upshot is that Harris County's claims belong in this Court and only this Court. *See* MSJ 16-17 (explaining that the County's claims "are well outside the jurisdiction of the Court of Federal Claims" ("CFC")).

*Megapulse*'s second factor, the "the type of relief sought (or appropriate)," 672 F.2d at 968, reinforces that result. Harris County seeks vacatur of the Elimination Decision, not of EPA's grant "termination decision," Opp. 17. *See supra* pp. 4-5. And the County seeks *prohibitory* injunctive relief, *id.*—not "the SFA Grant's reinstatement," "continue[d] pay[ment] under the SFA Grant," or money damages, Opp. 12, 17. Only this Court can award the relief the County seeks. *See* MSJ 17-18 (explaining that the CFC "is powerless to stop the constitutional, statutory, and APA violations here").

EPA's arguments to the contrary fail.

*First*, in contrast to this case, those on which EPA relies *do* involve challenges to grant termination decisions and requests "to enforce a contractual obligation to pay money," *Dep't of Educ. v. California,* 604 U.S. 650, 651 (2025) (per curiam). *See* Opp. 14-17 (discussing *California*; *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Thakur v. Trump*, 163 F.4th 1198 (9th Cir. 2025); and *Sustainability Inst. v. Trump*, 165 F.4th 817 (4th Cir. 2026)).

The only case EPA cites that involves a challenge to agency policy like the one at issue here is *NIH*, and the Supreme Court made clear that such a challenge belongs in district court—not the CFC. In *NIH*, the plaintiffs challenged agency policy (set out in guidance documents) that governed the agency's grant-termination decisions, as well as the agency's decisions terminating individual grants pursuant to that policy. 145 S. Ct. at 2661 (Barrett, J., concurring). The district

court declared unlawful and vacated both categories of agency action—the policy underlying the grant terminations and the termination decisions themselves. *Id.* The Supreme Court granted a stay with respect to the latter category, "the District Court's judgments vacating the [agency's] termination of various research-related grants," *id.* at 2660. But the Court *denied* the government's request to stay the district court's judgment vacating the unlawful agency policy. *Id.* Although "the District Court likely lacked jurisdiction to hear challenges to the grant terminations," the Supreme Court reasoned, the district court was right to adjudicate plaintiffs' challenges to the policy underlying those terminations. *Id.* at 2661 (Barrett, J., concurring).

For this reason, EPA's contention that *NIH* nowhere "considered the agenc[y's] *reasons* for the grant terminations, [n]or held that those *reasons* should be treated as 'agency-wide policies' … reviewable in district court," Opp. 20, is puzzling. For that is exactly what *NIH* did. As Justice Barrett recognized, "[p]laintiffs frequently seek vacatur" of unlawful agency policy, and the fact that such policy "relate[s] to grants does not transform a challenge to that [policy] into a claim 'founded … upon' contract that only the CFC can hear." 145 S. Ct. at 2661 (Barrett, J., concurring). The same is true in this case. Just as the *NIH* plaintiffs permissibly sought vacatur in district court of the NIH policy that dictated the termination of their grants, Harris County seeks vacatur of EPA's unlawful OBBBA-based Elimination Decision, which "was the agency's *reason* for terminating the SFA grants," Opp. 19. If Harris County prevails, then *going forward* (i.e., post-vacatur), EPA will not be able to rely on its erroneous interpretation of OBBBA when reassessing the future of the SFA program and grants. *See NIH*, 145 S. Ct. at 2662 n.2 ("If a district court decides that agency guidance violates the APA, it may vacate the guidance, preventing the agency from using it going forward.").

*Second*, EPA suggests that it "terminat[ed] the SFA grants pursuant to 2 C.F.R. § 200.340" and not its OBBBA-based policy. Opp. 19. But even if that were true, it would be no help to EPA on the Tucker Act, because Harris County does not challenge EPA's termination of its grant. And it would be no help to EPA on the merits, because an agency may shut down a congressionally authorized program only by permission of Congress—not pursuant to a regulation that outlines the circumstances under which an agency may terminate an individual grant. *See infra* pp. 13, 18-20. Regardless, EPA's Notice of Termination and Decisional Memorandum leave no doubt that the Elimination Decision—which dictated the grant terminations—was based not on 2 C.F.R. § 200.340, but instead (and exclusively) on the agency's incorrect reading of OBBBA § 60002. *See* Ex. A; AR EPA000089-96.[2]

*Finally*, quoting a clause in *NIH*, EPA argues that even if this lawsuit seeks to invalidate only grant-related agency policy (the Elimination Decision) and requests only non-monetary equitable relief, it is nevertheless barred by the Tucker Act because it is "*designed to* gain Harris County the benefit of its grant." Opp. 21 (citing *NIH*, 145 S. Ct. at 2660) (emphasis added); *see NIH*, 145 S. Ct. at 2660 (a district court may not "order relief designed to enforce any 'obligation to pay money' pursuant to [federal] grants" (quoting *California*, 604 U.S. at 651)).

But as *NIH*'s endorsement of exactly this type of lawsuit makes clear, the language EPA quotes simply reaffirms that a district court may not "enforce a contractual obligation to pay

---

[2] For similar reasons, EPA's reliance on *Ingersoll-Rand Company v. United States*, 780 F.2d 74 (D.C. Cir. 1985) is misplaced. EPA insists that, similar to the facts in that case, the contract here "contains a section outlining [the agency's] termination rights, including the right to terminate under 2 C.F.R. § 200.340," and EPA "invoked that regulation to terminate the grant." Opp. 18. Thus, EPA asserts, just as it was "possible to conceive of th[e] dispute" in *Ingersoll-Rand* "as entirely contained within the terms of the contract," 780 F.2d at 78, the same is true of *this* "dispute that EPA unlawfully terminated Harris County's grant," Opp. 18-19. But, again, Harris County does not challenge EPA's unlawful termination of its grant in this action, *supra* pp. 3-4, and EPA's contract-based *defense* is irrelevant to the Tucker Act inquiry, *see Megapulse,* 672 F.2d at 968-69.

money," i.e., order specific performance, *California*, 604 U.S. at 651. It does not suggest that the Tucker Act precludes an action just because "monetary benefits … may [ultimately] flow from [the plaintiff's] victory," *Kidwell v. Dep't of the Army*, 56 F.3d 279, 285 (D.C. Cir. 1995). To the contrary, *California* expressly instructed that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," 604 U.S. at 651 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)). That Harris County's grant *could* be reinstated if the Elimination Decision is set aside does not deprive this Court of jurisdiction. *See id.*; *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1111 (D.C. Cir. 2022); *Kidwell*, 56 F.3d at 285; *COE*, 2026 LX 23963, at *22 (that "vacatur of the [grant application] denial decisions and reconsideration in accordance with the law … may lead to funding in the future" does not "transform [these] claims into ones seeking money damages").

### B. Sovereign Immunity Does Not Attach to Harris County's Constitutional and *Ultra Vires* Claims.

In any event, even if the Court were to determine that the APA's waiver of sovereign immunity were inapplicable, it could still adjudicate Harris County's statutory and constitutional claims pursuant to its equitable authority to set aside agency action that is unconstitutional or *ultra vires* of statutory authority. *See* MSJ 21-22. "[It] is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions … are alleged to be unconstitutional or beyond statutory authority." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (per curiam) (cleaned up); *see* MSJ 21.

EPA contends that Harris County's constitutional and statutory *ultra vires* claims are nevertheless foreclosed because they are in fact "disguised contract claims," Opp. 21-22, and therefore must be brought in the CFC. But as already explained, Harris County's claims (including its constitutional and statutory *ultra vires* claims) challenge EPA's unlawful policy-level

determination to eliminate Solar for All—not, as the agency repeatedly and wrongly asserts, EPA's "terminat[ion of] the SFA grants," Opp. 23. As a result, the CFC is powerless to hear the County's claims, let alone redress them, *see Lummi Tribe of the Lummi Rsrv. v. United States*, 870 F.3d 1313, 1317-19 (Fed. Cir. 2017), and the Tucker Act neither precludes judicial review in this court nor provides Harris County an alternate forum for relief, *see* MSJ 22; *see also COE*, 2026 LX 23963, at *18 n.5 (noting that similar jurisdictional arguments about Tucker Act preclusion were "misplaced" as to constitutional and *ultra vires* claims because such arguments "relate[] to jurisdictional limits on APA review").[3]

Also wrong is EPA's assertion that Harris County's claims fail because the County has not shown that EPA "clear[ly] departed" from a statutory or constitutional mandate. Opp. 23 (quoting *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022)). To start, no such heightened standard applies to Harris County's constitutional claims; as to those, all Harris County must show is a constitutional violation, and the County has shown several, *see infra* pp. 18-20; MSJ 40-43. *See Sustainability Inst.*, 165 F.4th at 830 (explaining that "[n]onstatutory review claims alleging a constitutional violation … are not subject to the same restrictions" as claims alleging action *ultra vires* of statutory authority); *see also Pollack*, 703 F.3d at 120 (explaining that "suits for specific relief against officers of the sovereign allegedly acting … unconstitutionally are not barred by sovereign immunity" (citation omitted)).

As for Harris County's statutory *ultra vires* claims, EPA's elimination of the SFA program is plainly a "clear departure" from its statutory mandate to maintain the program, *Fed. Express*, 39 F.4th at 764—a mandate from which OBBBA by no means relieved the agency, *see infra* pp. 12-

---

[3] The other cases cited by EPA concern claims for compensation for violations of the Takings Clause and have no relevance to the equitable relief Harris County seeks here. Opp. 23 (citing *DeVillier v. Texas*, 601 U.S. 285, 293 (2024) and *Knick v. Twp. of Scott*, 588 U.S. 180, 201 (2019)).

18. EPA seeks to distract from the Elimination Decision's "patent[] … misconstru[ction]" of OBBBA, *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022), by claiming that its termination of the SFA *grants* was not *ultra vires* of its statutory authority, *see* Opp. 22-23. But that simply ducks Harris County's argument, which targets EPA's decision to eliminate a congressionally mandated *program*. That decision was *ultra vires* of EPA's authority under the IRA and OBBBA, which both prohibit EPA from doing exactly that.

### C. Harris County's Injuries Are Redressable.

Still seeking to avoid the merits, EPA contends that Article III's redressability requirement bars this suit. The agency presses two unpersuasive points.

First, it argues that "an injunction requiring EPA to resurrect the SFA program is relief that this Court cannot give." Opp. 24. "Congress has repealed" the SFA program via § 60002, the agency urges, so "[n]either EPA nor the Court can restore this program." *Id.* at 25.

That argument misses the mark for several reasons. To begin, *Congress* did not shut down Solar for All; EPA did—illegally. *See infra* pp. 12-18; MSJ 26-35. Harris County thus asks the Court to *enforce* § 60002, not "to undo [it]," Opp. 25. In any event, Harris County has never sought a mandatory injunction "requiring EPA to resurrect the SFA program," *id.* at 24. Instead, as emphasized many times over, Harris County seeks vacatur of the Elimination Decision and a prohibitory injunction barring the program's dismantling absent congressional authorization. *See supra* pp. 4-5.

EPA's second argument is no better. The agency contends that, because the Court cannot reinstate the County's grant, any relief the Court orders will not redress the County's real injury, the "loss of grant funds." Opp. 25. In fact, EPA argues, "[w]ithout any ability to reverse grant termination," an order in the County's favor would be "no more than an 'advisory opinion.'" *Id.*

Notably, EPA fails to acknowledge—let alone refute—the many authorities Harris County cited in its opening brief that foreclose this argument. In *NIH*, for example, the Supreme Court recognized that grant recipients have standing to challenge grant-related agency guidance, even where an order "vacating [that] guidance does not necessarily void decisions made under it," i.e., does not automatically reinstate grants terminated pursuant to it, 145 S. Ct. at 2661 (Barrett, J., concurring). MSJ 23. The County also pointed to numerous D.C. Circuit decisions holding that Article III's standing requirement is met where a plaintiff's requested relief would remove a barrier to ultimately redressing its injury. *See* MSJ at 23-24 (collecting cases). Indeed, "[t]he law is clear that a party has standing to pursue a claim so long as the relief sought will constitute a 'necessary first step on a path that could ultimately lead to relief fully redressing the [claimant's] injury.'" *DuBerry v. District of Columbia*, 924 F.3d 570, 583 (D.C. Cir. 2019) (quoting *Power Co. of Am., L.P. v. FERC*, 245 F.3d 839, 842 (D.C. Cir. 2001) (second alteration in original)).

Here, vacatur of the OBBBA-based Elimination Decision would remove EPA's sole justification for shuttering Solar for All, *see* Ex. A; AR EPA000089-96, clearing the way for Harris County to prevail in its administrative appeal of the grant termination or, alternatively, for EPA to voluntarily reinstate the grant. *See* MSJ 23-24. Such relief is hardly an "advisory opinion."[4]

### III. The Elimination Decision Violates OBBBA § 60002.

When EPA announced the Elimination Decision on August 7, 2025, it asserted that the agency had no choice but to shutter Solar for All because OBBBA § 60002 had "repeal[ed] the

---

[4] Whatever EPA means to say in its "Schrödinger's grant" digression, Opp. 25-26, there is nothing contradictory about Harris County's administrative appeal arguments. First, as EPA does not dispute, so long as the Elimination Decision stands, the County's appeal is futile. *See* Ex. A. Second, and separately, EPA's termination of Harris County's SFA grant constitutes preliminary agency action because the County's administrative appeal remains pending. MSJ 19 n.5. EPA's grant termination decision will become final when it reaches a "disposition" on the appeal. *See id.*; 2 C.F.R. § 1500.16-1500.17.

underlying authority for the Solar for All program" and "terminated … all appropriations related to Solar for All," including the "grant appropriations." Ex. A at 1. EPA shifted gears in this litigation, arguing at the preliminary-injunction stage that OBBBA § 60002 authorized the program's elimination by "repeal[ing] the program," "rescind[ing] … the unobligated 'administrative costs' funding," and granting EPA "significant discretion with respect to [the SFA] grants." PI Opp. 25.[5] Now, at the summary-judgment stage, the agency's justification for the Elimination Decision is anyone's guess. *Compare, e.g.*, Opp. 27 ("OBBBA itself repealed the SFA program"), *with* Opp. 31 ("EPA terminated the [SFA] program"), *and* Opp. 20 (EPA merely "terminate[d] a group of existing grants").

But the exact contours of EPA's evolving argument are largely immaterial—and not just because the Court should ignore "*post-hoc* rationalizations," *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 469 (D.C. Cir. 1998). The agency's precise argument is irrelevant because, as EPA concedes (Opp. 27), federal agencies "literally have no power to act except to the extent Congress authorized them," *Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 912 (D.C. Cir. 2024) (cleaned up) (citation omitted). There is no dispute that Congress authorized EPA to establish and fund the GGRF programs, including Solar for All, by September 30, 2024. Opp. 3. Nor is there any dispute that EPA did so, obligating all grant funds (including $7 billion for Solar for All) before that deadline and administering the SFA program for nearly a year before OBBBA was passed. Opp. 4-6. Because EPA had "no power" to tear down the program without Congress's say so, *Marin*

---

[5] EPA objects to Harris County's references to EPA's preliminary-injunction ("PI") filings, Opp. 11 n.3, but EPA does the same where it serves the agency's argument, Opp. 32 (citing Treml Decl., ECF No. 20-1). In any event, the Court may take judicial notice of public documents filed on a court docket, *see Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014) (collecting cases)— especially those filed on the very same docket, as here.

*Audubon*, 121 F.4th at 912, the only question is whether § 60002 justifies the Elimination Decision. It does not, for the reasons explained in Harris County's opening brief. MSJ 26-35.

As best Harris County can discern, EPA objects to this conclusion on three grounds—each as meritless as the last. First, EPA argues that § 60002's repeal clause somehow removed the agency's "authority to maintain [the] SFA program." Opp. 27; *accord id.* at 28-29. That is incorrect. As Harris County has explained, § 60002—which declares in plain and present tense that CAA § 134 "is repealed," OBBBA § 60002—*prospectively* repealed § 134. *See* MSJ 26-28. Such language does not unwind (or authorize EPA to unwind) the already established SFA program. That would require that Congress "unambiguously instruct[] retroactivity," *Vartelas v. Holder,* 566 U.S. 257, 266 (2012); *see infra* pp. 16-17, and OBBBA does just the opposite.

EPA's savings-language argument (Opp. 28) does not suggest otherwise. True, § 134's repeal without savings language means that any future Congress cannot rely on the now-repealed statute to appropriate funds for GGRF grants. MSJ 28. But that has no bearing on EPA's obligations toward the *already established* SFA program. The cases cited by EPA, which, unlike this one, concern actions that had *not yet been completed* when the statute under which they were to be carried out was repealed, are therefore inapposite. *See* Opp. 28 (citing *In re Shaver*, 140 F.2d 180, 182 (7th Cir. 1944) (repealed law governed ongoing immigration proceedings only to extent allowed by savings clause); *Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 933-34 (9th Cir. 2011) (law repealed without savings language did not authorize regulation promulgated decades later); *Foley v. Carter*, 526 F. Supp. 977, 984 (D.D.C. 1981) (Congress could alter *future* pay of judicial employees "by altering or repealing the statute on which it is based")).

Section 60002's rescission clause confirms the limited scope of the statute's prospective repeal by rescinding only the remaining "unobligated balances"—$19 million in administrative

funding—appropriated under CAA § 134. MSJ 28-29. For one thing, this language would be superfluous under EPA's reading of the repeal clause, *see* MSJ 27—a point the agency does not dispute. After all, if the repeal retroactively deprived EPA of authority to maintain the programs, thereby requiring their cancelation, unobligated program funds would revert to Treasury with no need to separately rescind them. For another, as the *expressio unius* canon instructs, the recission clause makes clear that the agency was *not* to touch the obligated grant funds. *See* MSJ 30, 34. Indeed, the recission clause reflects exactly the kind of "circumstances [that] support[] a sensible inference that the term left out [here, "obligated" funds] must have been meant to be excluded," Opp. 29 (quoting *Anderson v. HUD*, 731 F. Supp. 3d 19, 44 (D.D.C. 2024)).

EPA's contrary reading—that § 60002's text in fact "left EPA discretion regarding extant grants," Opp. 30—is both implausible and unlawful. According to EPA's theory, Congress mandated the recission of just $19 million in uncommitted administrative funding (0.07% of GGRF funds) and left to the agency's "discretion" the fate of the $26.97 *billion* in obligated grant monies (99.89% of GGRF funds)—an amount more than six times the $4.16 billion that Congress appropriated for EPA's *entire budget* in 2026.[6] The notion that Congress would silently hand over the purse strings like EPA posits is absurd and almost certainly unconstitutional. *See In re Nofziger*, 925 F.2d 428, 434 (D.C. Cir. 1991) ("[S]tatutes must be construed reasonably so as to avoid absurdities."); *Learning Res., Inc. v. Trump*, Nos. 24-1287, 25-250, 2026 U.S. LEXIS 714, at *19 (Feb. 20, 2026) (op. of Roberts, C.J.) (cautioning against finding delegation where "the purported delegation involves the core congressional power of the purse"); *FCC v. Consumers' Rsch.*, 606

---

[6]    EPA, FY 2026 EPA Budget in Brief (May 2025), at 3, 15 https://www.epa.gov/system/files/documents/2025-05/fy-2026-epa-bib.pdf.

U.S. 656, 673 (2025) (delegation lacking "intelligible principle" to guide agency discretion is "impermissible").

Second, EPA points to § 60002's rescission clause, arguing that the agency could not "continue running a program" whose administrative "appropriations have been eliminated by Congress." Opp. 28-29. But as the County has explained, MSJ 31-32, the administrative appropriation in § 134 was never meant to be EPA's sole source of funds for program expenses. Congress appropriated $30 million, "*[i]n addition to amounts otherwise available,*" to help cover program costs, CAA § 134(a)(4) (emphasis added), so there can be no argument that § 134(a)(4)'s "specific purpose is exclusive of other appropriations in general terms which might be applicable in the absence of [CAA § 134(a)(4)'s] appropriation," *Nevada v. DOE*, 400 F.3d 9, 16 (D.C. Cir. 2005). EPA itself has recognized that the entire $30 million in administrative funding "was anticipated to be exhausted during fiscal year 2026," ECF 32-5 ("Ex. B") at 5. EPA thus requested additional funds for GGRF-related administrative expenses for both fiscal years 2024 and 2025, and Congress then appropriated the agency *billions* in "Environmental Programs and Management" funding for the agency to use for necessary "personnel and related costs" "not otherwise provided for." *See infra* pp. 22-23. These substantial program management funds were available to EPA when it announced the Elimination Decision, and they remain available today.[7]

---

[7] EPA's legislative-history argument (Opp. 30 n.10) is also perplexing. Statements of numerous legislators explaining that § 60002 would not affect obligated grants seems entirely relevant to whether OBBBA authorized EPA to shut down the SFA program and pull back $7 billion in obligated grant funding. By contrast, EPA's preferred history adds nothing. The House Committee on the Budget report simply provides, like § 60002 itself, that OBBBA "repeals the [GGRF's] authorization" of appropriations and the unobligated funds (i.e., the $19 million). H.R. Rep. No. 119-106, at 557 (2025). And Senator Capito's statement of Congress's supposed "intent," 171 Cong. Rec. S4080 (daily ed. June 30, 2025), does not even concern the SFA program.

EPA's next argument—that despite purporting to unwind the SFA program, the Elimination Decision "was not 'retroactive' in any sense," Opp. 31—fares no better. EPA does not dispute that § 60002's repeal clause applies only prospectively. *See id.* And EPA concedes that a statute is retroactive if it "attach[es] new legal consequences to events completed before its enactment," Opp. 31 (quoting *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 269-70 (1994)). Yet EPA insists that its "terminat[ion] of the [SFA] program" did not operate retroactively because it "did not undo any of the work that the agency had done under SFA prior to that time," Opp. 31. But that is exactly what the Elimination Decision did.

Before the September 30, 2024 deadline Congress set out in CAA § 134, EPA had completed its obligations under that statute, establishing the grant programs, obligating all grant appropriations, and launching program operations. *See* Opp. 28 n.8. Ten months later, EPA announced the Elimination Decision, purporting to dismantle the SFA program "pursuant to" OBBBA § 60002. That policy-level determination triggered a series of actions that "attached new legal consequences to events completed before [§ 60002's] enactment," Opp. 31 (quoting *Landgraf*, 511 U.S. at 269-70), including the agency's termination of all SFA grants, removal of grantees' access to their funds, and deobligation of roughly 93% of the grant monies, *supra* p. 3. The Elimination Decision thus dramatically "affect[ed] substantive rights" secured "before [§ 60002's] enactment," Opp. 31 (quoting *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30, 37 (2006)). EPA's actions, in other words, reflect a quintessentially retroactive interpretation of § 60002—in direct violation of the statute's text.

Finally, EPA is left to argue that the Elimination Decision did not violate OBBBA because § 60002 "d[id] nothing to limit EPA's authority to terminate existing SFA grants," Opp. 30; *see id.* at 31 ("The plain language of OBBBA imposes no limits on EPA's ability to terminate SFA

grants."). But that is irrelevant, both because Harris County is not challenging the termination of grants here and because EPA did not simply terminate grants; it shut down the whole of Solar for All, a congressionally mandated program. *See supra* pp. 3-4. Absent express authorization from Congress, it may not do so.

### IV.  The Elimination Decision Violates the Constitution.

EPA's principal response to Harris County's constitutional claims is—yet again—mischaracterization. Reducing Harris County's challenge to EPA's unauthorized elimination of the entire SFA program to an objection to EPA's termination of the County's grant, Opp. 33, EPA asserts that Harris County's constitutional claims "simply alleg[e] that [EPA] has exceeded [its] statutory authority" to terminate SFA grants, Opp. 32 (quoting *Dalton v. Specter*, 511 U.S. 462, 473 (1994) (alterations in original)). That tactic fails for the reasons repeatedly explained. *See supra* pp. 3-4. And because EPA has no authority whatsoever under OBBBA (or any other statute) to eliminate Solar for All, *see supra* pp. 12-18; MSJ 26-35, *Dalton* has no application to Harris County's constitutional claims, *see* MSJ 42-43; *see also Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 42 (D.D.C. 2025) ("Since there is no act of Congress that empowers the President to shut down the CFPB in his discretion, *Dalton* does not apply …."). [8]

*Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025), is not to the contrary. *See* Opp. 33-34. There, a federal statute—just as in *Dalton*—"directly contemplated the presidential action under consideration," *Nat'l Treasury Emps. Union*, 149 F.4th at 821-22 (Pillard, J.,

---

[8] EPA continues to rely on a Circuit panel opinion in *National Treasury Employees Union*, without any acknowledgement that the panel's decision was set aside by the en banc court. *See* Opp. 32 (citing *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025), *vacated by* 2025 LX 596586 (D.C. Cir. Dec. 17, 2025)). The only other decision cited by EPA, *Sustainability Institute*, 165 F.4th at 817, is also inapposite because, unlike Harris County, the *Sustainability Institute* plaintiffs *did* challenge the termination of their grants, *see supra* p. 6.

dissenting). Nothing like that exists here. Rather, the most that can be said is that in unconstitutionally canceling Solar for All (that is, in violating the Appropriations Clause, the Presentment Clauses, and the Separation of Powers, MSJ 40-42), EPA also violated OBBBA. And EPA provides no support for the audacious proposition (Opp. 33) that if an agency violates a federal statute while violating the Constitution, viable constitutional claims *ipso facto* become unavailable.

On the merits, EPA offers only more misdirection. The agency repeatedly avers that Harris County's constitutional claims fail because EPA's "termination of SFA *grants* violates no constitutional provisions." Opp. 33 (emphasis added); *see id.* at 35 ("The decision to terminate the SFA grants does not implicate the Appropriations Clause …."); *id.* ("termination of the SFA grants" did not "implicate[]" the Presentment Clauses); *id.* at 34 (Congress did not "require EPA to continue administering existing SFA grants").

But that is not what Harris County alleges. And stripped of that distortion, EPA's constitutional argument unravels. Whatever authority EPA has to terminate grants plainly does not permit it to eliminate entirely a congressionally mandated program; indeed, not even EPA argues that. Instead, the agency asserts that the Elimination Decision did not violate the Constitution because "OBBBA repealed any congressional mandate regarding the SFA program." *Id.* at 33; *see also id.* at 34 (claiming that "no statutorily mandated activity remained" after OBBBA). But that is simply wrong. *See supra* pp. 12-18; MSJ 26-35. As Harris County has explained, § 60002 did not authorize EPA to retroactively unwind the SFA program.

Without congressional authorization to eliminate Solar for All, EPA's Elimination Decision runs directly into the Appropriations and Presentment Clauses. The "fundamental and comprehensive purpose" of the Appropriations Clause is to "assure that public funds will be spent

according to the letter of the difficult judgments reached by Congress," *OPM v. Richmond*, 496 U.S. 414, 427-28 (1990). Yet the Elimination Decision wipes out a "congressionally mandated" program simply because EPA does not like it, thereby violating the Appropriations Clause and separation of powers. *In re Aiken County*, 725 F.3d 255, 260 (D.C. Cir. 2013) (Kavanaugh, J.) ("[P]olicy disagreement with Congress's decision[s] … is not a lawful ground for [an agency] to decline to continue [a] congressionally mandated [program]."); *see* MSJ 40-41. And because the Elimination Decision implements § 60002's repeal of CAA § 134 *retroactively*, altering provisions of the IRA and inserting retroactivity into OBBBA where there is none, the Elimination Decision violates the Presentment Clauses as well. *See* MSJ 41-42; *Clinton v. City of New York*, 524 U.S. 417, 448 (1998) (Presentment Clauses prohibit the Executive from "creat[ing] a different law" than voted on by Congress).

## V. The Elimination Decision Is Arbitrary and Capricious.

As EPA's Opposition demonstrates, the agency has little defense to Harris County's arbitrary-and-capricious argument. Perhaps most notably, it has almost no answer at all to the County's contention that EPA violated the APA by offering only "contrived reasons" for the Elimination Decision, *Dep't of Com.,* 588 U.S. at 785. The agency does not dispute that President Trump and EPA itself made clear their disdain for Solar for All—and the entire Greenhouse Gas Reduction Fund—from the moment Trump took office. *See* MSJ 5-8, 36-37 (detailing the Trump Administration's efforts to end the GGRF programs at any cost). Nor does EPA attempt to rehabilitate the agency's exceedingly unusual administrative record in this case, or the breakneck speed with which the agency approved and implemented the August 7 recommendation of the Associate Deputy Administrator (a political appointee) to eliminate the $7 billion SFA program. *See* MSJ 37 (explaining that just hours after the Decisional Memorandum was sent on August 7, "the program was shut down and all $7 billion in SFA grants were terminated").

20

EPA's only response to the substantial evidence of pretext here—that the Court should ignore it because EPA "only terminated SFA grants after Congress repealed GGRF," Opp. 37—merely reprises EPA's misreading of OBBBA. *See supra* pp. 12-18; MSJ 26-35. Yet EPA offered only this mistaken and pretextual reading of § 60002 to justify the Elimination Decision. *See* Ex. A. Such "reli[ance] on an erroneous interpretation of the law" does not suffice. *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 242-43 (D.D.C. 2021) (agency action arbitrary and capricious where it had "no justification" other than the "incorrect assumption" that it was compelled by law).

Nor is EPA's rationale, based exclusively on OBBBA, entitled to deference. True, arbitrary-and-capricious review is typically deferential to agencies. But not when the agency's rationale is premised on its reading of a statute: "agency interpretations of statutes … are *not* entitled to deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). Quite the opposite: Where a party challenges an agency's interpretation of a statute, the Court must "exercise independent judgment in determining the meaning of statutory provisions" and "apply[] all relevant interpretive tools" to reach the "single, best meaning" of the statute. *Id.* at 394, 400. The Elimination Decision contravenes the "single, best meaning"—indeed, the only plausible reading—of § 60002, *see supra* pp. 12-18. EPA's justification is therefore neither "reasonable [nor] reasonably explained," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

The agency's other defenses are equally feeble. First, EPA argues, even if its contemporaneous justification was founded on a "flawed interpretation of OBBBA," the Court should overlook that concern because *part of* its interpretation was right—i.e., that Congress "[rescinded] administrative funding" and "repeal[ed] … GGRF." Opp. 38. But again, § 60002's prospective repeal of CAA § 134 did not purport to unwind the GGRF grant programs Congress directed EPA to establish and fund by a deadline long-passed. *See supra* p. 14. And § 60002's

21

rescission of the remaining unobligated administrative funding, a tiny fraction of the total funds Congress appropriated for the GGRF (seven hundredths of *one percent*), only reinforces that (correct) reading of § 60002's repeal clause. *See supra* pp. 14-16; MSJ 31-34. EPA, in short, has offered *zero* valid grounds for terminating Solar for All, so the Elimination Decision cannot be sustained under the "'harmless error' rule," Opp. 38 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009)).

Next, EPA contends that the Court should consider its *post hoc* justification because it "merely 'illuminate[s]' the reasons EPA … provided in the record," *id.* at 38-39. Not so. EPA's contemporaneous position was that § 60002 "terminated … *all* appropriations related to Solar for All," including the "grant appropriations." Ex. A at 1 (emphasis added); *see id.* ("[B]oth the grant appropriations and the EPA's administrative cost appropriation are rescinded."); *id.* (Section 60002 "repeal[ed] … all appropriated funding for the program"); *see also* AR EPA000089-91. That contention directly contradicts the agency's concession, in this Court, that § 60002 rescinded only the remaining $19 million in administrative funding. *See, e.g.*, Opp. 35. But whether the Court considers the agency's late-breaking arguments makes no difference. Section 60002 neither compels *nor authorizes* the dismantling of Solar for All. *See supra* pp. 12-18; MSJ 29-35.

EPA also argues that its decision "not to use other sources of funding" to operate Solar for All is both reasonable and, as an act of agency discretion, unreviewable. Opp. 37. Wrong again. An agency has *no discretion at all* to cease operating (i.e., to shut down) a congressionally mandated program unless Congress directs it to do so. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) ("an agency is not free simply to disregard statutory responsibilities" in the exercise of discretion); *see also* 2 C.F.R. § 200.300 (when charged with administering a federal grant program, an agency must "ensure that Federal funding is expended and associated programs are

implemented in full accordance with the U.S. Constitution [and] applicable Federal statutes and regulations"). Besides, EPA had (and has) plenty of money to administer Solar for All, and that money was not congressionally "dedicated for other purposes and programs," Opp. 8. MSJ 31-32. To the contrary, it was appropriated to EPA expressly for "personnel and related costs" "*not otherwise provided for*." MSJ 32 (emphasis added). In short, far from "taking a conservative view of its own authority," Opp. 38 (quoting *ExxonMobil Gas Marketing Co. v. FERC*, 297 F.3d 1071, 1088 (D.C. Cir. 2002)), EPA has usurped that of Congress.

Finally, as already explained (at MSJ 38), EPA's consideration of reliance interests was insufficient. *See DHS v. Regents of the Univ. of Cal.,* 591 U.S. 1, 30-33 (2020). EPA stated only that it expected any harms caused by termination to be remedied by the closeout process due to the early nature of grantees' expenditures. Ex. A at 1. That limited reasoning ignores the significant forward-looking reliance interests and reputational harms of grantees like Harris County. MSJ 38 (explaining that Harris County and its Texas Coalition partners invested *thousands* of personnel hours in planning and launching their programs, entered into multi-million-dollar contractual commitments, and made promises to communities that, if broken, will cause the County significant reputational harm); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem").[9]

## VI. Both Vacatur and Injunctive Relief Are Warranted Here.

The Court should vacate the Elimination Decision and permanently enjoin Defendants from dismantling Solar for All absent congressional authorization. Of course, EPA disagrees,

---

[9] EPA's citation to *Nat'l Juvenile Law Ctr., Inc. v. Regnery*, 738 F.2d 455, 464-65 (D.C. Cir. 1984), Opp. 39, is misplaced. That case neither involved review of agency action under the APA nor addressed reliance interests in the context of the arbitrary-and-capricious standard.

contending that this Court should do no more than vacate the agency's unlawful action and remand to EPA to do as it sees fit. Opp. 40-41. The Court should order no injunctive relief, EPA asserts, because Harris County "has not offered *any* reason to infer that EPA will not comply with any vacatur in this case." *Id.* at 41 (emphasis added). Indeed, EPA insists, because six months passed (it was five at most, actually) without the agency "tak[ing] adverse action" against Solar for All, the Court should overlook Harris County's evidence to the contrary. *Id.*

That argument is unconvincing on its face and ignores EPA's determined campaign during those months to end the other GGRF programs, National Clean Investment Fund ("NCIF") and Clean Communities Investment Accelerator ("CCIA"), in addition to Solar for All. *See* MSJ 7-9 (detailing the Trump Administration's "assault on the Greenhouse Gas Reduction Fund"); *see Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 835-41 (D.C. Cir. 2025) (Pillard, J., dissenting) (same), *vacated and reh'g en banc granted by* 2025 LX 512734 (D.C. Cir. Dec. 17, 2025). As Harris County has repeatedly recounted in this case, before even entering office, President Trump vowed to wipe out the so-called "Green New Scam." SMF ¶ 29. And from day one, the Trump Administration made clear its disdain for, and determination to end, the GGRF programs by whatever means necessary—from illegal funding freezes to public smear campaigns to OIG audits and baseless criminal investigations that went nowhere. *See supra* p. 20; MSJ 5-8, 36-37; PI Mot. 6-11. And, when confronted with limitations on their legal authority, Defendants have made every effort to circumvent them. *See* MSJ 8-9; PI Mot. 10; *Climate United Fund*, 154 F.4th at 831, 835-41 (Pillard, J., dissenting) (recounting undisputed facts, including that EPA "opened spurious criminal and civil investigations into the Greenhouse Gas Reduction Fund and pressured Citibank into 'voluntarily' freezing [NCIF and CCIA grantees'] accounts even though

the government lacked probable cause to impose such a freeze"). Against this backdrop, EPA's assurance of good-faith willingness to comply with a vacatur order, Opp. 41, rings hollow.

The injunction Harris County seeks is justified. Given EPA's demonstrated commitment to ending Solar for All at any cost, the County seeks an order barring EPA from eliminating Solar for All without congressional authorization. MSJ 43. *See Citizens for Resp. & Ethics in Wash. v. OMB,* 791 F. Supp. 3d 29, 57-59, 61 (D.D.C. 2025) (vacating agency action and issuing permanent injunction prohibiting agency from repeating action in the future "without statutory authorization" to do so). And *contra* EPA, Harris County has not only demonstrated success on the merits, but also that the other injunctive relief factors—irreparable harm, inadequacy of monetary damages, and the balance of equities and the public interest—favor such an order. MSJ 44-45.

As Harris County has previously detailed, the Elimination Decision halted critical projects that were underway, jeopardizing investments in vital infrastructure for tens of thousands of families in the most hurricane-vulnerable region in the country. *Id.* at 44. The Decision also froze scholarships, forced Harris County to leave essential positions unfilled, and undermined the trust and goodwill the County built with its community partners, contractors, and Texas Coalition nonprofit organizations—some of which now face substantial threat of being unable to sustain their own operations while awaiting reimbursements that may never come. SMF ¶¶ 76–82. Contrary to EPA's assertion, Opp. 43, the injunction Harris County seeks would appropriately mitigate these harms. *See supra* 11-12.

EPA is also wrong that an action for damages in the CFC would adequately redress Harris County's injuries, *see* Opp. 43. Such a suit would do nothing to address the County's non-monetary harms. *See* MSJ 24 n.8; SMF ¶¶ 69-82. Plus, EPA has failed to identify a single instance in which the CFC has adjudicated a case like this one. Nor could it: because no prior administration has

attempted to wipe out congressionally mandated programs in this fashion, there is no applicable CFC precedent.

And, because the injunction Harris County seeks would prevent EPA from taking further unlawful steps to dismantle Solar for All—a congressional program with significant health, safety, and economic benefits to the American people—the balance of equities and public interest tip decidedly in favor of that injunction. MSJ 44-45.

Finally, the injunctive relief Harris County requests is appropriately tailored. EPA argues that any injunction this Court enters should be "narrowly tailored" to "vacate EPA's termination decision only with respect to Harris County's SFA Grant, remanding the case to the agency to issue a new decision consistent with the Court's opinion." Opp. 43-44. But that is no injunction at all, nor even the vacatur Harris County seeks—to say nothing of the fact that EPA has argued repeatedly that this Court lacks power to order that relief (vacatur of a grant-termination decision), *see, e.g.*, Opp. 17-18. The agency's proposed "tailored" order would afford Harris County none of the relief it requests: neither vacatur of EPA's erroneous, policy-level Elimination Decision, nor a prohibitory injunction barring the agency from taking further unlawful action.

Such relief would not run afoul of *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). As to vacatur of EPA's unlawful Elimination Decision, federal courts regularly vacate unlawful agency action; indeed, the APA *requires* that they do so. *See* 5 U.S.C. § 706 ("[A] reviewing court shall … hold unlawful and set aside [unlawful] agency action."). And in *CASA*, the Supreme Court expressly noted that its holding does not displace this longstanding authority. *See* 606 U.S. at 847 n.10. As to Harris County's requested injunction, the Court in *CASA* also clarified that, if necessary to provide "complete relief" to a plaintiff, a court's order may permissibly extend "incidental[]" benefits to nonparties, *id.* at 851-52. That is the case here.

Finally, EPA's argument that Harris County's injunction would be unduly "burdensome," Opp. 43, simply underscores the need for the injunction. The order Harris County seeks merely requires EPA to refrain from eliminating a $7 billion congressionally mandated program *unless* Congress authorizes it to do so. Adhering to such an elementary principle of law should be no burden.

The equitable relief Harris County requests is warranted and appropriately tailored.

## CONCLUSION

Harris County respectfully requests that the Court grant its Motion for Summary Judgment, *see* Proposed Order (ECF 32-24), and deny Defendants' Motion for Summary Judgment.

Dated: March 13, 2026

Respectfully submitted,

/s/ Beth C. Neitzel

Noah C. Shaw (*pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019
Tel. (212) 812-0400
ncshaw@foleyhoag.com

Beth C. Neitzel (103611)
Emily J. Nash (MA0031)
Matthew F. Casassa (*pro hac vice*)
Kevin Y. Chen (*pro hac vice*)
Gilleun Kang (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com
enash@foleyhoag.com
mcasassa@foleyhoag.com
kchen@foleyhoag.com
gkang@foleyhoag.com

**JONATHAN G.C. FOMBONNE**
HARRIS COUNTY ATTORNEY

/s/ Neal A. Sarkar

**JONATHAN G.C. FOMBONNE**
Harris County Attorney
Texas State Bar No. 24102702
D.D.C. Bar ID: TX0090
jonathan.fombonne@harriscountytx.gov

**NEAL A. SARKAR**
First Assistant County Attorney
Texas Bar No. 24093106
D.D.C. Bar ID TX0088
neal.sarkar@harriscountytx.gov

**OFFICE OF THE HARRIS COUNTY ATTORNEY**
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

*Counsel for Harris County, Texas*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 13, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  Paper copies will be sent via first class mail to those indicated as non-registered participants.

<u>*/s/ Beth C. Neitzel*</u>
Beth C. Neitzel (103611)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com