# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARRIS COUNTY, TEXAS,** | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:25-cv-03646-TSC |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,** | |
| *Defendants*. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## CROSS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    This Court Lacks Jurisdiction Over Harris County's Claims. ........................................... 2

        A.    EPA's Termination of SFA Grants is the Only Final Agency Action. ............................ 2

        B.    Notwithstanding Harris County's Artful Pleading, this Court Lacks Jurisdiction under *NIH* and *California*. ............................................................................................................ 4

        C.    Harris County Does Not Meet the High Burden Necessary to Establish the Court's Jurisdiction under an *Ultra Vires* Theory. ........................................................................ 7

        D.    Harris County Cannot Satisfy Redressability Because the Relief Requested is Unavailable. ...................................................................................................................... 9

    II.    Harris County's Claims Fail as a Matter of Law. ........................................................... 11

        A.    Harris County's Statutory Claim Fails Because a Program Termination Cannot Violate a Statute That No Longer Exists. .................................................................................... 11

        B.    Harris County's Constitutional Claims Fail Under *Dalton* and For the Same Reasons as the Statutory Claim. ..................................................................................................... 17

        C.    EPA's Termination of the SFA Grants Following Congress's Repeal of Section 134 and Rescission of Administrative Funding Was Not Arbitrary or Capricious. ................... 18

    III.    Harris County Has Not Shown Any Need for Any Remedy Other Than Remand. .......... 22

    IV.    Harris County Has Not Shown Universal Relief is Needed. ........................................... 25

CONCLUSION ............................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Regul. Grp. v. EPA*,
320 F.3d 272 (D.C. Cir. 2003) ................................................................................. 3

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ............................................................................... 22

*Am. Legion v. Derwinski*,
54 F.3d 789 (D.C. Cir. 1995) ................................................................................. 20

*Atl. City Elec. Co. v. FERC*,
295 F.3d 1 (D.C. Cir. 2002) ................................................................................... 11

*Bennett v. Spear*,
520 U.S. 154 (1997)................................................................................................. 3

*Brock v. Pierce Cnty.*,
476 U.S. 253 (1986)............................................................................................... 24

*Calif. Cmtys. Against Toxics v. EPA*,
934 F.3d 627 (D.C. Cir. 2019) ................................................................................ 3

*California v. U.S. Dep't of Educ.*,
769 F. Supp. 3d 72 (D. Mass. 2025) ....................................................................... 5

*Cent. Ky. Prod. Credit Ass'n v. United States*,
846 F.2d 1460 (D.C. Cir. 1988) ............................................................................ 17

*Changji Esquel Textile Co. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022) ................................................................................. 9

*Corley v. United States*,
556 U.S. 303 (2009)............................................................................................... 14

*Dalton v. Specter*,
511 U.S. 462 (1994)......................................................................................... 17, 18

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)............................................................................................... 19

*Dep't of Educ. v. California*,
604 U.S. 650 (2025).......................................................................................... passim

*Dorsey v. United States*,
567 U.S. 260 (2012) .................................................................................................... 12

*DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*,
76 F.3d 1212 (D.C. Cir. 1996) ...................................................................................... 4

*Duberry v. District of Columbia*,
924 F.3d 570 (D.C. Cir. 2019) .................................................................................... 10

*Fed. Express Corp. v. U.S. Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) ................................................................................... 8, 9

*Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D.D.C. 2005) ............................................................................ 19

*Genesee Street, LLC v. United States*,
166 F.4th 1017 (Fed. Cir. 2026) ................................................................................. 24

*Grand Canyon Air Tour Coal. v. FAA*,
154 F.3d 455 (D.C. Cir. 1998) .................................................................................... 11

*Hikvision USA, Inc. v. FCC*,
97 F.4th 938 (D.C. Cir. 2024) ..................................................................................... 11

*Indep. Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) ...................................................................................... 3

*Lincoln v. Vigil*,
508 U.S. 182 (1993) .................................................................................................... 20

*Massachusetts v. Kennedy*,
No. 1:25-CV-10814, 2025 WL 1747213 (D. Mass. June 23, 2025) ............................. 6

*Matthews v. Eldridge*,
424 U.S. 319 (1976) .................................................................................................... 24

*Mayor & City Council of, Balt.*,
593 U.S. 230 (2021) .................................................................................................... 15

*Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
70 F.4th 582 (D.C. Cir. 2023) ..................................................................................... 10

*Nat'l Ass'n of Cntys. v. Baker*,
842 F.2d 369 (D.C. Cir. 1988) .................................................................................... 17

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) ........................................................................... passim

*Nat'l Wildlife Fed'n v. Espy*,
  45 F.3d 1337 (9th Cir. 1995) .......................................................................... 25

*Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
  448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................... 19

*Pollack v. Hogan*,
  703 F.3d 117 (D.C. Cir. 2012)........................................................................... 8

*Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)............................................................................................ 22

*Rochester Pure Waters Dist. v. EPA*,
  960 F.2d 180 (D.C. Cir. 1992) ................................................................... 14, 15

*Rusnak* v. *United States*,
  No. 25 - 292, 2026 WL 809985 (D.D.C. Mar. 24, 2026)............................... 8, 9

*Sierra Club v. U.S. Dep't of the Interior*,
  899 F.3d 260 (4th Cir. 2018)........................................................................... 10

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018) ................................................................ 2, 3, 4

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)............................................................................................. 9

*Sustainability Inst. v. Trump*,
  165 F.4th 817 (4th Cir. 2026)............................................................................ 8

*United States v. Larionoff*,
  431 U.S. 864 (1977)......................................................................................... 12

*Va. Uranium, Inc. v. Warren*,
  587 U.S. 761 (2019)......................................................................................... 16

*Van Buren v. United States*,
  593 U.S. 374 (2021)......................................................................................... 12

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ........................................................................ 23

*Ysleta Del Sur Pueblo v. Texas*,
  596 U.S. 685 (2022) ................................................................................................ 15

**Statutes**

5 U.S.C. § 706 ........................................................................................................... 25
42 U.S.C. § 4370f ...................................................................................................... 14
42 U.S.C. § 7434(a)(1) ......................................................................................... 4, 14
Pub. L. No. 104-204 .................................................................................................. 13
Pub. L. No. 108-422 .................................................................................................. 13
Pub. L. No. 110-161 .................................................................................................. 13
Pub. L. No. 112-240 .................................................................................................. 13
Pub. L. No. 119-4 ...................................................................................................... 20

**Regulations**

2 C.F.R. § 200.300 .................................................................................................... 19
2 C.F.R. § 200.344 ...................................................................................................... 4

**INTRODUCTION**

Harris County's response to Defendants' cross motion for summary judgment, like this litigation, is built on two pillars: (1) a grant that was terminated on August 7, 2025, and (2) a statute that was repealed by Congress on July 4, 2025. Because neither can support relief in this Court, the lawsuit collapses.

Defendants' position in this case is simple. EPA's only action was terminating the Solar for All ("SFA") grants. This Court lacks jurisdiction to adjudicate Harris County's claims challenging that action. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*NIH*"); *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam) ("*California*"). Harris County does not (and cannot) distinguish this case from *NIH* or *California*. No matter how many ways Harris County describes its claims and requested relief, the only action at issue is EPA's decision to terminate SFA grants, and the only relief that would redress Harris County's claimed injuries is an order undoing that decision. But such relief is ultimately an order "designed to enforce" an "obligation to pay money" pursuant to a federal award and thus would contravene the Supreme Court's decisions in *NIH* and *California*.[1]

Recognizing its inability to challenge its grant termination in district court, Harris County improperly resorts to artful pleading, which only leads to more problems. Harris County purports to challenge EPA's termination of an SFA "program" as violating Section 134 of the Clean Air Act. But Harris County's "program" is a straw man. Section 134 authorized EPA to make grants using a one-time appropriation, which EPA did. But Congress then repealed Section 134. After the repeal, all that remained were orphaned SFA grants, whose termination cannot be

---

[1] Harris County reveals its claim starkly in pleading for relief to "vacate and set aside" the grant termination decision (which it calls the "Elimination Decision") and for the Court to "enjoin Defendants from implementing" that decision. Compl. 30, ECF No. 1 ("Compl."); *see also id.* ¶¶ 11, 69–79; Pl. Opp. 2.

adjudicated here.  Though Harris County argues repeatedly that it is challenging EPA's decision to "shutter[]" a "congressionally mandated program," Pl. Opp. 4, there is no "congressionally mandated program": Congress repealed Section 134 and rescinded SFA's remaining administrative funding, annulling any congressional mandate.  And though Harris County argues vacatur of the decision is needed so that Defendants "cannot rely on it" "going forward (*i.e.*, post-vacatur)," *id.* at 5 (quotations omitted), there is no "going forward" for SFA: Congress terminated any SFA "program," and then EPA terminated the SFA grants.  Those actions are done, and they cannot be undone by an order from this Court.

As a result, Harris County's request to vacate and enjoin the "program" termination would not provide any relief.  Any order granting such relief would only prop up a meaningless shell, with no grants, no dedicated administrative funding, and no statutory mandate to govern it. The Court should reject this nonsensical request for what it is: a plain effort to avoid justiciability requirements prohibiting Harris County's challenge to grant termination in this Court.

For these reasons, discussed below and in Defendants opening brief, Defendants reiterate their request for summary judgment on all claims.

## ARGUMENT

### I.    This Court Lacks Jurisdiction Over Harris County's Claims.

#### A.    EPA's Termination of SFA Grants is the Only Final Agency Action.

The only final agency action at issue here is grant termination.  *See* Defs.' Mem. in Supp. of Their Cross Mot. for Summ. J. 25–26, ECF No. 38-1 ("Def. Mem.").  Harris County's ploy of seeking to challenge a "policy-level" interpretation of OBBBA as a separate action from EPA's decision to terminate the SFA grants, *see* Pl.'s Mem. in Opp. to Defs.' Cross Mot. for Summ. J. 3–4, ECF No. 44 ("Pl. Opp."); Compl. ¶ 69, fails to create APA jurisdiction.  Agency action is only final "if two independent conditions are met: (1) the action 'mark[s] the consummation of

2

the agency's decisionmaking process' and is not 'of a merely tentative or interlocutory nature;' and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).  Under this standard, courts "lack[] authority to review claims where 'an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party.'" *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (citation omitted).

Under this standard, Harris County's attempt to separate EPA's interpretation of OBBBA from EPA's termination of Harris County's grant, *see* Pl. Opp. 3–4, should be rejected.  First, EPA's interpretation of OBBBA is not a *separate* action "by which rights or obligations have been determined, or from which legal consequences will flow." *Soundboard*, 888 F.3d at 1267. Rather, EPA's interpretation of OBBBA was the basis for—and inextricably part of—EPA's decision to terminate the SFA grants.  And the Termination Notice is the only action from which "legal consequences" flow, *id.*—such as the end of Harris County's access to SFA funds outside the closeout process.  Termination Notice at EPA_000139–40.  Excerpting EPA's *reason* for terminating the SFA grant from the termination itself distorts the factual record and transforms a "sufficiently final" agency action into a non-final, non-consequential view of the law. *See Util. Air Regul. Grp. v. EPA*, 320 F.3d 272, 279 (D.C. Cir. 2003) (holding that EPA's interpretation of a regulation would be "sufficiently final" only "*if* the EPA takes action affecting a permit pursuant to the challenged interpretation" of that regulation) (emphasis in original); *Calif. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 638–40 (D.C. Cir. 2019) (holding EPA's "definitive interpretation" of federal statute was not final agency action, as it "ha[d] no direct and appreciable legal consequences" and did not require "any entity or person to do anything").

Second, EPA's use of the word "program" in the Termination Notice and Recommendation, Pl. Opp. 3–4, cannot transform a congressional action into an agency action. Congress created the SFA grant program.  42 U.S.C. § 7434(a)(1) (repealed).[2]  Three years later, Congress ended it.  OBBBA § 60002.  That EPA thereafter continued to refer to the 60 orphaned grants collectively as a "program," *see, e.g.*, Recommendation at EPA_000089, does not alter the legal effect of Congress's decision to end the SFA program.  And no document in the record indicates that EPA made any separate "program" decision apart from its decision to terminate the 60 SFA grants.  *See* Pl. Opp. 3 (recognizing EPA's termination of the "SFA *program* and *existing grants*") (citing Termination Notice) (second emphasis added).  After OBBBA, EPA considered two courses of action: it could either continue administering the SFA grants without any statutory basis or designated funding to do so, or it could terminate them by sending notices to each grantee explaining its basis for doing so.  *See* Recommendation at EPA_000089–96.  EPA chose the latter, and that is the only final agency action at issue.[3]

**B.      Notwithstanding Harris County's Artful Pleading, this Court Lacks Jurisdiction under *NIH* and *California*.**

Harris County cannot evade *NIH* and *California* to establish the government's waiver of its sovereign immunity under the APA.  The Supreme Court—in cases just like this one—

---

[2] *See also* Pl. Opp. 13 ("Congress authorized EPA to establish and fund the GGRF programs, including Solar for All."); *see* Notice of Funding Opportunity ("NOFO") at EPA_000348 (describing Section 134 and GGRF as a "program" that EPA would be implementing).

[3] Harris County's pending administrative appeal does not make EPA's termination of its SFA grant a "preliminary agency action."  Pl. Opp. 12 n.4.  The termination constitutes final agency action under *Soundboard*, 888 F.3d at 1267, as it: (1) represents the consummation of EPA's decision-making; and (2) triggers legal consequences, such as the cessation of EPA's reimbursement for future SFA project costs and requirements under 2 C.F.R. § 200.344.  But if the only agency action at issue—EPA's termination of its grant—is somehow not final, this Court lacks jurisdiction under the APA for that reason, as well.  *See* Def. Mem. 26 (citing *DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996)).

determined that the APA "does not provide" federal district courts with jurisdiction (1) "to adjudicate claims 'based on' . . . grants" or (2) "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651).

Harris County's renewed attempt to distinguish this case from the grant termination challenges in *California* and *NIH*, *see* Pl. Opp. 6–9, falls short.  In *California*, the Department of Education—like EPA here—terminated all grants under two congressionally-mandated grant programs.  *See California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 77 (D. Mass. 2025) ("The record reflects that there was no individualized analysis of any of the programs; rather, it appears that all TQP and SEED grants were simply terminated.") (emphasis in original); *see also* States' Stay Opposition at 4–5, 8–9, *California*, 604 U.S. 650 (24A910) ("*California* Opp.") (describing agency's termination of teacher-training grant programs under 20 U.S.C. §§ 1022 and 6672(a)).[4] The plaintiffs purported to challenge the agency's "programmatic decision" under the APA based on "statutes and regulations, not contracts" and sought "equitable relief," not money damages. *California* Opp. at 22, 25.  Nonetheless, the Supreme Court stayed the district court's order temporarily enjoining the agency from implementing the termination of the grants, holding that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *California*, 604 U.S. at 651 (citation omitted).

Similarly, in *NIH*, NIH terminated over 1,000 grants, many of which were issued pursuant to congressional mandates.  *See* States' Stay Opposition at 6–10, *NIH*, 145 S. Ct. 2658

---

[4] The parties' Supreme Court briefs in *California* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/24a910.html.

(25A103) (describing grants awarded consistent with Congress's commands under 42 U.S.C. §§ 285t(c), 285a-6, 285b-7a, 283p).[5]  The plaintiffs there similarly brought APA, constitutional, and *ultra vires* claims against the agency—all claims challenging (1) NIH guidance directing the review of grants for "DEI"; and (2) NIH's termination of grants based on that review.  *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring).  The district court, after a bench trial, vacated the guidance and the terminations.  *Massachusetts v. Kennedy*, No. 1:25-CV-10814, 2025 WL 1747213, at *2 (D. Mass. June 23, 2025).  The Supreme Court stayed the judgment vacating the grant terminations.  *NIH*, 145 S. Ct. at 2559.  Relying on its reasoning in *California*, the Court explained (again) that the APA "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants."  *Id.* (citation and quotations omitted).

The same conclusion should be reached here.  Harris County—like the plaintiffs in *California* and *NIH*—purports to challenge a "program" decision contravening statutory authority, repeatedly disclaiming the contractual nature of its case and its interest in an order requiring the government to pay money under federal grants.  Pl. Opp. 3–7.  But Harris County admits it is seeking relief in this Court to "clear[] the way" for EPA to "voluntarily reinstate the grant" or decide the administrative appeal in Harris County's favor.  *Id.* at 12.  That relief would only be meaningful and non-advisory if it effectively forces EPA to reinstate and pay out on the grants.  *See infra* at 9–10; Def. Mem. 25.  Thus, like *California* and *NIH*, this case is simply an artful attempt to use programmatic and statutory claims to secure an order that "enforce[s] a contractual obligation to pay money."  *California*, 604 U.S. at 651 (citation omitted).  That this

---

[5] The parties' Supreme Court briefs in *NIH* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/25a103.html.

case seeks to achieve that result indirectly does not change that the relief is ultimately "designed to enforce an[] obligation to pay." *NIH*, 145 S. Ct. at 2559.  This Court lacks jurisdiction to provide that relief for the same reason as in *California* and *NIH*.

The vacatur of "[g]oing forward" guidance in *NIH*, 145 S. Ct. at 2661 (Barrett, J. concurring), only underscores why there is no jurisdiction in this case.  Unlike NIH, EPA did not issue any "policy-level" guidance to apply in future decision-making about the SFA grants. Instead, EPA terminated the SFA grants and communicated its decision to do so by sending each grantee a notice.  That Termination Notice provided no guidance to any agency employee or SFA grantee; it only informed grantees that their grants had been terminated.  *See* Termination Notice at EPA_000139–40.  And here, there is no *possibility* of any forward-looking policy because EPA cannot award new SFA grants after OBBBA § 60002 repealed EPA's authorization to "make grants" under any GGRF program.  EPA's termination decision has no forward-looking effect; it only terminated grants.  Vacating that decision could only aid Harris County by reinstating its grant, which the Supreme Court has concluded district courts lack jurisdiction to do.[6]

### C.    Harris County Does Not Meet the High Burden Necessary to Establish the Court's Jurisdiction under an *Ultra Vires* Theory.

Harris County cannot bring its constitutional and *ultra vires* claims under the Court's *ultra vires* non-statutory review.  As set forth in Defendants' opening brief, this limited exception does not apply because: (i) the APA and Tucker Act expressly preclude the Court's review of

---

[6] Amici overlook this central jurisdictional defect.  Contrary to amici's suggestion, EPA does not rely on a 1996 Comptroller General decision about the "replacement contract doctrine" to argue that this Court lacks jurisdiction to vacate grant terminations.  *See* Br. of *Amici Curiae* in Supp. of Pls.' Mot. for Summ. J. 5, ECF No. 49 ("Amicus Br.").  Rather, EPA has repeatedly explained that the Court lacks jurisdiction to vacate grant terminations under the APA, Tucker Act, and *NIH* and *California*.  And EPA has never contended that "OBBBA renders its cancellation of the obligated [SFA] grants unreviewable." *Id.* at 6.  Defendants have urged only that any review of the grant terminations must take place in Congress's chosen forum, the Court of Federal Claims.

Harris County's claims, as they are all disguised contract claims seeking EPA's specific

performance under a federal grant; (ii) the Tucker Act provides an "alternative procedure" for

review of these contract-based claims; and (iii) Harris County fails to identify a "specific

prohibition" in any statute that is "clear and mandatory" in support of its statutory-based

constitutional and *ultra vires* claims.  Def. Mem. 21–23 (quoting *Fed. Express Corp. v. U.S.*

*Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022)).

In response, Harris County argues that the heightened standard for *ultra vires* review does

not apply to its constitutional claim.  *See* Pl. Opp. 9–10.  Not true.  That claim is premised on

EPA's purported actions in excess of its *statutory* authority.  *See* Compl. ¶ 103 (alleging in

support of constitutional claim that "[n]either Section 60002 of the OBBBA nor any other statute

authorizes Defendants' Elimination Decision; such action instead directly contravenes Section

60002").  This claim is therefore subject to the same heightened standard required to bring a

claim under non-statutory *ultra vires* review.  *See Sustainability Inst. v. Trump*, 165 F.4th 817,

831–32 (4th Cir. 2026) (holding that grantee-plaintiffs' claims "[a]t their core" "simply allege

that the Government has exceeded its statutory authority," and therefore "must stay within the

painstakingly delineated procedural boundaries of nonstatutory *ultra vires* review") (cleaned up;

citations omitted).[7]

Next, Harris County argues that EPA's "elimination of the SFA program" was a "clear

departure" from its "statutory mandate" to "maintain the program."  Pl. Opp. 10.  But Harris

County "fall[s] far short of satisfying the 'especially demanding' third prong of the *ultra vires*

reviewability test."  *Rusnak* v. *United States*, No. 25 - 292, 2026 WL 809985, at *11 (D.D.C.

---

[7] Harris County's reliance on *Pollack v. Hogan*, 703 F.3d 117, 119 (D.C. Cir. 2012), does not
support *ultra vires* review.  The plaintiff in *Pollack* did not allege any statutory violation, nor was
her claim barred in district court by the Tucker Act.  *Id.*

Mar. 24, 2026) (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022)). First, again, Congress, not EPA, ended the SFA program by repealing any congressional mandate. EPA then terminated the SFA grants a month later, which this Court lacks jurisdiction to review. *Supra* at 4–7. Second, Harris County fails to identify a "specific prohibition" in OBBBA § 60002 or Section 134 requiring EPA to continue the grants or any "program" separate from those grants. *Fed. Express Corp.*, 39 F.4th at 763. To the contrary, OBBBA § 60002 *repealed the program* and *rescinded the designated funding* for the administration of all SFA grants. To say this law somehow represents a "clear mandate" to continue the SFA program is nonsensical. *See infra* at 14–15. As to Section 134, it was *repealed* and thus provides no continuing mandate. *See id*. But even when Section 134 was effective, it contained no "specific prohibition" against EPA's termination of SFA grants. It only authorized EPA to "make grants," which EPA did. And those grants allowed EPA to terminate. *See, e.g.*, SFA Grant at EPA_000500–501 (termination provision). Without any congressional mandate supporting its claims, Harris County fails to meet the high standard for *ultra vires* review.

> **D.    Harris County Cannot Satisfy Redressability Because the Relief Requested is Unavailable.**

Harris County also fails to show how this Court can redress its injuries without requiring EPA to reinstate its SFA grant, which the Court lacks jurisdiction to do. *Supra* at 4–7. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Harris County's claimed injuries are the loss of "critical projects," "investments in vital infrastructure," and "essential positions." Pl. Opp. 25. To remedy these injuries, Harris County seeks vacatur of EPA's decision to "eliminate . . . Solar for All," *id.* at 1, and an injunction barring "the program's dismantling absent congressional authorization," *id.* at 11.

Harris County asserts that this relief would be a "first step" in "clearing the way" for EPA to "voluntarily reinstate the grant." *Id.* at 12.

The redressability problem here is twofold. First, the only "first step" that could redress Harris County's loss of funds for "critical projects," etc. is to reinstate the SFA grant. But the Court cannot order that relief under *NIH* and *California*. *See supra* at 4–7. Second, the Court cannot merely enjoin EPA from "dismantling" the SFA "program" or vacate EPA's interpretation of OBBBA, Pl. Opp. 11, because Harris County will not receive any relief from those actions. Without restoring the SFA grants, Harris County's grant would remain terminated, along with all other SFA grants, and EPA could only administer a grant-less program, with no congressional authority to issue new grants and no designated funding to administer them. Def. Mem. 24–25.

The cases cited by Harris County, *see* Mem. in Supp. of Pl.'s Mot. for Summ. J. 23–24, ECF No. 32-1 ("Pl. Mem."), do not solve this redressability problem. In each one, the court had jurisdiction to vacate final agency actions or declare them unlawful, and the court ordered relief that redressed at least some, if not all, of the claimed injuries. None involved grant termination decisions or the resurrection of a repealed congressional program. *See, e.g.*, *Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 592 (D.C. Cir. 2023) (holding that vacatur of final agency rule would indisputably provide $50–90 million in financial relief to lobstermen over six years and vacatur of separately issued final biological opinion would remove the basis for the final rule and thus provide related relief).[8] In other words, unlike the relief in those cases,

---

[8] *See also Duberry v. District of Columbia*, 924 F.3d 570, 583 (D.C. Cir. 2019) (holding that declaring unlawful D.C. government's decision that plaintiffs were not "qualified retired law enforcement officers" under a federal statute would redress their injuries related to not obtaining certification to carry a concealed weapon); *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018) (holding that vacatur of NPS permit to build a pipeline across Blue Ridge Parkway would redress injuries experienced by environmental group and members, as the "requested relief would at least mitigate, if not eliminate, the alleged harm").

the relief here is either unavailable on jurisdictional grounds (vacatur of EPA's grant termination decision) or unable to redress the loss of federal grant funds (vacatur of "program" elimination decision).  Harris County therefore lacks standing to bring its claims.

## II.     Harris County's Claims Fail as a Matter of Law.

### A.     Harris County's Statutory Claim Fails Because a Program Termination Cannot Violate a Statute That No Longer Exists.

Section 60002 of OBBBA did two things: it "repealed" Section 134 in its entirety, without any savings language, and it "rescinded" the "unobligated balances of amounts made available to carry out" that statute.  Def. Mem. 27–28 (quoting OBBBA § 60002).  OBBBA thus ended any SFA program apart from the pre-existing grants moving forward.[9]  *See id.* at 27–30.

Harris County's response simply ignores the legal distinctions between congressionally authorized "programs" and discrete contracts (the SFA grants) to request a ruling based on a statute that no longer exists.  Harris County argues, at bottom, that OBBBA's repeal of Section 134 was not "Congress's say so" to "tear down the [SFA] program," Pl. Opp. 13–14, and EPA therefore "wipe[d] out a congressionally authorized program absent any statutory authority," *id.* at 1.  Not so.  The repeal of Section 134 removed the congressional mandate for the program, leaving only the previously awarded SFA grants.  Harris County, on the other hand, argues that

---

[9] Contrary to Harris County's characterization, these are not "post-hoc rationalizations."  Pl. Opp. 13.  EPA cited OBBBA's repeal of statutory authority and rescission of dedicated SFA funding in the Recommendation and Termination Notice.  *See* Def. Mem. 6–7, 9.  At any rate, EPA's analysis of OBBBA is irrelevant to the statutory inquiry.  Because OBBBA stripped EPA of authority to continue running any SFA program separable from the grants, the Court cannot order EPA to resume an SFA program, regardless of EPA's contemporaneous reasoning.  *See, e.g.*, *Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 944 (D.C. Cir. 2024) (unauthorized agency action "is plainly contrary to law and cannot stand") (quoting *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002)).  Harris County's contrary argument improperly conflates the arbitrary-and-capricious standard with the statutory inquiry.  *See* Pl. Opp. 13 (quoting the arbitrary-and-capricious standard in *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 469 (D.C. Cir. 1998)).

11

even if Congress repeals the statutory authority for a program, an agency retains a *statutory* obligation to carry out the program so long as contractual rights remain outstanding. Harris County mistakenly conflates statutory rights with contractual ones. Nothing supports Harris County's argument, which is contrary to the plain language of the repeal and would turn bedrock administrative law on its head. *See* Def. Mem. 27–29; *United States v. Larionoff*, 431 U.S. 864, 879 (1977) (repeal of the statute authorizing the Variable Re-enlistment Bonus "repeal[ed] the VRB program," even though it did not "divest . . . rights . . . already earned" under the program).

Harris County's efforts to downplay OBBBA's repeal of Section 134 all fail. Most importantly, Harris County ignores the plain meaning of OBBBA. Harris County interprets OBBBA as meaning only "that any future Congress cannot rely on the now-repealed statute to appropriate funds for GGRF grants." Pl. Opp. 14. This fails for at least three reasons. *First*, it fails to give the repeal its plain meaning: removing the law from the books entirely. *See* Repeal, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/repeal (last visited Apr. 9, 2026) (defining "repeal" as "to rescind or annul by authoritative act," "to revoke or abrogate by legislative enactment," to "abandon," or to "renounce"); *see also* Def. Mem. 27–28. *Second*, Harris County's interpretation fails to give the repeal any meaningful impact. *See Van Buren v. United States*, 593 U.S. 374, 393 (2021) ("When Congress amends legislation, courts must presume it intends the change to have real and substantial effect.") (quotations omitted). "[S]tatutes enacted by one Congress cannot bind a later Congress." *Dorsey v. United States*, 567 U.S. 260, 274 (2012). Thus, ascribing the intent of the statute as merely limiting Congress would give the repeal no tangible consequence.[10] And *third*, Harris County's

---

[10] Moreover, new funding would have required new legislation anyway. Section 134 authorized grants and appropriated funds in a single legislative act, setting the expiration of grant funds for

interpretation fails to give meaning to the rescission of unobligated funds that accompanied Section 134's repeal. *See* OBBBA § 60002; Def. Mem. 28–29. That rescission undisputedly took away the remaining money Congress earmarked for EPA to administer GGRF grants. *See* Pl. Mem. 9. If Congress intended the repeal to require EPA to continue the SFA program, rescinding the designated funds to run that program makes no sense.

Harris County's constrained reading of OBBBA is based on its mistaken view that OBBBA's rescission of unobligated funds would have been superfluous if OBBBA also repealed the program, because all unobligated balances would automatically be returned to the U.S. Treasury General Fund when Congress repealed the SFA program. *See* Pl. Opp. 15 (citing Pl. Mem. 27). That is incorrect. As previously explained, OBBBA's repeal of Section 134 terminated the program's statutory authority and OBBBA's rescission of unobligated funds took away the program's remaining dedicated funding. Def. Mem. 27–29 & n.7. Together, the repeal and rescission unambiguously terminated the program.[11] *Id.* Harris County's contrary view is based on a 1984 case concerning what happens when the period of availability for funding expires, not when an authorizing statute is repealed with unexpired funds still available. *See* Pl. Mem. 27 (citing 1984 case for the proposition that "unobligated funds revert back to the general Treasury when agency's budget authority lapses"). Here, the SFA administrative funding was

---

September 2024. *See* Def. Mem. 3. Any additional grant funding after that date would have required an additional legislative act.

[11] Indeed, rescission is a common follow-on step to address the disposition of funds that otherwise would remain unobligated as a result of the program's repeal. *See, e.g.*, Pub. L. No. 112-240, § 642, 126 Stat. 2313, 2358 (2013) (repealing statute and rescinding all unobligated balances); Pub. L. No. 110-161, div. D, tit. I, 121 Stat. 1844, 1974 (2007) (same); Pub. L. No. 108-422, tit. IV, § 411(c)–(d), 118 Stat. 2379, 2389 (2004 (repealing statute and transferring unobligated balances); Pub. L. No. 104-204, tit. II, § 205, 110 Stat. 2874, 2894 (1996) (disposing of unobligated balances that became available from the repeal of a program).

13

unexpired and still available.[12]  The caselaw on which Harris County relies is therefore inapposite.[13]

By using the rescission of administrative funds only to foil the repeal, Harris County improperly fails to give the rescission itself any meaning at all.  *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quotations omitted). Harris County first argues that, by limiting the scope of the repeal, Congress's rescission of funds to run the SFA program required EPA to continue running the SFA program.  Pl. Opp. 14–15. That makes no sense, and Harris County fails to explain why, if Congress intended EPA to continue the program, Congress rescinded the administrative funding at all.  Harris County then argues that, despite Congress's rescission of administrative funds, EPA was required to continue administering the SFA program using other funds, as Section 134 contemplated.  *Id.* at 16.  But, as Defendants have pointed out, this argument relies on the now-repealed Section 134; whatever that law contemplated, it no longer has force.  Def. Mem. 29.  And Harris County's argument that Congress required EPA to find a workaround for the rescinded administrative funding only further exacerbates Harris County's failure to give the rescission any meaning in the first

[12] Section 134 appropriated funding "to make [SFA] grants" with a period of availability through September 30, 2024.  42 U.S.C. § 7434(a)(1) (repealed).  Such expired funds for grants were not rescinded and will remain available in EPA's account until September 30, 2031 to satisfy any remaining obligations for allowable costs under the SFA grant agreements. *See* Treml Decl., ECF No. 20-1, ¶ 7. Funds "for the administrative costs" however, were appropriated with a period of availability through September 30, 2031. 42 U.S.C. § 7434(a)(4) (repealed).

[13] Moreover, the pre-1990s law cited by Harris County was revised decades ago.  Since the 1990s, federal appropriations law has provided that when the period of availability for obligating funds expires, unobligated funds "retain [their] fiscal-year identity and remain available" in the same account for several years.  U.S. Gov't Accountability Off., GAO-04-261SP, Principles of Federal Appropriations Law 5-71 (2004); 42 U.S.C. § 4370f.  Thus, in addition to being misplaced, Harris County's argument fails on its own terms.

instance.[14] *See Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) (rescission of appropriated grant funds "could not be clearer" that Congress "did not want any part of the remaining funds to be expended for the . . . grant program").  The only interpretation that gives both the repeal and the rescission their plain and full meanings is the one that Defendants urge: Congress intended Section 134's repeal and the remaining administrative funds' rescission to work together to end any SFA program apart from the pre-existing grants.[15] *See* Def. Mem. 27–29 & n.7.

Finally, Harris County argues the Court should ignore the plain meaning of the statute because a statute that "would silently hand over the purse strings" to "$26.97 billion in obligated grant monies" would be "absurd."  Pl. Opp. 15 (emphasis omitted).  This argument, again, focuses squarely on EPA's termination of the GGRF grants, including the SFA grants.  Regardless, Harris County's view of what is or is not absurd does not trump the statute's plain meaning.  When analyzing statutes, the "Court's task is to discern and apply the law's plain meaning as faithfully as [it] can, not to assess the consequences of each approach and adopt the one that produces the least mischief."  *BP p.l.c. v. Mayor & City Council of Balt.*, 593 U.S. 230, 246 (2021) (quotations omitted); *see also Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 706 (2022) ("It is not [the court's] place to question whether Congress adopted the wisest or most workable policy, only to discern and apply the policy it did adopt.").  OBBBA unambiguously

---

[14] That Harris County believes it has identified lump-sum funding EPA could have used to replace the rescinded funds is of no help.  *See infra* at 20.

[15] Though legislative history is irrelevant, *see* Def. Mem. 30, Harris County mischaracterizes the legislative history cited by Defendants.  *Compare* H.R. Rep. No 119-106, at 557 (2025) (explaining OBBBA "repeals the [program] authorizations *and* unobligated balances of funds made available to EPA under the IRA" (emphasis added)) *with* Pl. Opp. 16 n.7 (same House report "simply" provides that OBBBA "'repeals the [GGRF's] authorization' of appropriations and the unobligated funds").

terminated the GGRF programs, including SFA, by repealing the authority for the programs and

rescinding the designated funds to run them.  Congress enacted OBBBA knowing that EPA had

already terminated grants issued under two of the three GGRF programs, deobligating

approximately $17 billion from those grants.[16]  In this context, it is Harris County who urges an

"implausible" interpretation, Pl. Opp. 15, that through silence, Congress intended to prohibit EPA

from doing something it knew EPA had already done—terminate GGRF grants.  *See Va.*

*Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019) ("[I]t is our duty to respect not only what

Congress wrote but, as importantly, what it didn't write.").[17]

Harris County's remaining statutory arguments also fail.  Harris County's portrayal of

SFA termination as "retroactive" is simply not true.  Pl. Opp. 14, 17.  OBBBA's repeal took

Section 134 off the books as of July 4, 2025.  Any subsequent program termination cannot have

violated OBBBA or Section 134.  And Harris County concedes the Court lacks jurisdiction over

grant terminations.  *See id.* at 18; *supra* at 4–7.  Regardless, as Defendants explained, the grant

terminations were not retroactive because they "did not negate any existing obligations for work

already performed under the grants, and EPA specifically provided that grantees could receive

pre-termination costs."  Def. Mem. 32.  Harris County offers no response to this.  *See* Pl. Opp.

14, 17.  Harris County's retroactivity argument thus fails on its own terms.[18]

---

[16] *See, e.g.*, Amicus Br. 12–13; 171 Cong. Rec. S4080 (daily ed. June 30, 2025) (statement of Sen. Shelley Capito).

[17] Amici, like Harris County, both (1) ignore the legal distinctions between grant terminations and termination of an ongoing congressional program, *see, e.g.*, Amicus Br. 12-13, and (2) generally focus on what OBBBA did *not* do, instead of what OBBBA *did* do, *see id.* at 7-11, 13.  At least amici concede what Defendants keep saying: that OBBBA's repeal of Section 134 took the "GGRF program" off the books.  *Id.* at 13.  Amici's arguments in support of Harris County's claims otherwise fail for the same reasons as Harris County's.

[18] Contrary to Harris County's suggestion, the SFA funds did not belong to grantees.  Pl. Opp. 17. As a plain matter of its grant's terms, Harris County had no rights to SFA money until it had

And finally, Harris County cannot distinguish OBBBA from the other statutory repeals cited by Defendants. *See* Def. Mem. 28. Harris County argues the SFA program was "already established" and all actions under the program had "been completed" when OBBBA repealed Section 134. Pl. Opp. 14 (emphasis omitted). This argument is devoid of substance. If the program had "been completed" pre-OBBBA, as Harris County asserts, *id.*, there would be no "program" for the Court to resurrect, as Harris County requests, *e.g.*, *id.* at 1. At any rate, the same argument could be made for virtually any repealed government program—*i.e.*, that when repealed, the program already had been established and agency actions had been completed under it. Yet the repeal of statutory authority for a program categorically terminates the program moving forward. *See, e.g.*, *Cent. Ky. Prod. Credit Ass'n v. United States*, 846 F.2d 1460, 1461 (D.C. Cir. 1988) (repeal of the Farm Credit Amendments Act of 1985 "repealed the assessment program" it authorized); *Nat'l Ass'n of Cntys. v. Baker*, 842 F.2d 369, 372 (D.C. Cir. 1988) (repeal of the Revenue Sharing Act "terminated the Revenue Sharing Program").

> **B.**      **Harris County's Constitutional Claims Fail Under *Dalton* and For the Same Reasons as the Statutory Claim.**

Harris County's separation of powers, Appropriations Clause, and Presentment Clause claims fail because they are not cognizable under *Dalton v. Specter*, 511 U.S. 462 (1994), and because they lack merit for the same reason as their statutory claim. Def. Mem. 32–36. Harris County responds, first, that *Dalton* does not apply "because EPA has no authority whatsoever under OBBBA (or any other statute) to eliminate Solar for All." Pl. Opp. 18. That gets things backwards: because an agency needs congressional authorization to run a program, it is the repeal of that authority, and thus the absence of authority, that eliminates the program. *See* Def.

---

earned that money by performing and incurring costs under the grants. SFA Grant at EPA_000465 ("EPA agrees to cost-share . . . approved budget period costs incurred . . . .").

Mem. 27–29.  Section 134 undisputedly authorized EPA to run SFA.  Harris County's

constitutional claims contend OBBBA's repeal of Section 134 did not affect that authorization,

and that EPA therefore terminated a "congressionally mandated program."  Pl. Opp. 19.  Harris

County's constitutional claims thus "simply alleg[e] that [EPA] has exceeded [its] statutory

authority" under OBBBA and Section 134, falling squarely within *Dalton*, 511 U.S. at 473.[19]

On the merits, because Harris County's constitutional claims reassert their statutory

claim, *see* Pl. Opp. 19, they fail for the same reasons.  *See supra* at 11–17.

### C. EPA's Termination of the SFA Grants Following Congress's Repeal of Section 134 and Rescission of Administrative Funding Was Not Arbitrary or Capricious.

Because a repealed statute cannot support reinstatement of any SFA "program," this

litigation fails as a matter of law, regardless of EPA's rationale for terminating the SFA grants.

Nonetheless, as explained in Defendants' opening brief, EPA's termination of the SFA grants was

both reasonable and reasonably explained.  *See* Def. Mem. 36–40.  Harris County's

counterarguments mostly just reiterate their statutory argument, offering variations on the theme

that EPA acted unreasonably because OBBBA did not terminate the SFA program.  *See, e.g.*, Pl.

Opp. 21 (terminating program was unreasonable because it was based on EPA's "mistaken and

pretextual reading of § 60002"); *id.* at 21–22 (urging Court to disregard APA's harmless error

doctrine because "§ 60002's prospective repeal of CAA § 134 did not purport to unwind the

GGRF grant programs").  These arguments all fail for the same reasons as the statutory claim.

---

[19] Harris County also gets Defendants' position backwards: Defendants do not maintain that "viable constitutional claims *ipso facto* become unavailable," under *Dalton*, Pl. Opp. 19; rather, Defendants have explained that alleged statutory violations are not *ipso facto* viable constitutional claims, which is what *Dalton* holds.  And *National Treasury Employees Union v. Vought* is inapposite, *see* Pl. Opp. 18, because here, unlike in that case, there *was* "an act of Congress" that terminated the SFA program: OBBBA.  774 F. Supp. 3d 1, 42 (D.D.C. 2025), *appeal pending*, No. 25-5091 (D.C. Cir.).

*Supra* at 11–17.  In short, Section 134 no longer exists.  There is no congressional mandate.
Most of Harris County's arguments in support of its arbitrary and capricious claim should be
disregarded on that basis.[20]

Harris County's ancillary arguments are also easily dismissed.  First, Harris County relies
on non-record evidence to assert that EPA offers only "'contrived reasons' for the Elimination
Decision."  Pl. Opp. 20.  As Defendants' opening brief explained, Harris County's attempt to
introduce non-record evidence is improper, and any arguments relying on non-record evidence
should be rejected.  Def. Mem. 11–12 n.3.  As demonstrated in the very authority Harris County
cites, Pl. Opp. 20, a plaintiff that wants the court to consider extra-record evidence in an APA
case must move to introduce that evidence and satisfy distinct prerequisites.  *See Dep't of Com. v.
New York*, 588 U.S. 752, 782 (2019).  Courts grant such motions "only in exceptional cases."
*Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005).  Harris County has not so
moved; its non-record evidence therefore should not be considered.[21]

Second, Harris County's suggestion that the short window of time between the decision
to terminate and termination shows pretext or a lack of reasoned decision-making, Pl. Opp. 20, is
nonsense.  The Recommendation—an eight-page document with numerous factual and legal
citations—represents one step in a deliberative process.  And Harris County's characterization of

---

[20] Harris County's citation to 2 C.F.R. § 200.300, Pl. Opp. 22–23, adds nothing to the legal
analysis.  That provision simply requires agencies to follow the law when administering grants,
which EPA did.

[21] Even if it did file a motion, Harris County could not make the requisite showings of (1) "bad
faith," "improper behavior," or that "the record is so bare that it prevents effective judicial
review," *Fund for Animals*, 391 F. Supp. 2d at 197, and (2) that one of the "eight recognized
exceptions to the general prohibition against extra-record review" applies, *Pac. Shores Subdiv.
Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006).  OBBBA
changed the legal landscape governing SFA, and EPA terminated the SFA grants on that basis.
Pre-OBBBA issues specific to the other two GGRF programs do not suggest otherwise.  Amici's
invocation of extra-record evidence, Amicus Br. 6-7, should be disregarded for the same reasons.

Defendants' arguments in this litigation as "*post hoc* justification," *id.* at 22, is incorrect for the reasons stated in Defendants' opening brief, Def. Mem. 38–39.  Harris County's taking a few of the eight-page Recommendation's sentences out of context does not change that.  *See Am. Legion v. Derwinski*, 54 F.3d 789, 798 (D.C. Cir. 1995) ("[E]ven if some of the agency's remarks might appear erroneous when read in isolation, the court will uphold agency action that, considered in its entirety, is based on appropriate considerations and otherwise complies with relevant statutes and the Administrative Procedure Act.") (alteration and quotations omitted).

Third, Harris County attempts to discredit EPA's consideration of alternative means of administering the grants by claiming EPA could have used Environmental Programs and Management ("EPM") funding, which was not "'dedicated for other purposes and programs.'"  Pl. Opp. 23 (quoting Def. Mem. 8; citing Pl. Mem. 31–32).  As described in Defendants' opening brief, Def. Mem. 8, EPA decided not to use EPM funds as doing so "would likely require stripping administration and oversight funding away from programs that Congress intended the Agency to support."  Recommendation at EPA_000095.  That decision is not reviewable, as it is committed to agency discretion by law.  *See* Def. Mem. 37 (citing *Lincoln v. Vigil*, 508 U.S. 182 (1993)).  The decision was also reasonable.

Far from contradicting EPA's conclusion not to use EPM funds, the fiscal year 2025 appropriations cited by Harris County support EPA's decision.  *See* Pl. Opp. 23.  The fiscal year 2025 appropriations were enacted on March 15, 2025, preceding OBBBA's enactment on July 4, 2025.  *See* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, 139 Stat. 9 ("FY25 Appropriations Act").  OBBBA is thus Congress's final word on

20

administrative funding for the SFA grants.[22]  Though Harris County characterizes the EPM appropriation as providing "ample funds" to administer SFA, EPA had requested more than $4.4 billion in EPM funding for fiscal year 2025.  *See* EPA, EPA-190R24002, Fiscal Year 2025 Justification of Appropriation Estimates for the Committee on Appropriations: Tab 05: Environmental Programs and Management 5 (2024), *available at* https://www.epa.gov/system/ files/documents/2024-04/fy25-cj-05-epm.pdf ("FY25 Justification").  Congress's almost $3.2 billion EPM appropriation, FY25 Appropriations Act § 1802, 139 Stat. 9, 30, was thus less than 73 percent of what EPA requested.  And EPA had assigned all its requested $4.4 billion funding to specific programs.  *See* FY25 Justification at 6–10.  Harris County itself recognizes that even *with* the designated SFA administrative funding, EPA would have been short on funds to run SFA.  *See* Pl. Mem. 31 ("[W]ell before § 60002 was enacted, EPA recognized that it needed to secure additional funding to run [SFA].").  Following the rescission of the remaining dedicated funds, the funding need was more significant.  Thus, Harris County's invocation of EPM only supports EPA's decision not to use EPM funding to administer the SFA grants.

Finally, EPA did not "ignore[] the significant forward-looking reliance interests" of grantees.  Pl. Opp. 23.[23]  EPA instead recognized that SFA participants "may have begun to rely on [SFA] funds" and "made preliminary budgets, projections, outlays, and staffing decisions," and that "grant recipients anticipated continued funding for anticipated projects before enactment of OBBB[A]."  Recommendation at EPA_000091–92.  EPA also considered that "several factors

---

[22] *See* Hon. Bill Green, B-207186 at 4 (Comp. Gen. Feb. 10, 1989), *available at* https://www.gao.gov/products/b-207186-1 (where authorization and appropriations statutes "are in irreconcilable conflict," the later enacted statute "provides the most recent expression of congressional intent").

[23] Harris County raises reputational harm but offers no showing in support.  *See infra* at 23.

21

limit the harmful impacts of disrupting such reliance," including the program's "nascent stage," the pass-through nature of the grants, and the reimbursement available "for all reasonably incurred and allowable expenses prior to termination." *Id.* at EPA_000092–93.  EPA thus "assess[ed] whether there were reliance interests, determine[d] whether they were significant, and weigh[ed] any such interests against competing policy concerns," which is all the APA requires.  *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020); *see also* Def. Mem. 39–40.

### III.   Harris County Has Not Shown Any Need for Any Remedy Other Than Remand.

For the reasons already discussed, Harris County's claims fail as a matter of law, precluding any relief in its favor.  However, even if the Court determines that it has jurisdiction to redress the claims, and those claims have merit, Harris County has not shown relief beyond remand is warranted.

As a preliminary matter, Harris County fails to support its request for vacatur.  Pl. Opp. 24.  "The decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."  *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (quotations omitted).  EPA's decision to terminate the SFA grants was reasonable, in light of Congress's repeal of the SFA program and rescission of designated administrative funding.  There is thus every reason to think that, on remand, EPA could rehabilitate any failure to, for example, fully develop its analysis of reasonable alternatives or reliance interests.  And vacatur would have "disruptive consequences." *Id.*  Vacating "program" termination, alone, would require EPA to run a meaningless shell of program without any current grants or authority to issue future grants.  Thus, even in the event the Court identifies some defect in EPA's decision-making, vacatur is not warranted.

Next, Harris County has not shown that injunctive relief is warranted in addition to vacatur. *See* Def. Mem. 40–41. Harris County simply confirms that its request for injunctive relief is based on the Administration's "determined campaign . . . to end *the other* GGRF programs" *before* OBBBA was enacted. Pl. Opp. 24 (emphasis added). But those allegations are irrelevant because EPA did not terminate any SFA grants until *after* OBBBA was enacted.

Harris County similarly has not proven irreparable harm that "will directly result from the action which the movant seeks to enjoin." Def. Mem. 41 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). First, Harris County does not contend that its purported harm "directly result[s]" from SFA program termination. Instead, Harris County asks the Court to conflate the permanent injunction standard with the standard for standing, *see* Pl. Opp. 25 (citing *id.* 11–12), arguing a permanent injunction is warranted as a "first step on a path that could ultimately lead to relief" by "clearing the way . . . for EPA to voluntarily reinstate [Harris County's] grant," *id.* at 12 (quotations omitted). In other words, at most, Harris County argues its purported harm *indirectly* results from the termination of the SFA program. Even assuming that is sufficient to get Harris County into court (and it is not, *see supra* at 4–7), it does not satisfy the standard for a permanent injunction.

Second, Harris County fails to substantiate its purported harm. Harris County merely reiterates that grant termination "undermined the trust and goodwill" of its partners, Pl. Opp. 25, while failing to prove this purported reputational harm, Def. Mem. 42. And Harris County offers no specifics as to the unidentified nonprofit partners that purportedly "face substantial threat of being unable to sustain their own operations while awaiting reimbursements that may never come." Pl. Opp. 25. Review of the underlying declaration shows the "operations" at issue are

23

"the commitments set out in the SFA workplan," Dickerman Decl. ¶ 82, ECF No. 32-2, not the nonprofits' operations as a whole.  At most, this purported harm is an unverified monetary injury.

Third, Harris County fails to show that monetary damages are inadequate.  *See* Def. Mem. 43.  Harris County's purported non-monetary harms, Pl. Opp. 25, are simply (1) loss of the benefits of the SFA Grant, Pl.'s Statement of Material Facts ¶¶ 69–80, 82, ECF No. 32-2 ("Pl. SMF"); Pl. Mem. 24 n.8, which are quintessential monetary harms; and (2) loss of "trust and goodwill," Pl. SMF ¶ 81, and the exacerbation of "reputational harm to the County unrelated to the loss of its grant," Pl. Mem. 24 n.8, which Harris County has failed to explain or prove. Harris County instead improperly shifts its burden to Defendants, arguing "EPA has failed to identify a single instance in which the [Court of Federal Claims] has adjudicated a case like this one."  Pl. Opp. 25.[24]  That misses the point.  The Court of Federal Claims is Congress's chosen forum for adjudicating contract claims against the government, *see* Def. Mem. 13–14, 19–20, and Harris County has not shown the monetary remedies available there are inadequate.

Finally, with respect to the balance of the equities and public interest, Harris County continues to repackage the merits to argue an injunction "would prevent EPA from taking further unlawful steps to dismantle" SFA.  Pl. Opp. 26.  But requiring EPA to reinstate and fund an aimless, congressionally defunct program post-OBBBA is contrary to "the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources." *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976); *see Brock v. Pierce Cnty.*, 476 U.S. 253, 262 (1986) ("[T]he protection of the public fisc is a matter that is of interest to every citizen.").

---

[24] Contrary to Harris County's aspersions, the Court of Federal Claims has presided over cases concerning grants and grant programs.  *See, e.g.*, *112 Genesee Street, LLC v. United States*, 166 F.4th 1017 (Fed. Cir. 2026).

24

## IV.    Harris County Has Not Shown Universal Relief is Needed.

Under *Trump v. Casa, Inc.*, 606 U.S. 831, 837 (2025), equitable relief must be tailored to the party before the court, and any vacatur or injunction issued in this case therefore should be limited to Harris County.  Def. Mem. 43–44.  However Harris County frames its requested relief, the obligation to narrowly tailor equitable relief remains.  *See id.*; *see also* 5 U.S.C. § 706 (permitting courts to "set aside agency action"); *id.* § 551(13) (defining "agency action" to include "the whole or a part of an agency" order); *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (Even where "the district court has power to do so, it is not required to set aside every unlawful agency action.  The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity.").  Harris County fails to explain why its requested relief necessarily requires relief to the recipients of the 59 other discrete SFA grants, none of whom are before this Court.  Harris County thus fails to show that programmatic relief beyond Harris County is warranted.

### CONCLUSION

For these reasons, Defendants respectfully request that judgment be entered in favor of Defendants.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

KIRK T. MANHARDT
Director

KEVIN P. VanLANDINGHAM
Assistant Director

25

Dated: April 10, 2026

*/s/ Bethany R. Theriot*
Bethany R. Theriot (D.C. Bar 1022065)
Tiffiney F. Carney (D.C. Bar 1024568)
I-Heng Hsu (N.Y. Reg. 4904033).
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Corporate/Financial Litigation Section
P.O. Box 875
Ben Franklin Stations
Washington D.C. 20044-0875
Tel: (202) 307-0244
bethany.theriot@usdoj.gov
tiffiney.carney@usdoj.gov
i-heng.hsu@usdoj.gov

*Attorneys for the Defendants*