# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARRIS COUNTY, TEXAS,

       *Plaintiff,*

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

    and

LEE ZELDIN, in his official capacity as
ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

    and

DEVON BROWN, in his official capacity as
EPA AWARD OFFICIAL, UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

       *Defendants*.

Civil Action No. 1:25-cv-03646-TSC

**PLAINTIFF'S SUR-REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harris County, Texas ("Harris County") submits this sur-reply in response to arguments advanced by defendants U.S. Environmental Protection Agency ("EPA"); Lee Zeldin, in his official capacity as Administrator of EPA; and Devon Brown, in his official capacity as EPA Award Official (together, "EPA") for the first time in EPA's reply in support of its cross-motion for summary judgment, ECF 50 ("EPA Reply").

Last month, Harris County assented to EPA's request for a 14-day extension of EPA's deadline to file its reply, as a professional courtesy and in view of the agency's "overlapping [briefing] deadlines" in several other cases which, like this one, arise out of EPA's illegal efforts to eliminate Greenhouse Gas Reduction Fund ("GGRF") programs, *see* ECF 43 at 7-8. EPA,

1

however, used that extra time not just to respond to Harris County's brief, but also to raise a host of new arguments which could have—and should have—been made in the agency's opposition brief. In its latest effort to insulate its illegal dismantling of the Solar for All ("SFA") program from judicial review, EPA now contends that the Elimination Decision did not constitute "final agency action," but was instead a non-final legal interpretation inseparable from the agency's termination of all SFA grants. EPA Reply 2-4. EPA also now asserts that § 60002 of the One Big Beautiful Bill Act ("OBBBA") can be given its "plain and full meaning[]," *id.* at 15, only if the statute's repeal and rescission clauses are construed to permit EPA to unwind the SFA program— that is, if they are construed retroactively—despite the statute's indisputably prospective text. *See id.* at 11-17. And, for the first time, EPA urges the Court to remand to the agency *without* vacating the Elimination Decision. *Id.* at 22.

EPA forfeited these arguments by failing to raise them earlier in this litigation. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (citation omitted) ("We need not consider this argument because plaintiffs have forfeited it on appeal, having raised it for the first time in their reply brief."); *Poland v. D.C. Water & Sewer Auth.*, No. 16-cv-2031, 2022 U.S. Dist. LEXIS 118080, at *16 (D.D.C. July 6, 2022) (Chutkan, J.) ("[T]he D.C. Circuit has held that courts should not address arguments raised for the first time in a reply brief . . . ."). But even if the agency's new arguments were properly before the Court, they would not help EPA. The Elimination Decision is textbook final agency action: After "weighing options for the [program's] future," EPA—in its own words—"made the decision to terminate the SFA program" based on its view that OBBBA "completely terminated the statutory authority and all appropriations related to Solar for All." *See* ECF 32-4 ("Notice"). Equally unpersuasive are the agency's new arguments in support of its retroactive reading of § 60002. And remand without vacatur would be patently

2

inappropriate here, since nothing EPA could do on remand could change the fact that the agency has no authority whatsoever to dismantle the SFA program.[1]

## ARGUMENT

### I.   Harris County Challenges Final Agency Action—EPA's Elimination Decision.

Harris County argued from day one—first in its motion for preliminary injunction and again in its motion for summary judgment—that the Elimination Decision constitutes final agency action. *See* ECF 12-1 ("PI Mot.") at 16 ("Defendants' Elimination Decision is quintessential final agency action justiciable under the APA."); ECF 32-1 ("MSJ") at 15 ("This lawsuit challenges final agency action—EPA's Elimination Decision—as arbitrary and capricious, contrary to statutory and constitutional authority, and otherwise not in accordance with the law under the APA."); *see also* ECF 1 ¶ 92 ("Defendants' Elimination Decision constitutes final agency action under the [APA]."). Yet EPA waited until its summary-judgment reply to disagree, only now contending that the Elimination Decision is not final, and therefore not reviewable, action under the APA, *see* EPA Reply 2-3.

Even if this argument were cognizable (and it is not, *see supra* p. 2), the argument is wrong. EPA's program-level decision to eliminate Solar for All is quintessential final agency action. The Elimination Decision was not "merely tentative or interlocutory"; to the contrary, it was the "consummation" of the agency's decision-making process. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). That process was abbreviated and pretextual, to be sure. *See* MSJ 13-14, 36-38. But as

---

[1] Although this sur-reply centers on these three principal points, EPA raises a host of other arguments for the first time in reply. *See, e.g.*, EPA Reply 10-11 (acknowledging for the first time redressability cases cited in Harris County's opening brief); *id*. at 14 (finally addressing appropriations authorities cited in Harris County's opening brief); *id*. at 19 (belatedly attempting to shore up the agency's deficient administrative record). These arguments, like those on which this sur-reply centers, are not properly before the Court. *See Am. Wildlands*, 530 F.3d at 1001.

EPA's decisional documents reflect—and as the agency's top official confirmed—it reached a "definitive conclusion" to shutter the congressionally mandated SFA program based on its interpretation of OBBBA § 60002, *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 56 (D.C. Cir. 2016). *See* Notice at 1 (EPA "ha[d] been weighing options for the future of the Solar for All program and has made the decision to terminate the SFA program" based on OBBBA); EPA AR000096 (recommending, *inter alia*, that EPA "terminate the SFA program" pursuant to OBBBA); EPA AR000130 (stating that EPA "leadership has decided to terminate the [SFA] program"); Lee Zeldin (@EPALeeZeldin), X (Aug. 7, 2025, 2:07 PM), https://x.com/epaleezeldin/status/1953518426602803684 (announcing that EPA had "end[ed]" Solar for All "for good").

The Elimination Decision also determined "rights or obligations" from which "legal consequences . . . flow[ed]"—the second prerequisite for APA-reviewable final agency action. *Bennett*, 520 U.S. at 178; *see* MSJ 14. As a direct result of its OBBBA-based decision to shut down Solar for All, EPA determined to terminate Harris County's grant, as well as the grants of all other SFA grantees; halted grantees' access to their SFA award funds; drained grantees' ASAP account balances; and instructed grantees to proceed to close out their awards. *See* ECF 12-2 ("Dickerman Decl.") ¶¶ 22-23; Notice at 1-2; ECF 20-1 ("Treml Decl.") ¶¶ 5-6; ECF 38-1 & 39 ("Opp.") at 19. Harris County does not simply object to EPA's "express[ion of] its view of what the law is," EPA Reply 3 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)), or the nonbinding opinions of the agency's staff, *see id*. (citing *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (legal opinion of agency staff non-final)). The County challenges the agency's final decision, based on its erroneous view of OBBBA, to wipe out Solar for All. The cases cited by EPA are therefore inapposite. *Id*. (citing *Util. Air Regul. Grp. v. EPA*, 320 F.3d 272,

4

279 (D.C. Cir. 2003) (agency's interpretation of regulations that were subject to pending rulemaking was not sufficiently final); *Calif. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 638-40 (D.C. Cir. 2019) (memorandum interpreting statute not final where "neither EPA nor regulated sources [could] rely on it as . . . authoritative")).

Nor can EPA insulate the Elimination Decision from review by claiming that it was part and parcel of the agency's terminations of the SFA grants. *See id.* at 3. As EPA has expressly and repeatedly recognized, the agency made a program-level decision to shutter Solar for All after concluding that OBBBA required the program's closure. *See, e.g.*, EPA AR000096; EPA AR000130; Opp. 31. It is that OBBBA-based Elimination Decision that Harris County challenges here, not EPA's resulting decision to terminate Harris County's grant. *See* Notice at 1 (terminating grant after concluding, based on OBBBA, that "continu[ing] the program's administration … is no longer legally permissible").[2]

The agency's effort to pass the buck to Congress fails for the same reason. *See* EPA Reply 4 (contending that Solar for All's dismantling was "a congressional action"). Congress did not eliminate Solar for All—EPA did. *See* MSJ 26-29; Harris County Reply 11, 13-18. And EPA's arguments to the contrary, which rely on the agency's misreading of § 60002, *see, e.g.*, EPA Reply 9, simply underscore that this case centers on the proper interpretation of a federal *statute*—not a federal contract—and thus belongs in this Court.

---

[2] As explained, EPA's termination of the County's grant is preliminary—not final—agency action, since Harris County's administrative appeal remains pending. MSJ 19 n.5 (citing 2 C.F.R. § 1500.16-1500.17 (instructing that agency *dispositions* of administrative appeals "constitute final agency action")). *Soundboard* does not suggest otherwise because, until the agency's administrative-appeal process comes to a close, its decision-making process has not reached its consummation. *See* 888 F.3d at 1263.

## II.    Section 60002 Does Not Retroactively Unwind Solar For All.

As Harris County has explained, through § 134 of the Clean Air Act ("CAA"), the prior Congress appropriated, and directed that EPA obligate, $26.97 billion to eligible recipients through competitive grants by September 30, 2024. CAA §134(a)(1)-(3); *see* MSJ 28. EPA met that mandate, establishing Solar for All and the two other GGRF programs and obligating all grant funds by the statutory deadline. *See* MSJ 28, Harris County Reply 17. Nothing in § 60002's prospective repeal of § 134 altered that legal landscape: Section 60002 neither undid § 134's requirements retroactively, nor authorized EPA to dismantle the already established GGRF programs. *See* MSJ 28 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)).

EPA does not dispute that § 60002 operates prospectively, repealing § 134 only on a going-forward basis and rescinding only unobligated funds. *See* Opp. 31. Nor could the agency argue otherwise given the statute's clear text. *See* MSJ 26-29; Harris County Reply 12-18. Yet EPA insists, in a series of still-shifting arguments, that OBBBA required (or authorized) the agency to shut down Solar for All. *See* Harris County Reply 12-13. That is wrong, and the agency's new arguments fare no better than its old ones, *see id.*; MSJ 29-35.

*First*, EPA's new ratification theory is a non-starter.  According to the agency, in enacting § 60002 after EPA had attempted to terminate the other GGRF programs (NCIF and CCIA), Congress ratified those illegal acts and simultaneously eliminated the only remaining GGRF program, Solar for All. EPA Reply 15-16. But the facts of the NCIF/CCIA case, as well as the text of § 60002, foreclose that argument. The agency did not "deobligat[e] approximately $17 billion" from the NCIF and CCIA grants, EPA Reply 16, as EPA well knows; the preliminary injunction in the *Climate United* cases barred EPA from effecting the terminations, and the grant funds "remain obligated" in Citibank accounts in the grantees' names, *Climate United Fund v. Citibank,*

*N.A.*, 154 F.4th 809, 819 (D.C. Cir. 2025), *vacated on other grounds and reh'g en banc granted by*, 2025 LX 512734 (D.C. Cir. Dec. 17, 2025). Besides, nothing in § 60002's *prospective* repeal could sanction EPA's efforts to undo the already existing SFA program, for only retroactive legislation can "attach[] new legal consequences to events completed before [the legislation's] enactment," *Landgraf*, 511 U.S. at 270. *See* MSJ 26-29; Harris County Reply 17-18. As a result, EPA has no answer to its absurdity and non-delegation problems. Although the agency insists that § 60002 left to EPA's "discretion" the fate of $26.97 billion in obligated grant funds, Opp. 30, Congress would not—indeed, *could not*—silently delegate to EPA the power of the purse, Harris County Reply 15-16.

*Second*, Harris County does not "downplay OBBBA's repeal [clause]," EPA Reply 12-13. True, § 60002 "remov[ed § 134] from the books" going forward. EPA Reply 12. But as just discussed, § 60002 did not retroactively undo the grant programs EPA had already established and funded under § 134, nor give EPA any authority to unwind them itself. *See* MSJ 26-29; Harris County Reply 13-16. And EPA cannot contend that § 134's prospective repeal relieved the agency of its undisputed pre-OBBBA obligation to run the programs, as § 134 contained no program-management directives in the first place. *See* CAA § 134. Rather, EPA's authority (indeed, obligation) to administer the programs necessarily follows from Congress's directive to the agency to establish and fund them. And because OBBBA did not eliminate those already established GGRF programs, EPA's obligations are the same as they were before: the agency has congressionally mandated grant programs it cannot decline to administer, as well as the funding necessary to administer them.[3]

---

[3] In its reply, EPA claims that even accounting for the $3.195 billion EPM appropriation, it lacks sufficient funds to operate the SFA program. EPA Reply 20-21. EPA did not raise that argument

Contrary to EPA's contention (at EPA Reply 12), reading § 60002 prospectively—as its plain text demands, MSJ 26-29—does not "fail[] to give the repeal any meaningful impact." The going-forward repeal of § 134 means that appropriating additional funds for the GGRF programs would require new authorization, as Harris County has explained. *See* MSJ 28. EPA failed to respond to this point in its opposition, and its belated argument that the repeal of an authorization somehow impermissibly "bind[s] a later Congress," EPA Reply 12—misapprehends federal appropriations law, as Congress routinely enacts and repeals authorizations of appropriations, *see* GAO, The Red Book 2-54-56 (4th ed. 2016). Nor is it any help to the agency that Congress reportedly took § 134 "off the books," EPA Reply at 16 n.17, to ensure that "if EPA prevailed in the *Climate United* litigation" it would not be required to reobligate the NCIF and CCIA grant funds, Br. of Amici Curiae Members of Congress, ECF 35-1 at 13. Even if that is true, the fact that § 60002 might excuse EPA from reobligating NCIF and CCIA program funds (*if* the courts ultimately permit EPA to deobligate those funds) in no way affords EPA authority to unwind the separate SFA program—in which all $7 billion in grant funds unquestionably remained obligated until the Elimination Decision.

*Third*, Harris County's construction of § 60002 does not "fail[] to give meaning to the rescission of unobligated funds that accompanied Section 134's repeal." EPA Reply 12-13; *see id.* at 14. As Harris County has explained (and as EPA recognizes, *id.* at 13), the rescission clause swept back approximately $19 million in unobligated funds—but no more. *See* MSJ 28. And while

---

in response to the County's summary-judgment motion, *see* Opp. 37 (contending that the agency's "decision not to use other sources of funding" was "not subject to APA review"), and it lacks merit in any event. Even if EPA did not obtain all the money it requested for program management, it may not simply eliminate programs it does not like. *See In re Aiken Cty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (agencies required to "effectuate the original statutory scheme as much as possible" where full funding is not provided (quoting *City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977))).

EPA now insists that the rescission would "make[] no sense" if Congress did not intend the repeal to eliminate the already established SFA programs, EPA Reply 13, that gets matters backwards: the rescission clause would be *superfluous* if § 60002 had shut down Solar for All because there would be no need to separately rescind the unobligated funds, *see* MSJ 27.

In its opposition, EPA failed to respond to the County's argument that the rescission clause would be superfluous under the agency's construction. And the argument belatedly advanced by EPA in reply—that the rescission clause would not be superfluous because the GGRF administrative funds would otherwise "remain available," EPA Reply 14—misses the mark: To shutter an existing congressional program in the manner EPA contends § 60002 operates, a statute would have to retroactively repeal the authority on which that program was based. And in that case, unobligated funds appropriated for the now-shuttered program would revert to Treasury. MSJ 27. EPA's assertion that "rescission is a common follow-on step" to repeal, EPA Reply 13 n.11, is therefore likewise off base, because under EPA's reading of § 60002, the rescission clause is not a "follow-on step" but a nullity.[4]

### III.    EPA's Belated Request For Remand Without Vacatur Should Be Denied.

EPA also asserts for the first time in its reply that if the Court rules in Harris County's favor on the merits, it should remand to the agency *without* vacating the Elimination Decision— an "exceptional remedy" reserved for "limited circumstances," and one that is appropriate only where "an agency's error is curable," *Cigar Ass'n of Am. v. FDA*, 132 F.4th 535, 541 (D.C. Cir. 2025). *Compare* EPA Reply 22 ("Harris County has not shown relief *beyond remand* is warranted" and "fails to support its request for vacatur" (emphasis added)), *with* Opp. 41 ("Harris County has

---

[4] EPA's authorities (at EPA Reply 13 n.11) are no help; to the contrary, they reflect Congress's common use of rescission clauses to dispose of unobligated funds after the *prospective* repeal of a program—just as it did here.

made no showing that vacatur is insufficient . . . ."). The agency's rationale for this novel and unusual request? That "vacatur would have 'disruptive consequences'" because "[v]acating 'program' termination, alone, would require EPA to run a meaningless shell of a program without any current grants." EPA Reply 22 (quoting *Allied-Signal, Inc. v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

Not so. Once the Elimination Decision is vacated, the agency will be obligated to *reconsider* the program going forward, this time without reliance on its erroneous reading of OBBBA, *see* MSJ 23. And since the Elimination Decision was the sole basis cited by EPA for the SFA grant terminations, the agency might, post-vacatur, voluntarily choose to reinstate some or all of the grants and administer the SFA program much as it did before OBBBA. *See id*. n.7 (citing example of terminated grants reinstated following vacatur of agency action in *Rhode Island v. Trump,* No. 25-cv-128 (D.R.I. Nov. 21, 2025)). At minimum, EPA could not choose to shutter the SFA program again—until and unless Congress authorizes that action. The Elimination Decision is therefore not a curable error, and remand to the agency without vacatur is inappropriate and unavailable, *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024) ("Because an agency can't 'cure' the fact that it lacks authority to take a certain action, remand-without-vacatur is unavailable here."); *see Env'tl Def. Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021) (disruptive-consequences factor is "weighty only insofar as the agency may be able to rehabilitate its rationale" (quotation omitted)).

## CONCLUSION

Harris County respectfully requests that the Court set a hearing on the parties' respective motions for summary judgment, grant the County's motion, and deny EPA's cross-motion.

Dated: April 24, 2026

Respectfully submitted,

/s/ Beth C. Neitzel

Noah C. Shaw (*pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019
Tel. (212) 812-0400
ncshaw@foleyhoag.com

Beth C. Neitzel (103611)
Emily J. Nash (MA0031)
Matthew F. Casassa (*pro hac vice*)
Kevin Y. Chen (*pro hac vice*)
Gilleun Kang (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com
enash@foleyhoag.com
mcasassa@foleyhoag.com
kchen@foleyhoag.com
gkang@foleyhoag.com

**JONATHAN G.C. FOMBONNE**
HARRIS COUNTY ATTORNEY

/s/ Neal A. Sarkar

**JONATHAN G.C. FOMBONNE**
Harris County Attorney
Texas State Bar No. 24102702
D.D.C. Bar ID: TX0090
jonathan.fombonne@harriscountytx.gov

**NEAL A. SARKAR**
First Assistant County Attorney
Texas Bar No. 24093106
D.D.C. Bar ID TX0088
neal.sarkar@harriscountytx.gov

**OFFICE OF THE HARRIS COUNTY ATTORNEY**
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924

*Counsel for Harris County, Texas*

11

## CERTIFICATE OF SERVICE

I certify that on April 24, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  Paper copies will be sent via first class mail to those indicated as non-registered participants.

*/s/ Beth C. Neitzel*
Beth C. Neitzel (103611)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000
bneitzel@foleyhoag.com