APPEAL,CLOSED,TYPE−E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:25−cv−03646−TSC
## *Internal Use Only*

HARRIS COUNTY, TEXAS v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al
Assigned to: Judge Tanya S. Chutkan
Related Cases: 1:25−cv−00698−TSC
1:25−cv−00735−TSC
1:25−cv−00762−TSC
1:25−cv−00820−TSC
1:25−cv−00938−TSC
1:25−cv−00948−TSC
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 10/13/2025
Date Terminated: 10/01/2026
Jury Demand: None
Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**HARRIS COUNTY, TEXAS** represented by

**Emily J. Nash**
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
617−832−3067
Email: enash@foleyhoag.com
*ATTORNEY TO BE NOTICED*

**Gilleun Kang**
FOLEY HOAG
110 Mount Pleasant Ave
Ste Unit 1
Roxbury, MA 02119
443−949−5296
Email: gkang@foleyhoag.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Fombonne**
FOMBONNE LAW PLLC
C/O Jonathan Fombonne
6350 Main St.
Houston, TX 77005
610−662−8910
Email: Jonathan.Fombonne@harriscountytx.gov
*ATTORNEY TO BE NOTICED*

**Kevin Chen**
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210

617−832−1115
Email: kchen@foleyhoag.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Casassa**
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210
617−832−1116
Email: mcasassa@foleyhoag.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Noah C. Shaw**
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019
518−226−9602
Email: ncshaw@foleyhoag.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Beth C. Neitzel**
Foley Hoag LLP
155 Seaport Blvd
Suite 1600
Boston, MA 02210
(202) 663−6502
Email: bneitzel@foleyhoag.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY** represented by

**Kevin Paul VanLandingham**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044−0875
(202) 307−1134
Email: kevin.p.vanlandingham@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bethany Ruth Brown Theriot**
U.S. DEPARTMENT OF JUSTICE
Corporate/Financial Litigation Section
1100 L Street NW

Room 7028
Washington, DC 20005
202−307−0244
Email: Bethany.Theriot@usdoj.gov
*ATTORNEY TO BE NOTICED*

**I−Heng Hsu**
DOJ−Civ
Civil Division
1100 L Street NW
Ste 7102
Washington, DC 20005
202−616−3619
Email: i−heng.hsu@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Tiffiney Carney**
DOJ−Civ
1100 L St NW
Washington, DC 20005
202−598−7521
Email: tiffiney.carney@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**LEE M. ZELDIN**
*in his official capacity as ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY*

represented by **Kevin Paul VanLandingham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bethany Ruth Brown Theriot**
(See above for address)
*ATTORNEY TO BE NOTICED*

**I−Heng Hsu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiffiney Carney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEVON BROWN**
*in his official capacity as EPA AWARD OFFICIAL, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY*

represented by **Kevin Paul VanLandingham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bethany Ruth Brown Theriot**
(See above for address)
*ATTORNEY TO BE NOTICED*

**I−Heng Hsu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiffiney Carney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**SHELDON WHITEHOUSE**
*Senator*

represented by

**Patrick R. Jacobi**
RIDGELINE CENTER FOR LAW AND POLICY
712 H Street NE
Suite 90006
Washington, DC 20002
703−405−8950
Email: patrick.jacobi@ridgelinecenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexandra L St. Romain**
RIDGELINE CENTER FOR LAW AND POLICY
712 H Street NE
Suite 90006
Washington, DC 20002
973−477−3766
Email: alex.st.romain@ridgelinecenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/13/2025 | 1 | COMPLAINT against DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN ( Filing fee $ 405 receipt number ADCDC−12017989) filed by HARRIS COUNTY, TEXAS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Summons − United States Environmental Protection Agency, # 7 Summons − Lee Zeldin, # 8 Summons − Devon Brown, # 9 Civil Cover Sheet)(Neitzel, Beth) (Entered: 10/13/2025) |
| 10/13/2025 | 2 | NOTICE OF RELATED CASE by HARRIS COUNTY, TEXAS. Case related to Case No. 1:25−cv−00820−TSC; 1:25−cv−698−TSC; 1:25−cv−735−TSC; 1−25−cv−00948−TSC; 1:25−cv−00938−TSC; 1:25−cv−00762−TSC. (Neitzel, Beth) (Entered: 10/13/2025) |
| 10/14/2025 | | Case Assigned to Judge Tanya S. Chutkan. (zmtm) (Entered: 10/14/2025) |
| 10/14/2025 | 3 | SUMMONS (3) Issued Electronically as to All Defendants. (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 10/14/2025) |
| 10/14/2025 | | |

| | | |
|---|---|---|
| | | NOTICE OF NEW CASE ERROR The following error(s) need correction: Missing summonses− U.S. government. When naming a U.S. government agent or agency as a defendant, you must supply a summons for each defendant & two additional summonses for the U.S. Attorney & U.S. Attorney General. Please submit using the event Request for Summons to Issue. (zmtm) (Entered: 10/14/2025) |
| 10/14/2025 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Noah C. Shaw, Filing fee $ 100, receipt number ADCDC−12018979. Fee Status: Fee Paid. by HARRIS COUNTY, TEXAS. (Attachments: # 1 Exhibit A − Declaration of Noah C. Shaw, # 2 Exhibit B − Certificate of Good Standing, # 3 Exhibit C − Proposed Order)(Neitzel, Beth) (Entered: 10/14/2025) |
| 10/14/2025 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Kevin Y. Chen, Filing fee $ 100, receipt number ADCDC−12019046. Fee Status: Fee Paid. by HARRIS COUNTY, TEXAS. (Attachments: # 1 Exhibit A − Declaration of Kevin Y. Chen, # 2 Exhibit B − Certificate of Good Standing, # 3 Exhibit C − Proposed Order)(Neitzel, Beth) (Entered: 10/14/2025) |
| 10/14/2025 | 6 | REQUEST FOR SUMMONS TO ISSUE *U.S. Attorney* filed by HARRIS COUNTY, TEXAS. (Attachments: # 1 Summons to Issue Attorney General)(Neitzel, Beth) (Entered: 10/14/2025) |
| 10/14/2025 | 7 | NOTICE of Appearance by Emily J. Nash on behalf of HARRIS COUNTY, TEXAS (Nash, Emily) (Entered: 10/14/2025) |
| 10/14/2025 | | MINUTE ORDER: Plaintiff's 4 Motion for Leave to Appear Pro Hac Vice is GRANTED. Noah C. Shaw is hereby admitted pro hac vice to represent Plaintiff in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 10/14/2025. (lchs) (Entered: 10/14/2025) |
| 10/14/2025 | | MINUTE ORDER: Plaintiff's 5 Motion for Leave to Appear Pro Hac Vice is GRANTED. Kevin Y. Chen is hereby admitted pro hac vice to represent Plaintiff in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 10/14/2025. (lchs) (Entered: 10/14/2025) |
| 10/15/2025 | 8 | NOTICE of Appearance by Noah C. Shaw on behalf of HARRIS COUNTY, TEXAS (Shaw, Noah) (Entered: 10/15/2025) |
| 10/15/2025 | 9 | NOTICE of Appearance by Kevin Chen on behalf of HARRIS COUNTY, TEXAS (Chen, Kevin) (Entered: 10/15/2025) |
| 10/16/2025 | 10 | SUMMONS (2) Issued Electronically as to U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zjm) (Entered: 10/16/2025) |
| 10/21/2025 | 11 | NOTICE of Appearance by Kevin Paul VanLandingham on behalf of DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (VanLandingham, Kevin) (Entered: 10/21/2025) |
| 10/24/2025 | 12 | WITHDRAWN PURSUANT TO NOTICE FILED 11/14/2025.....MOTION for Preliminary Injunction by HARRIS COUNTY, TEXAS. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Jesse Dickerman, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Text of Proposed Order)(Neitzel, Beth) Modified on 11/17/2025 (zjm). (Entered: 10/24/2025) |

| | | |
|---|---|---|
| 10/31/2025 | 13 | MOTION for Extension of Time to File Response/Reply as to 12 MOTION for Preliminary Injunction by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Text of Proposed Order)(VanLandingham, Kevin) (Entered: 10/31/2025) |
| 11/02/2025 | 14 | WITHDRAWN PURSUANT TO NOTICE FILED 11/14/2025.....MOTION for Temporary Restraining Order by HARRIS COUNTY, TEXAS. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Beth C. Neitzel in Support, # 3 Exhibit A, # 4 Text of Proposed Order, # 5 Affidavit of Beth C. Neitzel)(Neitzel, Beth) Modified on 11/17/2025 (zjm). (Entered: 11/02/2025) |
| 11/02/2025 | 15 | RESPONSE re 13 MOTION for Extension of Time to File Response/Reply as to 12 MOTION for Preliminary Injunction filed by HARRIS COUNTY, TEXAS. (Attachments: # 1 Text of Proposed Order)(Neitzel, Beth) (Entered: 11/02/2025) |
| 11/03/2025 | 16 | RESPONSE re 2 Notice of Related Case *(Defendants' Objection to Plaintiff's Notice of Related Cases)* filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Text of Proposed Order)(VanLandingham, Kevin) (Entered: 11/03/2025) |
| 11/03/2025 | 17 | RESPONSE re 16 Response to Document, *to Defendants' Objection to Harris County's Notice of Related Cases* filed by HARRIS COUNTY, TEXAS. (Neitzel, Beth) (Entered: 11/03/2025) |
| 11/03/2025 | 18 | NOTICE of Appearance by Jonathan Fombonne on behalf of HARRIS COUNTY, TEXAS (Fombonne, Jonathan) (Entered: 11/03/2025) |
| 11/03/2025 | | MINUTE ORDER: Defendant's 13 Motion for Extension of Time to File Response/Reply as to Plaintiff's 12 Motion for Preliminary Injunction is GRANTED in part and DENIED in part. Defendant is ordered to file a response to Plaintiff's 12 Motion for Preliminary Injunction and 14 Motion for Temporary Restraining order by 11/10/2025. Signed by Judge Tanya S. Chutkan on 11/3/2025. (lchs) (Entered: 11/03/2025) |
| 11/10/2025 | 19 | NOTICE of Appearance by Bethany Ruth Brown Theriot on behalf of All Defendants (Theriot, Bethany) (Entered: 11/10/2025) |
| 11/10/2025 | 20 | Memorandum in opposition to re 12 MOTION for Preliminary Injunction , 14 MOTION for Temporary Restraining Order filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Declaration G. Treml, # 2 Text of Proposed Order)(VanLandingham, Kevin) (Entered: 11/10/2025) |
| 11/14/2025 | 21 | NOTICE OF WITHDRAWAL OF MOTION by HARRIS COUNTY, TEXAS re 12 MOTION for Preliminary Injunction , 14 MOTION for Temporary Restraining Order (Neitzel, Beth) (Entered: 11/14/2025) |
| 12/05/2025 | 22 | Joint MOTION to Expedite *Briefing Schedule* by HARRIS COUNTY, TEXAS. (Attachments: # 1 Text of Proposed Order)(Neitzel, Beth) (Entered: 12/05/2025) |
| 12/08/2025 | 23 | ORDER granting parties' 22 Joint Motion to Expedite Briefing Schedule. See Order for further details. Signed by Judge Tanya S. Chutkan on 12/8/2025. (lchs) (Entered: 12/08/2025) |
| 12/16/2025 | 24 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY served on |

| | | |
|---|---|---|
| | | 12/8/2025 (Neitzel, Beth) (Entered: 12/16/2025) |
| 12/16/2025 | 25 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. LEE ZELDIN served on 10/23/2025 (Neitzel, Beth) (Entered: 12/16/2025) |
| 12/16/2025 | 26 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEVON BROWN served on 10/23/2025 (Neitzel, Beth) (Entered: 12/16/2025) |
| 12/16/2025 | 27 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 10/24/2025. (Neitzel, Beth) (Entered: 12/16/2025) |
| 12/16/2025 | 28 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 10/20/2025. Answer due for ALL FEDERAL DEFENDANTS by 12/19/2025. (Neitzel, Beth) (Entered: 12/16/2025) |
| 01/09/2026 | 29 | NOTICE *of Filing Certified Administrative Record Index* by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN (Attachments: # 1 Certified Index to the Administrative Record)(Theriot, Bethany) (Entered: 01/09/2026) |
| 01/30/2026 | 30 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Matthew Francis Casassa, Filing fee $ 100, receipt number ADCDC−12215447. Fee Status: Fee Paid. by HARRIS COUNTY, TEXAS. (Attachments: # 1 Exhibit A − Declaration of Matthew Francis Casassa, # 2 Exhibit B − Certificate of Good Standing, # 3 Exhibit C − Proposed Order)(Neitzel, Beth) (Entered: 01/30/2026) |
| 01/30/2026 | 31 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Gilleun Kang, Filing fee $ 100, receipt number ADCDC−12215498. Fee Status: Fee Paid. by HARRIS COUNTY, TEXAS. (Attachments: # 1 Exhibit A − Declaration of Gilleun Kang, # 2 Exhibit B − Certificate of Good Standing, # 3 Exhibit C − Proposed Order)(Neitzel, Beth) (Entered: 01/30/2026) |
| 01/30/2026 | 32 | MOTION for Summary Judgment by HARRIS COUNTY, TEXAS. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Index of Exhibits, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Exhibit O, # 19 Exhibit P, # 20 Exhibit Q, # 21 Exhibit R, # 22 Exhibit S, # 23 Exhibit T, # 24 Text of Proposed Order)(Neitzel, Beth) (Entered: 01/30/2026) |
| 02/11/2026 | 33 | NOTICE of Appearance by Patrick Reinhold Jacobi on behalf of SHELDON WHITEHOUSE (Jacobi, Patrick) (Entered: 02/11/2026) |
| 02/11/2026 | 34 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Alexandra L. St. Romain, Filing fee $ 100, receipt number ADCDC−12240378. Fee Status: Fee Paid. by SHELDON WHITEHOUSE. (Attachments: # 1 Declaration Declaration and Certificate of Good Standing)(Jacobi, Patrick) (Entered: 02/11/2026) |
| 02/11/2026 | 35 | Consent MOTION for Leave to File Amicus Brief*in Support of Plaintiff's Motion for Summary Judgment* by SHELDON WHITEHOUSE. (Attachments: # 1 Memorandum in Support Consent Motion of Members of Congress to File Brief as Amici Curiae in Support of Plaintiff's Motion for Summary Judgment, # 2 Text of Proposed Order Proposed Order)(Jacobi, Patrick) (Entered: 02/11/2026) |

| | | |
|---|---|---|
| 02/12/2026 | | MINUTE ORDER: Plaintiff's 30 Motion for Leave to Appear Pro Hac Vice is GRANTED. Matthew Francis Casassa is hereby admitted pro hac vice to represent Plaintiff in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Tanya S. Chutkan on 2/12/2026. (lchs) (Entered: 02/12/2026) |
| 02/12/2026 | | MINUTE ORDER: Plaintiff's 31 Motion for Leave to Appear Pro Hac Vice is GRANTED. Gilleun Kang is hereby admitted pro hac vice to represent Plaintiff in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Tanya S. Chutkan on 2/12/2026. (lchs) (Entered: 02/12/2026) |
| 02/12/2026 | | MINUTE ORDER: Movant Sheldon Whitehouse's 34 Motion for Leave to Appear Pro Hac Vice is GRANTED. Alexandra L. St. Romain is hereby admitted pro hac vice to represent Movant Sheldon Whitehouse in this matter. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Tanya S. Chutkan on 2/12/2026. (lchs) (Entered: 02/12/2026) |
| 02/18/2026 | 36 | NOTICE of Appearance by Gilleun Kang on behalf of HARRIS COUNTY, TEXAS (Kang, Gilleun) (Entered: 02/18/2026) |
| 02/19/2026 | 37 | NOTICE of Appearance by Alexandra L St. Romain on behalf of SHELDON WHITEHOUSE (St. Romain, Alexandra) (Entered: 02/19/2026) |
| 02/20/2026 | 38 | Cross MOTION for Summary Judgment by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Theriot, Bethany) (Entered: 02/20/2026) |
| 02/20/2026 | 39 | Memorandum in opposition to re 32 MOTION for Summary Judgment filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Text of Proposed Order)(Theriot, Bethany) (Entered: 02/20/2026) |
| 02/25/2026 | 40 | NOTICE of Appearance by I−Heng Hsu on behalf of All Defendants (Hsu, I−Heng) (Entered: 02/25/2026) |
| 02/25/2026 | 41 | NOTICE of Appearance by Tiffiney Carney on behalf of All Defendants (Carney, Tiffiney) (Entered: 02/25/2026) |
| 03/12/2026 | 42 | NOTICE of Appearance by Matthew Casassa on behalf of HARRIS COUNTY, TEXAS (Casassa, Matthew) (Entered: 03/12/2026) |
| 03/12/2026 | 43 | MOTION to Stay *Proceedings* by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Exhibit A − D.C. Circuit Order, # 2 Exhibit B − Power Forward Communities Letter, # 3 Exhibit C − Emails Between Counsel re Stay Motion, # 4 Text of Proposed Order)(Theriot, Bethany) (Entered: 03/12/2026) |
| 03/13/2026 | 44 | Memorandum in opposition to re 38 Cross MOTION for Summary Judgment *and Memorandum in Reply to 39 Defendants' Opposition to Plaintiff's Motion for Summary Judgment* filed by HARRIS COUNTY, TEXAS. (Attachments: # 1 Text of Proposed Order)(Neitzel, Beth) (Entered: 03/13/2026) |
| 03/13/2026 | 45 | |

| | | |
|---|---|---|
| | | Memorandum in opposition to re 43 MOTION to Stay *Proceedings* filed by HARRIS COUNTY, TEXAS. (Attachments: # 1 Text of Proposed Order)(Neitzel, Beth) (Entered: 03/13/2026) |
| 03/13/2026 | 48 | REPLY to opposition to motion re 32 Motion for Summary Judgment,, filed by HARRIS COUNTY, TEXAS. (See Docket Entry 44 to view document) (zjm) (Entered: 03/25/2026) |
| 03/17/2026 | 46 | REPLY to opposition to motion re 43 Motion to Stay, filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Exhibit D − Climate United transcript excerpts)(Theriot, Bethany) (Entered: 03/17/2026) |
| 03/23/2026 | 47 | Unopposed MOTION for Extension of Time to File Response/Reply as to 38 Cross MOTION for Summary Judgment by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Attachments: # 1 Text of Proposed Order)(Theriot, Bethany) (Entered: 03/23/2026) |
| 03/23/2026 | | MINUTE ORDER: Defendants' 47 Unopposed Motion for Extension of Time is GRANTED for good cause shown. Defendants shall file a Reply in support of their Cross Motion for Summary Judgment by April 10, 2026. Signed by Judge Tanya S. Chutkan on 3/23/2026. (lchs) (Entered: 03/23/2026) |
| 03/23/2026 | | MINUTE ORDER: Granting 35 Consent Motion of Members of Congress to file an amicus brief in support of Plaintiff's motion for summary judgment. The Clerk of the Court shall docket [35−1] as Amicus Brief of Members of Congress. Signed by Judge Tanya S. Chutkan on 3/23/2026. (lchs) (Entered: 03/23/2026) |
| 03/23/2026 | 49 | AMICUS BRIEF by SHELDON WHITEHOUSE. (zjm) (Entered: 03/25/2026) |
| 04/10/2026 | 50 | REPLY to opposition to motion re 38 Motion for Summary Judgment filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Theriot, Bethany) (Entered: 04/10/2026) |
| 04/24/2026 | 51 | JOINT APPENDIX *of Administrative Record* by HARRIS COUNTY, TEXAS. (Neitzel, Beth) (Entered: 04/24/2026) |
| 04/24/2026 | 52 | MOTION for Leave to File *Sur−Reply* by HARRIS COUNTY, TEXAS. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Neitzel, Beth) (Entered: 04/24/2026) |
| 04/29/2026 | 53 | RESPONSE re 52 MOTION for Leave to File *Sur−Reply* filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN. (Carney, Tiffiney) (Entered: 04/29/2026) |
| 05/06/2026 | 54 | REPLY re 52 MOTION for Leave to File *Sur−Reply [in Support of Motion]* filed by HARRIS COUNTY, TEXAS. (Neitzel, Beth) (Entered: 05/06/2026) |
| 06/03/2026 | 55 | NOTICE OF SUPPLEMENTAL AUTHORITY by DEVON BROWN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE M. ZELDIN (Attachments: # 1 Exhibit A)(Theriot, Bethany) (Entered: 06/03/2026) |
| 06/05/2026 | 56 | RESPONSE re 55 NOTICE OF SUPPLEMENTAL AUTHORITY filed by HARRIS COUNTY, TEXAS. (Neitzel, Beth) (Entered: 06/05/2026) |
| 06/12/2026 | 57 | REPLY re 55 NOTICE OF SUPPLEMENTAL AUTHORITY *Notice of Supplemental Authority* filed by DEVON BROWN, UNITED STATES ENVIRONMENTAL |

| | | |
|---|---|---|
| | | PROTECTION AGENCY, LEE M. ZELDIN. (Hsu, I−Heng) Modified on 6/16/2026 to correct docket link (zjm). (Entered: 06/12/2026) |
| 09/22/2026 | 58 | MEMORANDUM OPINION re: Plaintiff's 32 Motion for Summary Judgment and Defendants' 38 Cross−Motion for Summary Judgment. Signed by Judge Tanya S. Chutkan on 9/22/2026. (lchs) (Entered: 09/22/2026) |
| 09/22/2026 | 59 | ORDER: Plaintiff's 32 Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants' 38 Cross−motion for Summary Judgment is also GRANTED IN PART and DENIED IN PART. See Order for further details. Signed by Judge Tanya S. Chutkan on 9/22/2026. (lchs) (Entered: 09/22/2026) |
| 09/30/2026 | | MINUTE ORDER: Defendants' 43 Motion to Stay and Plaintiff's 52 Motion for Leave to File Sur−reply are DENIED as moot in light of the court's 59 Order. The Clerk of the Court is directed to close this case. Signed by Judge Tanya S. Chutkan on 9/30/2026. (lchs) (Entered: 09/30/2026) |
| 11/20/2026 | 60 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 58 Memorandum & Opinion, 59 Order on Motion for Summary Judgment,,, by DEVON BROWN, LEE M. ZELDIN, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY. Fee Status: No Fee Paid. (Hsu, I−Heng) (Entered: 11/20/2026) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRIS COUNTY, TEXAS,**<br><br>*Plaintiff*,<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.***,<br><br>*Defendants*. | Civil Action No. 1:25-cv-03646-TSC |

**<u>NOTICE OF APPEAL</u>**

Pursuant to Rules 3 and 4(a)(1) of the Federal Rules of Appellate Procedure, Defendants, the Environmental Protection Agency ("EPA"), Lee Zeldin, in his official capacity as EPA Administrator, and Devon Brown, in his official capacity as EPA award official, hereby notice their appeal to the United States Court of Appeals for the District of Columbia Circuit from the Order entered in this case on September 22, 2026, Doc. No. 59, and all orders and opinions merged therein, including but not limited to the Memorandum Opinion dated September 22, 2026, Doc. No. 58.

Dated: November 20, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

MARC S. SACKS
Deputy Director

KEVIN P. VANLANDINGHAM
Assistant Director

*/s/ I-Heng Hsu*
Bethany R. Theriot (D.C. Bar 1022065)
Tiffiney F. Carney (D.C. Bar 1024568)
I-Heng Hsu (N.Y. Reg. 4904033).
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Corporate/Financial Litigation Section
P.O. Box 875
Ben Franklin Stations
Washington D.C. 20044-0875
Tel: (202) 616-3619
bethany.theriot@usdoj.gov
tiffiney.carney@usdoj.gov
i-heng.hsu@usdoj.gov

*Attorneys for the Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRIS COUNTY, TEXAS**,<br>*Plaintiff*,<br>v.<br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.***,<br>*Defendants.* | Civil Action No. 25-cv-3646 (TSC) |

**ORDER**

For the reasons set forth in the accompanying Memorandum Opinion, ECF No. 58, Plaintiff's motion for summary judgment, ECF No. 32, is GRANTED IN PART and DENIED IN PART, and Defendants' cross-motion, ECF No. 38, is also GRANTED IN PART and DENIED IN PART.

The Environmental Protection Agency's August 7, 2025, determination that Section 60002 of the One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72, 154 (2025), rendered continued operation of the Solar for All program legally impermissible and required termination of the program and its existing grants, as set forth in the Decisional Memorandum, *see* AR 89–96, is VACATED as contrary to law, in excess of statutory authority, and arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A), (C). Plaintiff's request for a permanent injunction is DENIED without prejudice.

Defendants' cross-motion is GRANTED, and Plaintiff's motion is DENIED, as to Plaintiff's *ultra vires* and constitutional claims.

Date: September 22, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRIS COUNTY, TEXAS,**<br><br>*Plaintiff*,<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.***,<br><br>*Defendants*. | Civil Action No. 25-cv-3646 (TSC) |

**MEMORANDUM OPINION**

On August 7, 2025, the Environmental Protection Agency ("EPA") terminated its seven-billion-dollar Solar for All ("SFA") competitive grant program. Plaintiff Harris County, an SFA grant recipient, sued EPA and agency administrators, alleging that EPA's termination of SFA violated the One Big Beautiful Bill Act ("OBBBA"), the Administrative Procedure Act ("APA"), and the Constitution. Plaintiff and Defendants have moved for summary judgment. For the reasons set forth below, the court will GRANT IN PART and DENY IN PART Plaintiff's and Defendants' motions.

## I. BACKGROUND

The 2022 Inflation Reduction Act added § 134 to the Clean Air Act ("CAA"), which appropriated $26.97 billion to EPA for a Greenhouse Gas Reduction Fund ("GGRF"). *See* 42 U.S.C. § 7434(a)–(c) (repealed 2025). The GGRF included a seven-billion-dollar competitive grant program, available until September 30, 2024, for EPA "to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies . . . and to carry out other greenhouse gas emission reduction activities." *Id.* § 7434(a)(1). Congress also

appropriated $30 million to EPA "for administrative costs necessary to carry out activities" under the GGRF, available until September 30, 2031. *Id.* § 7434(a)(4).

In 2023, EPA announced the SFA program to implement § 134 and to "advance the Biden-Harris Administration's equity and environmental justice priorities." AR 347. Through SFA, EPA awarded grants "to expand the number of low-income and disadvantaged communities primed for distributed solar investment." AR 348. EPA selected Plaintiff to receive a $249.7 million SFA grant and executed an initial award agreement in July 2024 and an amended agreement in December 2024. *See* AR 427–510. EPA obligated the full award before the statutory deadline, and Plaintiff's approved workplan allocated those funds across a five-year project period.[1] *See* AR 519–72. The award was then made available to Plaintiff through the Treasury's Automated Standard Application for Payments ("ASAP") system, and Plaintiff began drawing down funds in December 2024. Pl.'s Mot. at 4–5, ECF No. 32.

On July 4, 2025, President Trump signed the OBBBA. Section 60002 of the Act provides:

> Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the unobligated balances of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act) are rescinded.

Pub. L. No. 119-21, 139 Stat. 72, 154 (2025).

At 5:20 a.m. on August 7, 2025, EPA Associate Deputy Administrator Travis Voyles emailed Deputy Administrator David Fotouhi a memorandum interpreting OBBBA's impact on SFA ("Decisional Memorandum"). The memorandum recommended "that the Agency terminate

[1] Federal law distinguishes among appropriations, obligations, and disbursements. An appropriation is Congress's authorization for an agency "to incur obligations and to make payments out of the Treasury for specified purposes." *Andrus v. Sierra Club*, 442 U.S. 347, 361 n.18 (1979). An obligation is the agency's binding commitment of appropriated funds—here, the executed grant agreement—which creates a legal liability even though no money has left the Treasury. *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 307–08 (2020). A disbursement is the payment itself.

the Solar for All (SFA) program and all existing grants because the EPA no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients." AR 88. Three hours later, Fotouhi responded that he "agree[d] with the recommendation to terminate the SFA program and existing grants" and instructed Voyles to "proceed accordingly." *Id.* Voyles promised to "work to immediately implement the termination of the SFA program and existing grants." *Id.*

That evening, EPA sent identical termination notices to each SFA grant recipient, announcing its "decision to terminate the SFA program and existing grants" because OBBBA "repeal[ed] . . . the statutory authorization and all appropriated funding for the program," making "any attempt to continue the program's administration . . . no longer legally permissible." AR 136. The next day, Plaintiff was blocked from drawing down its grant funds, and its ASAP account status changed to "Suspended." On August 18, 2025, the status changed again, from "Suspended" to "Liquidated." Pl.'s Mot. at 11.

On August 27, 2025, Plaintiff filed an administrative appeal with EPA's Disputes Decision Official, objecting to the termination of its SFA grant. Pl.'s Ex. T, ECF No. 32-23; *see* 2 C.F.R. § 1500.15. Plaintiff alleged that "EPA's sole basis for termination . . . is wrong" and requested that "the agency immediately reinstate [its] award." Pl.'s Ex. T at 2–3.

Plaintiff filed suit in October 2025, and the parties agreed to stay Plaintiff's administrative appeal pending this court's judgment. Pl.'s Mot. at 12–13. Defendants filed a declaration from EPA's Deputy Chief Financial Officer Gregg Treml confirming that all undisbursed SFA grant funds will remain "in the same Treasury Account used to manage the Solar for All grant program" until September 30, 2031. Treml Decl. ¶¶ 5–7, ECF No. 20-1. Defendants "confirm[ed] that closeout will not proceed" until this court renders judgment. Notice of Withdrawal of Mot. at 2,

ECF No. 21.

## II. LEGAL STANDARDS

The APA authorizes judicial review of final agency action and instructs a reviewing court to "hold unlawful and set aside" such action if it finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C). The arbitrary-and-capricious standard is "highly deferential" and "presumes the agency's action to be valid." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). A court will not disturb an agency's determination as long as the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

While the APA mandates deferential review of agency policymaking and factfinding, courts employ "no deferential standard" in answering "legal questions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). Instead, courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 412. "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395. "The court fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id.*

(cleaned up).

"In APA cases such as this one, involving cross-motions for summary judgment, 'the district judge sits as an appellate tribunal [and] [t]he entire case on review is a question of law.'" *Kondapally v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 10, 20 (D.D.C. 2021) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). The court must decide, as a matter of law, "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013).

## III. DISCUSSION

### A. Tucker Act Jurisdiction

As an initial matter, Defendants contend that the Tucker Act, 28 U.S.C. §§ 1346(a) and 1491, deprives the court of subject matter jurisdiction to consider Plaintiff's claims.

"It rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014) (quoting *Minnesota v. United States*, 305 U.S. 382, 388 (1939)). The APA's waiver of sovereign immunity for suits against federal agencies "seeking relief other than money damages" does not apply where another statute "expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act is such a statute: it vests the Court of Federal Claims with exclusive jurisdiction over claims exceeding $10,000 that are founded on an "express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see id.* § 1346(a)(2). That said, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)). To determine whether a claim must

proceed in the Court of Federal Claims, the court must decide if the action "is *at its essence* a contract claim," which turns "both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C. Cir. 1982)). Both prongs of the *Megapulse* test must be satisfied—that is, the plaintiff's "asserted right" must be "based in contract" *and* the plaintiff must seek "'in essence' more than $10,000 in monetary relief from the federal government"—to deprive a district court of jurisdiction. *Crowley*, 38 F.4th at 1113; *see Am. Acad. of Pediatrics v. Dep't of Health & Hum. Servs.*, 816 F. Supp. 3d 27, 47 (D.D.C. 2026).

Plaintiff challenges EPA's "policy-level determination" that it is "'no longer legally permissible' to operate the SFA program after OBBBA" ("Elimination Decision"), Pl.'s Mot. at 18–19, set out in the Decisional Memorandum, AR 89–96. Defendants characterize Plaintiff's claims as "disguised contract claims that belong in the Court of Federal Claims." Def.'s Mot. at 12. The court disagrees. Plaintiff's rights arise from statute rather than from the terms of its grant agreement, and the relief it seeks is neither damages nor specific performance. The Tucker Act poses no jurisdictional bar.

Recent per curiam stay orders from the Supreme Court's emergency docket have grappled with the application of these jurisdictional principles in the context of grant terminations. *See Dep't of Educ.*, 604 U.S. at 651; *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025). Of relevance here, Justice Barrett's controlling opinion in *NIH* distinguished between "challenges to the grant terminations" themselves and challenges to the underlying "guidance" documents describing agency priorities or internal policies. 145 S. Ct. at 2661 (Barrett, J., concurring). While a district court may not "'vacate[]' the grant terminations and order[] the Government to pay

plaintiffs sums due under the agreements," it may order "vacatur of internal agency guidance on arbitrary-and-capricious grounds." *Id.* As a result, "this court cannot review past grant terminations, but the Tucker Act does not deprive it of jurisdiction to vacate and prospectively enjoin unlawful policies concerning such terminations or decisions to cut funds appropriated by Congress—decisions which do not sound in contract." *New Mexico v. Musk*, 824 F. Supp. 3d 80, 93 (D.D.C. 2026).

The first prong of the *Megapulse* test looks to the "source of the rights upon which the plaintiff bases its claims." 672 F.2d at 968. The D.C. Circuit has rejected the position "that any case requiring some reference to or incorporation of a contract . . . necessarily" belongs in the Court of Federal Claims. *Id.* at 967–68. The question is instead "whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992). To answer that question, the court considers whether the "asserted rights and the government's purported authority arise from statute" and exist "apart from rights created under the contract" and whether the plaintiff "seeks to enforce any duty imposed upon the government by the relevant contracts." *Crowley*, 38 F.4th at 1107 (cleaned up). If a plaintiff's claim depends not on whether its contract was breached, "but on whether the agency's policy directives were unlawful in the face of federal statutes appropriating funds for specific purposes," it is not in essence contractual. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *14 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting), *adopted en banc*, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025); *see Crowley*, 38 F.4th at 1109–10.

The source of Plaintiff's rights is not contractual. Its claims arise from rights protected not by the terms of its grant agreement, but by statute—the APA, CAA, and OBBBA—and those

rights exist independently of the award agreements. That Plaintiff "has no claim to grant funds or continued participation in any SFA program except through its federal grant," Def.'s Mot. at 17, is not dispositive, because "determining whether [EPA] infringed [Plaintiff's] rights as alleged in the complaint requires primarily an examination of the statutes the [EPA] has purportedly violated, not of [Plaintiff's] contract," *Crowley*, 38 F.4th at 1108–09. Plaintiff argues that EPA's reading of § 60002—under which OBBBA rescinded obligated as well as unobligated funds—contradicts the statute's plain language. The claim turns on statutory language, not on specific conditions or promises from the government contained in its grant. In that sense, Plaintiff's claim exists "apart from" and does not seek to "enforce" contractual terms. *Id.* at 1107.[2]

The relief Plaintiff seeks—vacatur of the Elimination Decision and an injunction preventing EPA from "shutting down the SFA program absent congressional authorization"—is likewise not contractual. Proposed Order at 2, ECF No. 32-24. Neither form of relief would direct EPA to pay Plaintiff anything or to reinstate its grant. Vacatur setting aside the agency's interpretation of OBBBA would return the question of Plaintiff's grant to EPA, which would retain discretion to reconsider the termination, terminate again on adequate grounds, or reach any other outcome the statute permits. The proposed injunction is prohibitory: it would restrain EPA from further implementing an unlawful decision, not compel it to perform. Plaintiff thus "seeks neither the prototypical contract remedy of damages nor the classic contractual remedy of specific performance." *Crowley*, 38 F.4th at 1110 (cleaned up). As *Megapulse* explained, the rule against contract actions seeking specific performance is one thing; it is "quite another" to say "that an

---

[2] Having determined that Plaintiff's claims do not meet the first condition of the *Megapulse* test for exclusive jurisdiction in the Court of Federal Claims, the analysis could end here. *See Am. Acad. of Pediatrics*, 816 F. Supp. 3d at 47. For completeness, the court nonetheless considers the second prong and determines that it is also not met.

agency action may not be enjoined, even if in clear violation of a specific statute, simply because that same action might also amount to a breach of contract." 672 F.2d at 971. Whether an injunction is warranted as a matter of equitable discretion is a separate question, addressed below.

Plaintiff's requested relief may ultimately help it prevail in its administrative dispute and recover its grants. But "[t]he fact that [Plaintiff] may obtain monetary relief from the United States in Claims Court if it succeeds in its suit against [EPA] in district court 'is insufficient to deprive the district court of jurisdiction.'" *Crowley*, 38 F.4th at 1112 (quoting *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006)).

**B. Article III Standing**

"For a lawsuit to constitute a case within the meaning of Article III, the plaintiff must have standing to sue." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025). "In other words, plaintiffs must show that they possess a personal stake in the dispute and are not mere bystanders." *Id.* (cleaned up). "'[T]he irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Id.* at 111 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The last requires the plaintiff to demonstrate "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[T]he manner and degree of evidence required" to establish standing varies depending on the "stage[] of the litigation." *Lujan*, 504 U.S. at 561.

Defendants argue that Plaintiff cannot demonstrate redressability because "the only legally cognizable injury it experienced" was "lost grant funds," which the parties agree the court cannot restore. Def.'s Mot. at 24. But Plaintiff does not ask the court to restore its grant. It asks the court to set aside the agency's interpretation of OBBBA, which would "clear the way for [Plaintiff] to prevail in its administrative dispute challenging" its grant termination. Pl.'s Mot. at 23–24.

"The law is clear that a party has standing to pursue a claim so long as the relief sought will constitute a 'necessary first step on a path that could ultimately lead to relief fully redressing the [claimant's] injury.'" *Duberry v. District of Columbia*, 924 F.3d 570, 583 (D.C. Cir. 2019) (quoting *Power Co. of Am. v. FERC*, 245 F.3d 839, 842 (D.C. Cir. 2001)). *Power Co.* itself illustrates this principle. The plaintiff there challenged an agency's acquiescence in other parties' termination of the plaintiff's contracts without adequate notice, though its "ultimate injury" was the contract cancellations themselves. 245 F.3d at 842. The agency had determined that the agreements were not subject to a notice requirement, foreclosing any administrative remedy. *Id.* The court concluded that "a declaratory ruling that the terminations at issue are subject to the notice requirement" was a "necessary first step on a path that could ultimately lead to relief fully redressing the injury." *Id.* (quoting *Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994)). While the plaintiff might not ultimately prevail in obtaining an agency remedy, it could not attempt to do so without a declaratory ruling. *See Power Co.*, 245 F.3d at 842. That was "enough to ensure that the relief requested 'will produce tangible, meaningful results in the real world.'" *Tel. & Data Sys.*, 19 F.3d at 47 (quoting *Common Cause v. Dep't of Energy*, 702 F.2d 245, 254 (D.C. Cir. 1983)).

So too here. Plaintiff's ultimate injury is the termination of its grant funding, and vacatur would not directly restore it. But Defendants do not dispute that the administrative appeal would be "plainly futile" if the Elimination Decision stands. *See* Def.'s Mot. at 25–26. Because setting aside the decision would remove that barrier to relief, Plaintiff has met its burden of showing that doing so could "ultimately lead to relief fully redressing the injury." *Power Co.*, 245 F.3d at 842.

### C. Final Agency Action

Defendants make a related argument that the pendency of Plaintiff's administrative dispute

means there is no final agency action to review under 5 U.S.C. § 704. Def.'s Mot. at 26. This too mistakes the agency action at issue. Plaintiff does not seek review of the termination of its individual grant; it challenges EPA's policy-level determination that OBBBA rendered continued operation of SFA legally impermissible, memorialized in the Decisional Memorandum. That determination satisfies the familiar two-prong test set forth in *Bennett v. Spear*, 520 U.S. 154 (1997): it "mark[s] the 'consummation' of the agency's decisionmaking process" on the question of whether OBBBA stripped the agency of authority to administer SFA, and is not "of a merely tentative or interlocutory nature." *Id.* at 178 (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113 (1948)).

The Decisional Memorandum set out EPA's interpretation of OBBBA—namely, that the statute "eliminate[d] the Agency's substantive grantmaking authority" under CAA § 134, requiring the agency to terminate the program and all existing grants. AR 90. The Deputy Administrator approved it within hours, and EPA sent termination notices to grantees that same evening. AR 88, 130–38. EPA's dispute process cannot revisit that determination: it reaches only an "Agency Decision" transmitted by an "Action Official" to a particular affected entity. 2 C.F.R. § 1500.14(c). The decision was thus EPA's "last word on the matter." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001).

The decision is also an action "by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178 (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). EPA's interpretation of OBBBA "was the agency's *reason* for terminating the SFA grants," Def.'s Mot. at 19, and the agency has treated that interpretation as controlling how it may administer the program. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000) (explaining

that "a document issued at headquarters" is "for all practical purposes 'binding'" if the agency treats it as "controlling in the field" and bases its "actions on the policies or interpretations formulated in the document"). Requiring Plaintiff to exhaust a process that cannot set aside the legal basis for its grant termination would leave the parties in the same posture as now.

**D. APA Challenge**

Plaintiff's central claim is that the agency's determination that OBBBA § 60002 required EPA to terminate the SFA grant program was arbitrary and capricious, contrary to law, and in excess of statutory authority under the APA. *See* 5 U.S.C. § 706(2)(A), (C). The court agrees.

Starting with the text, the provision of CAA § 134 underlying Plaintiff's SFA grant provided:

> "[T]here is appropriated to the Administrator for fiscal year 2022 . . . $7,000,000,000, to remain available until September 30, 2024, to make grants, on a competitive basis . . . to enable low-income and disadvantaged communities to deploy or benefit from zero-emission technologies . . . ."

42 U.S.C. § 7434(a)(1). By its express terms, this section tasked the government with *making* grants—"to bring into being" or "lay out and construct" them. *See* Make, Merriam-Webster, https://www.merriam-webster.com/dictionary/make (last visited Sept. 21, 2026). Defendants concede that "EPA duly executed [§ 134] by making grants before the statutory deadline," Def.'s Mot. at 35, and that "SFA grants . . . were executed pre-OBBBA," *id.* at 29. Indeed, EPA announced a competitive award process in June 2023 to distribute the seven-billion-dollar appropriation, selected 60 grantees, and obligated the full amount before the September 30, 2024, deadline. AR 344–426. EPA's statutory duty to "make" the grants was therefore complete by the time OBBBA took effect.

Then came OBBBA § 60002, which stated:

Section 134 of the Clean Air Act (42 U.S.C. 7434) is repealed and the unobligated balances

> of amounts made available to carry out that section (as in effect on the day before the date of enactment of this Act) are rescinded.

By its plain language, § 60002 had two operative effects: it (1) "repealed" the government's authority under CAA § 134 to make GGRF grants, and (2) "rescinded" certain funding to "carry out" the GGRF. This is a far cry from authorizing—much less *requiring*—the government to claw back funds that had already been obligated.[3]

It is a "cardinal principle of statutory construction" that a statute ought to be construed such that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001)). "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). If the government is correct that § 60002's "repealed" clause "did not implicitly incorporate or save any aspect of Section 134," Def.'s Mot. at 28, there would be no need to separately rescind EPA's administrative funding—it would already be repealed. That Congress included a separate rescission clause shows that the two clauses do different work: the repeal ended EPA's authority to make new grants, and the rescission determined which appropriated funds Congress took back.

The canon of surplusage is complemented by the rule of *expressio unius est exclusio alterius*, which directs "that expressing one item of an associated group excludes another item not mentioned." *Esteras v. United States*, 606 U.S. 185, 195 (2025). "[T]he canon against surplusage and the *expressio unius* canon 'are at their zenith when they apply in tandem,' as they appear to

[3] The parties dispute whether this question should be framed as OBBBA *authorizing* or *requiring* the rescission of Plaintiff's grant funding. Both the Decisional Memorandum and the termination notices asserted that "Congress has made its intent clear . . . that the SFA program is no longer to operate." AR 88. The court construes this contemporaneous rationale to mean what it says: that Defendants believed they were *required* to rescind Plaintiff's funding.

do here." *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1137 (D.C. Cir. 2022) (quoting *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 645 (D.C. Cir. 2000)). As Plaintiff notes, by rescinding only "unobligated balances" available to carry out § 134, Congress impliedly declined to rescind obligated ones, meaning the provision left funds already obligated to grant recipients undisturbed.

The legislative record confirms that reading. During the House Energy and Commerce Committee's markup, Representative Griffith returned to the point repeatedly:

> I just want to point out that these provisions that we are talking about only apply as far, as this bill is concerned, to the unobligated balances. So if a grant was already given, as far as this bill is concerned, then that would still be going forward.
>
> . . . .
>
> If the grant has already been granted and the money is obligated, then this—then our language does not affect that.
>
> . . . .
>
> [W]e can't rescind expenditures that have already been obligated.

171 Cong. Rec. S4283 (daily ed. July 9, 2025). Committee Chair Guthrie said the same: section 60002 "does not close the grants on any obligated funds." *Id.* And the Congressional Budget Office scored the provision as saving $19 million in administrative and oversight funding, not billions of dollars in already-obligated grants. *Id.* at S4282–83. It is clear that "legislators intended Section 60002 to only rescind *unobligated* balances and to leave alone any funds already distributed." *Arizona v. EPA*, No. 2:25-cv-2015, 2026 WL 1533001, at *3 (W.D. Wash. June 1, 2026).

Nor does OBBBA's rescission of EPA's unobligated oversight funding justify terminating obligated SFA grants. Defendants may be right that EPA's "decision not to use other sources of funding" to continue overseeing grants is unreviewable because OBBBA supplies "no meaningful standard against which to judge the agency's exercise of discretion." Def.'s Mot. at 37 (quoting

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Judgments about how "resources are best spent" or how any particular grant "fits the agency's overall policies" are ones EPA "is far better equipped than the courts" to make. *Heckler*, 470 U.S. at 831. But "an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). Nor should courts "infer that Congress has implicitly repealed or suspended statutory mandates based simply on the amount of money Congress has appropriated." *In re Aiken County*, 725 F.3d 255, 260 (D.C. Cir. 2013). Whatever the practical consequences of Congress's rescission of unobligated administrative funds, they do not change the fact that Congress expressly chose to leave obligated grant funds undisturbed.

Because EPA's termination of the SFA program rested on a contrary reading—that § 60002 reached obligated funds as well—the Elimination Decision both exceeded the agency's statutory authority and was arbitrary and capricious. *See, e.g.*, *Gomez v. Trump*, 485 F. Supp. 3d 145, 194 (D.D.C. 2020) ("Agency action that 'stands on a faulty legal premise and [lacks] adequate rationale' is arbitrary and capricious." (quoting *See Prill v. NLRB*, 755 F.2d 941, 948 (D.C. Cir. 1985)); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 243 (D.D.C. 2021) ("The prioritization scheme . . . is arbitrary and capricious because it relied on an erroneous interpretation of the law.").

**E. Ultra Vires and Constitutional Claims**

As to Plaintiff's *ultra vires* and constitutional claims, the court will grant Defendants' motion. *Ultra vires* review is only available where "there is no alternative procedure for review of the statutory claim." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022). Plaintiff's *ultra vires* claims are based on the same allegations that undergird its APA claims—that Defendants terminated the SFA program in contravention of the CAA and OBBBA.

*See* Pl.'s Mot. at 21. Because the APA supplies an avenue for review for those allegations and the remedies Plaintiff seeks, the *ultra vires* claims are duplicative. *See Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 201 (D.D.C. 2024).

Plaintiff's constitutional claims fare no better. Plaintiff alleges that Defendants' cancellation of the SFA program violated the Appropriations and Presentment Clauses and the separation of powers. *See* Pl.'s Mot. at 40–42. The substance of Plaintiff's argument is that EPA's retroactive interpretation of OBBBA § 60002 "'create[d] a different law' than that voted on by Congress," *id.* at 41 (quoting *Clinton v. City of New York*, 524 U.S. 417, 448 (1998)), and disregarded the appropriation Congress mandated in CAA § 134, *id.* at 40–41. This attempt to assert non-statutory rights to vindicate separation-of-powers principles is foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994). "[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. Plaintiff's theory from the outset—with which the court has agreed—has been that EPA misread § 60002, which left intact § 134 funds that had already been obligated. Those statutory violations are the "predicate acts for the constitutional claims," *Glob. Health Council v. Trump*, 153 F.4th 1, 15 (D.C. Cir. 2025) (amended): without § 134's appropriation and § 60002's limited rescission of it, there would be no constitutional claim to bring. *Dalton* therefore controls here and Plaintiff lacks a cause of action to bring freestanding constitutional claims "predicated on underlying statutory violations." *Id.* at 17.

## F. Remedy

Plaintiff asks the court to vacate the Elimination Decision and permanently enjoin Defendants from "shutting down the SFA program absent congressional authorization." Proposed Order at 1–2.

For the reasons explained above, the Elimination Decision is arbitrary and capricious, contrary to law, and in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C). The APA mandates that the court "set aside" the challenged agency action. *Id.* § 706. Vacatur is the ordinary and presumptive remedy for substantive violations of the APA. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014); *Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir. 1997). Although courts in this Circuit have at times remanded without vacatur, *see Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993), Defendants have forfeited any argument that such a remedy is warranted by raising it for the first time in their reply brief. *See* Def.'s Reply at 22; *Comm'r v. Simmons*, 646 F.3d 6, 11 (D.C. Cir. 2011) ("Appearing as it does for the first time in the reply brief, the argument is forfeit and we do not address it.").

Defendants also ask the court to "vacate EPA's termination decision only with respect to Harris County's SFA Grant." Def.'s Mot. at 44. But that is not the agency action before the court. Plaintiff does not challenge the termination of its individual grant, and the court has not reviewed it. What the court sets aside is the agency's policy-level determination that OBBBA rendered continued operation of SFA legally impermissible—applicable to the program as a whole. AR 88. "When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), does not counsel otherwise. *See* Def.'s Reply at 25. *CASA* addressed universal injunctions and expressly declined to address vacatur under the APA, recognizing that an order affording complete relief to the plaintiff may incidentally benefit nonparties. *See CASA*, 606 U.S. at 847 n.10, 851–52. Vacatur operates on the agency action itself. Its effect on other grantees

follows from the nature of the action, not from any extension of relief beyond the parties.

That leaves the question of whether issuance of an injunction is also warranted. The Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would "have [a] meaningful practical effect independent of its vacatur." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course" or where "a less drastic remedy . . . [is] sufficient to redress" the plaintiff's injury. *Id.* at 165–66. These principles counsel against injunctive relief here. Vacatur deprives the Elimination Decision of legal effect: EPA may take no further action premised on the ground that OBBBA § 60002 requires or authorizes the program's termination. The court will not presume that EPA would disregard such an order. The agency has represented that SFA funds will remain in a Treasury account through September 30, 2031, and has stayed both Plaintiff's administrative appeal and the closeout process pending this litigation. Treml Decl. ¶¶ 5–7; Def.'s Mot. at 10. Plaintiff's evidence of the administration's hostility to GGRF programs shows that EPA opposed SFA; it does not show that the agency would defy a judgment of this court.

Accordingly, the court will vacate the Elimination Decision but deny without prejudice Plaintiff's request for an injunction. Should EPA fail to comply with the vacatur ordered today—including by proceeding with closeout of SFA grants on the ground that § 60002 requires or authorizes that result—the court will consider further relief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, ECF No. 32, will be GRANTED IN PART and DENIED IN PART, and Defendants' cross-motion, ECF No. 38, will also be GRANTED IN PART and DENIED IN PART. An order consistent with this

Memorandum Opinion will be entered separately.

Date: September 22, 2026

Tanya S. Chutkan
TANYA S. CHUTKAN
United States District Judge